Eugene Licker (EL 0334)
Michele Higgins (MH 3368)
KIRKPATRICK & LOCKHART LLP
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900

Attorneys for Plaintiff Federal National
Mortgage Association

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

                Plaintiff, 

    -against-

OLYMPIA MORTGAGE CORPORATION and
LIEB PINTER

              Defendants.

---------------------------------------------------------------X



## COMPLAINT

### THE NATURE OF THE ACTION

1.    This is an action for breach of contract and fraud brought by the Federal National

Mortgage Association ("Fannie Mae") against Olympia Mortgage Corporation ("Olympia"), a

mortgage lender and servicer, and Lieb Pinter, one of Olympia's owners and one of its managing

directors. Pursuant to an agreement between them, Fannie Mae bought thousands of mortgages

originated by Olympia and retained Olympia to service the mortgages. Thus, Fannie Mae relied

on Olympia, and those dealing on Olympia's behalf, including Lieb Pinter, for honesty, fair

dealing, and compliance with contractual agreements between Olympia and Fannie Mae.

2.    Fannie Mae recently learned, however, that far from dealing fairly, Defendants

have engaged in fraudulent, unlawful conduct. In a variation on the typical Ponzi scheme,

Defendants have systematically and repeatedly lied to Fannie Mae by misrepresenting loans that should have been paid off as current and active. In order to hide the truth from Fannie Mae, Defendants have made the payments on these loans as if the borrowers were still making them. In reality, Defendants took the pay off amounts for themselves and their own benefit.

3.      As a result of Defendants' fraud, Fannie Mae has suffered at least $44 million of damages. The full extent of the fraud, and the full extent of Fannie Mae's losses, has yet to be determined. Moreover, Fannie Mae is not aware of the identities of all persons and entities responsible for the fraud and is continuing its investigation.

## JURISDICTION AND VENUE

4.      Federal subject matter jurisdiction exists under 28 U.S.C. § 1332 in that all named parties to this action are of completely diverse citizenship and the amount in controversy exceeds $75,000. Fannie Mae is deemed to be a citizen of the District of Columbia for purposes of jurisdiction and venue (12 U.S.C. §1717(a)(2)(B)). Olympia is, on information and belief, a citizen of New York in that it is a New York corporation and its principal place of business in located in this state. Lieb Pinter is believed to reside in the State of New York.

5.      Federal subject matter jurisdiction also exists under 28 U.S.C. § 1331 as this matter arises under 12 U.S.C. § 1723a, which grants Fannie Mae authority "to sue and be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal."

6.      Venue in this Court is proper under 28 U.S.C. §§ 1391(a)(2) because Olympia is located in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

2

## THE PARTIES

7.     Fannie Mae is a private, shareholder-owned company that channels its efforts into increasing the availability and affordability of homeownership for low-, moderate-, and middle-income Americans. Fannie Mae does not originate mortgage loans but rather purchases loans from mortgage lenders in the secondary mortgage market.

8.     Olympia is a mortgage lender and servicer. On information and belief, the principal offices of Olympia are located at 1716 Coney Island Avenue in Brooklyn, New York. Olympia made the loans that are the subject of this lawsuit, sold those loans to Fannie Mae, and was also the servicer of those loans for Fannie Mae.

9.     On information and belief, Defendant Lieb Pinter owns (with his wife) an 18% interest in Olympia, and, in addition to his ownership interest in Olympia, defendant Lieb Pinter served as a Managing Director of Olympia.

## BACKGROUND FACTS

10.     Fannie Mae purchases loans from lenders such as Olympia. Its usual practice is to purchase the loan and retain the lender to "service" the loan, which entails collecting the monthly principal and interest payments, along with any tax, insurance, and other escrow payments, from the borrower and placing the principal and interest payments into custodial bank accounts from which Fannie Mae can withdraw, on a monthly basis, the remittances due to Fannie Mae. The servicer also has responsibilities for depositing tax and insurance payments into separate custodial accounts, and ensuring that taxes and insurance on the borrowers' properties are paid from those accounts.

11.     Thus, in the ordinary course of business Olympia would collect on Fannie Mae's behalf monthly mortgage (and escrow) payments from borrowers and deposit the payments in various bank accounts established for the purpose of holding those payments. These accounts are referred to as custodial accounts. Fannie Mae had the right to withdraw monies from the custodial accounts and did so on a monthly basis from the "P&I" (principal and interest)

3

custodial accounts to collect repayment of principal and payment of interest on loans being serviced by Olympia on Fannie Mae's behalf.

12.    When a loan is paid off (whether through a refinancing or otherwise), Olympia had an obligation to notify Fannie Mae of that fact and to deposit the outstanding principal, and any accrued interest, in the P&I custodial account.

13.    On or about June 8, 1988, Fannie Mae and Olympia entered into a Mortgage Selling and Servicing Contract (the "Contract") pursuant to which Olympia agreed to sell, and Fannie Mae agreed to buy, mortgages under specified circumstances, and Fannie Mae retained Olympia to service the mortgages it sold to Fannie Mae. The parties entered into three addendums of the Contract, dated January 23, 1989, June 19, 1996, and March 7, 1997, respectively. The Contract incorporates by reference Fannie Mae's Selling and Servicing Guides, which set forth additional obligations and responsibilities that Olympia agreed to as part of its relationship with Fannie Mae. A copy of the Contract and the addendums is attached hereto as Exhibit 1.

14.    Among other things, in agreeing to sell mortgages to Fannie Mae Olympia warranted that the mortgages it sold represented valid and subsisting liens on the property securing the loan (Contract §IV(A)(4)), that the mortgage documents were valid and enforceable (Contract §IV(A)(5)), and that the property was not subject to any other liens (Contract §IV(A)(6)).

15.    Among other things, in agreeing to service mortgages, Olympia agreed to diligently perform all servicing duties (Contract §V(A)(1)) and to service the loans in accordance with Fannie Mae's Service Guide (Contract §V(A)(3)).

16.    In contracting with Fannie Mae, Olympia agreed, as a matter of law, to deal in good faith, fairly, and honestly with Fannie Mae.

## THE SCHEME

17.     In fact, Olympia did not satisfy the warranties it gave, did not properly acquit its responsibilities as servicer, and did not deal fairly and honestly with Fannie Mae.

18.     To date, based on a review of Olympia's records, Fannie Mae has identified more than 260 loans affected by Defendants' fraudulent scheme. In each instance, the borrower expected the proceeds from the refinancing to extinguish their original first lien loan. Here, however, the payoff proceeds were stolen by Defendants. On each of the 260 loans, Defendants concealed their diversion of funds by reporting the loans to Fannie Mae as "active." Furthermore, on each of the 260 loans, Defendants kept the monthly payments current by depositing funds into the P&I custodial account so that Fannie Mae would remain unaware of the pay off.

19.     Although the borrowers intended through a refinancing to pay off their existing first lien loan, Defendants failed to inform Fannie Mae that the original loan should have been paid off and failed to remit the funds into the P&I custodial account to satisfy the original loan. In order to avoid detection, the Defendants themselves caused sufficient funds to be deposited to the P&I custodial accounts to cover the monthly payments for the original loans.

20.     Although the full extent of the fraud, and the identity of all of those responsible, is not yet available to Fannie Mae, on information and belief, the fraud was perpetrated under the direction of Lieb Pinter, using the rights, offices, facilities, and employees of Olympia.

## FANNIE MAE'S ACTIONS AND THE NEED FOR A RECEIVER

21.     In order to protect itself and the borrowers whose loans were being serviced by Olympia, Fannie Mae transferred the servicing of all of the Olympia loans to a different servicer. In order to do so, Fannie Mae required access to records and files relating to the serviced loans.

22.     Despite this action, both Fannie Mae and the borrowers on the mortgages previously serviced by Olympia, are in peril. Indeed, some borrowers continue to contact Olympia, correspond with Olympia and even remit monthly payments and P&I payments to

Olympia. Former borrowers whose loans have been liquidated or paid off prior to Fannie Mac's transfer of servicing from Olympia to another servicer will also continue to contact Olympia with issues related to their prior loans. At present, we have no way to ensure that these items are properly being processed unless Fannie Mac or its present servicer is made aware of the borrowers' concerns and documentation and payments are forwarded on a timely basis.

23.     Unless steps are taken to ensure Olympia's compliance with an orderly winding down and transfer of the funds received from borrowers and the servicing functions, mortgage borrowers will be unduly harmed. For example, borrowers may not get credit for making their payments that have been tendered to Olympia; borrowers' credit reports may be affected; borrowers may have difficulty in selling or refinancing their homes on a timely basis; and funds tendered to Olympia may be commingled, improperly accounted for and/or lost.

24.     Furthermore, steps need to be taken to secure Olympia's records and a thorough and prompt examination of their banking records must be undertaken in order to ensure that (a) all borrower accounts that may be affected by Defendants' conduct are identified and appropriate steps are taken to ensure there is no adverse impact to borrowers in terms of being placed in delinquency status or charged late fees inappropriately; (b) borrowers are able to timely close property sales or mortgage refinances; (c) borrowers do not suffer inaccuracies in their credit reports; and (d) proper remedial action can be taken.

25.     Fannie Mae has informed the proper governmental authorities of its information with regard to the Defendants and, as a result, Fannie Mae understands that a broad array of governmental entities, including the United States Attorney's Office, The Federal Bureau of Investigation, the Department of Housing and Urban Development, and the Office of the New York State Department of Banking have commenced investigations into Olympia and Lieb Pinter.

26.     In addition, as of October 28, 2004, Olympia's primary regulator, the New York State Department of Banking, summarily suspended for 30 days Olympia's license to act as a mortgage lender. In doing so, the Banking Department announced that its actions were taken

"As a result of information received by the Banking Department and the potential risk to New York consumers . . . ."

27.     On November 4, 2004, Olympia voluntarily surrendered its license on a permanent basis. On information and belief, Olympia is liquidating its business.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT
### (against Olympia)

28.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 27 above as if set forth in full herein.

29.     The Contract is a valid, binding and enforceable agreement between Fannie Mae and Olympia.

30.     Fannie Mae has fully performed its obligations under the Contract.

31.     As set forth above, Olympia has breached its obligations under the Contract. Such conduct, among other things, is specifically recognized as constituting breaches of contract pursuant to Sections VIII(A)(1) and VIII(A)(2) of the Contract. These breaches are material and severe.

32.     As a result of Olympia's breaches of the Contract, Fannie Mae has suffered damages in an amount not yet ascertainable and to be determined at trial but believed to exceed at least $44 million.

## SECOND CAUSE OF ACTION

### FRAUD
### (against Olympia and Lieb Pinter)

33.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 32 above as if set forth in full herein.

7

34.     Defendants' conduct set forth above, including (a) their failure to inform Fannie Mac that loans should had been paid off, (b) their failure to inform Fannie Mac of their diversion of funds due and owing to Fannie Mae, (c) their payment of the borrowers' apparent principal and interest obligations, and (d) their representations with regard to the mortgages they sold to Fannie Mac and serviced on Fannie Mae's behalf were misrepresentations of fact.

35.     These misrepresentations were material and known to Defendants to be false.

36.     Defendants made these misrepresentations to Fannie Mac for the purpose of and intending that Fannie Mae rely on them. Fannie Mae did so rely on these misrepresentations and was ignorant of the truth.

37.     As a result of Defendants' fraud, Fannie Mac has suffered damages in an amount not yet ascertainable and to be determined at trial but believed to exceed at least $44 million.

### THIRD CAUSE OF ACTION

### APPOINTMENT OF A RECEIVER

38.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 37 above as if set forth in full herein.

39.     As se forth above, Defendants have engaged in fraudulent conduct.

40.     As a result of Defendants' actions, Fannie Mae is in imminent danger that property will be lost or squandered.

41.     On information and belief, the amounts by which Fannie Mac has been damaged so far exceed Defendants' resources as to render legal remedies available to Fannie Mae inadequate. Moreover, Fannie Mac requires the appointment of a receiver in order to accomplish the orderly administration of outstanding loans, the search for relevant information, and the orderly, fair and equitable winding down of Olympia's business.

42.     In addition to the above, Olympia continues to receive and/or hold borrower funds in connection with loans it previously serviced. Despite demands by Fannie Mae, Olympia refuses to remit these funds.

43.     The New York State Banking Department has temporarily suspended Olympia's license. Defendant has surrendered its license to do any additional lending business and is winding down its affairs. It will not, therefore, suffer any injury by virtue of the appointment of a receiver. As set forth above, however, Fannie Mae stands to suffer great injury in the event that a receiver is not appointed.

44.     Fannie Mae seeks the appointment of a receiver on a preliminary and permanent basis. Fannie Mae respectfully avers that the evidence of Defendant's wrongdoing is so strong and undeniable that Fannie Mae will succeed on the merits of its claim and that Fannie Mae will suffer irreparable injury, as described above, absent preliminary relief.


     **WHEREFORE**, Plaintiff requests that this Court grant judgment against Defendants, jointly and severally, as follows:

     (i)     On the First Cause of Action, judgment in an amount to be determined at trial but believed to exceed $44 million;

     (ii)    On the Second Cause of Action, judgment for compensatory damages in an amount to be determined at trial but believed to exceed $44 million and for punitive damages in an amount to be determined at trial;

     (iii)   On the Third Cause of Action, an Order, preliminarily during the pendency of this action and permanently thereafter, appointing a receiver to identify, marshal, secure, and distribute the assets of Defendant in a fair and equitable manner; and

9

(iv)     Such other and further relief as to this Court may seem just and proper, together

with costs and disbursements of this action.

Dated: New York, New York
       November 16, 2004

KIRKPATRICK & LOCKHART LLP

By:

Eugene R. Licker (EL 0334)
Michele Higgins  (MH 3368)
599 Lexington Avenue
New York, New York  10022-6030
(212) 536-3900

Attorneys for Plaintiff Federal National
Mortgage Association

# Mortgage Selling And Servicing Contract



 **FannieMae**

# Contract

|  |  |  | Page |
|---|---|---|---|
| **Mortgage Selling and Servicing Contract** | | | |

| | | | Page |
|---|---|---|---|
| I | General Information | | 1 |
| II | Eligibility Requirements for Lenders | | 2 |
| III | Sale of Mortgages and Participation Interests | | 3 |
| IV | Sale of Mortgages and Participation Interests—Lender's Warranties | | 4 |
| V | Servicing Mortgages | | 8 |
| VI | Assignment, Consideration and Continuance | | 10 |
| VII | Assigning Mortgage Servicing | | 11 |
| VIII | Breaches of Contract | | 11 |
| IX | Termination of Contract | | 14 |
| X | Continuance of Responsibilities or Liabilities | | 17 |
| XI | Participation Interests—Special Provisions | | 18 |
| XII | Notice | | 20 |
| XIII | Prior Agreements | | 21 |
| XIV | Severability and Enforcement | | 21 |
| XV | Captions | | 21 |
| XVI | Scope of Contract | | 21 |
| XVII | Signatures and Date | | 22 |

**FannieMae**

# Contract

**Mortgage Selling and Servicing Contract**

This contract for selling and servicing mortgages (the "Contract") is between the Mortgage Lender (the "Lender") that signs this document and the Federal National Mortgage Association ("Fannie Mae", "we", "our", "us"), a corporation organized and existing under the laws of the United States.

## I General Information

This section contains important basic information about the Contract, which we are permitted to enter into under authority of Title III of the National Housing Act (12 U.S.C. 1716, *et. seq.*), which is also known as the Federal National Mortgage Association Charter Act.

**A. Purpose of Contract**

The purpose of this Contract is:

* to establish the Lender as an approved seller of mortgages and participation interests to us;

* to provide the terms and conditions of the sales;

* to establish the Lender as an approved servicer of mortgages we have purchased or in which we have purchased a participation interest; and

* to provide the terms and conditions of servicing.

**B. Consideration**

In consideration of the purpose of this Contract and of all the provisions and mutual promises contained in it, the Lender and Fannie Mae agree to all that this Contract contains.

**C. Our Guides**

We issue Fannie Mae's Guides to Lenders (our "Guides") and furnish them to the Lender. These Guides are:

* Selling;

* Servicing; and

* Multifamily.

Whenever there is a reference to the Guides in this Contract, it means the Guides as they exist now and as they may be amended or supplemented in writing. We may amend or supplement them, at our sole discretion, by furnishing amendments or supplementary matter to the Lender.

The term "Guides" also includes anything that, in whole or in part, supersedes or is substituted for the Guides.

**D. Important Definitions**

Anywhere that the words that appear below are used in this Contract, the following definitions apply:

1. **"Mortgage"**—A loan, evidenced by a note, bond or other instrument of indebtedness. The loan is secured by a mortgage, deed of trust, deed to secure debt or other instrument of security that applies to property. "Mortgage" includes such instruments of indebtedness and security, together with

* the evidence of title;

* the chattel mortgage or security agreement and financing statement; and

* all other documents, instruments and papers pertaining to the loan.

# Contract

2. **"FHA/VA Mortgage"** — A mortgage insured or guaranteed in whole or in part by the Federal Housing Administration or Veterans Administration.

3. **"Conventional Mortgage"** — A mortgage other than an FHA/VA mortgage, which Fannie Mae is authorized to purchase under the Federal National Mortgage Association Charter Act.

4. **"Property"** or **"Mortgaged Property"** — The property that is now subject to a mortgage, or was subject to such mortgage, where the mortgage has been foreclosed or possession or title to the property has been taken by Fannie Mae or on our behalf.

5. **"Participation Interest"** or **"Participation Interest in Mortgages"** — An undivided interest in mortgages, specified in the applicable participation certificate that is evidence of such interest. A "participation interest" or "participation interest in mortgages" consists of a specified percentage of the principal (and a like percentage of all rights and benefits of the mortgagee or equivalent party under such mortgage) together with a specified yield on it.

## II  Eligibility Requirements For Lenders

For us to purchase mortgages or participation interests from a Lender, the Lender must meet the eligibility requirements specified in this section.

**A.**
**General**
**Requirements**

These are the general requirements the Lender must meet to be eligible to sell us mortgages or participation interests or service mortgages for us:

1. **Meet Fannie Mae Standards.** The Lender must have as two of its principal business purposes:

• making mortgages of the type that we will purchase entirely or purchase a participation interest in under this Contract; and

• servicing such mortgages.

In addition, the Lender, in our judgment, must have at all times the capacity to originate and sell to us mortgages and participation interests that meet our purchase standards and the standards generally imposed by private institutional mortgage investors, and must at all times have the capacity to service such mortgages for us under those standards.

2. **Have Qualified Staff and Adequate Facilities.** The Lender must, at all times, have employees who are well trained and qualified to perform the functions required of the Lender under this Contract.

In addition, the Lender must maintain facilities that are adequate to perform its functions under this Contract.

3. **Maintain Fidelity Bonds and Errors and Omissions Coverage.** The Lender must maintain, at its own expense, a fidelity bond and errors and omissions insurance, as required by our Guides.

4. **Report Basic Changes.** The Lender must notify us promptly in writing of any changes that occur in its principal purpose, activities, staffing or facilities.

**FannieMae**

# Contract

**B.
Ownership And
Status Of Lender**

When we approve a Lender, one of the major considerations is the information the Lender has provided about the eligibility, qualifications and financial status of the Lender and its owners.

Consequently, the Lender must give us immediate notice of a change in its status or ownership, including any:

* sale or transfer of a majority interest in it;

* merger;

* consolidation; or

* change in legal structure.

**C.
Finances**

In order to remain an approved Lender under this Contract, the Lender must meet our current net worth requirements. These requirements are contained in our Guides.

The required net worth must be maintained in the form of assets acceptable to us.

The Lender must give us a copy of its annual financial statements and any other related information that we may require.

**D.
Access To
Lender's Records**

The Lender agrees to permit our employees or designated representatives to examine or audit records or accounts relating to mortgages or participation interests sold or serviced under this Contract. All records relative to the Lender's continued eligibility to sell or service mortgages under this Contract may also be examined or audited. Any examination or audit made on our behalf will be conducted during regular business hours unless the Lender agrees otherwise.

## III   Sale of Mortgages and Participation Interests

This section contains the basic rules governing our purchase of mortgages and participation interests.

**A.
What Governs
Purchases**

Purchases of mortgages and participation interests will be governed by:

* our written commitment to purchase;

* our Guides, including all amendments in effect on the day we make our written commitment; and

* this Contract.

**B.
What We
Purchase**

The mortgages or participation interests that we purchase must meet the requirements found in our Guides on the day we make our written commitment.

**C.
Lender's Obligation
To Purchase
Fannie Mae Stock**

If our Guides require, the Lender will promptly purchase our common stock each time it delivers a mortgage or participation interest to us. The amount of stock to be purchased and the procedures for buying it are also found in our Guides.

**D.
Fannie Mae Has
No Obligation
To Purchase**

The fact that we have signed this Contract does not mean that we must make a commitment to purchase any mortgage or participation interest from the Lender.

# Contract

## IV Sale Of Mortgages And Participation Interests — Lender's Warranties

The Lender makes certain warranties to us.

These warranties:

- apply to each mortgage sold to us in its entirety;
- apply to each mortgage in which a participation interest is sold to us;
- are made as of the date transfer is made to us;
- continue after the purchase of the mortgage or participation interest;
- continue after payment by us of the purchase price to the Lender; and
- are for our benefit as well as the benefit of our successors and assigns.

Warranties may be waived, but only by us in writing.

**A.
Specific
Warranties**

Following are the specific warranties made by the Lender.

1. **Mortgage Meets Requirements.** The mortgage conforms to all the applicable requirements in our Guides and this Contract.

2. **Lender Authorized To Do Business.** The Lender and any other party that held the mortgage were, at all times during which the holder held the mortgage, authorized to transact business in the jurisdiction where the property is located.

However, if the Lender or any other party that held the mortgage was not authorized to do business in the jurisdiction where the property is located, then the warranty is made that none of the following activities of the Lender or other parties constituted doing business in that jurisdiction:

- lending the mortgage funds;
- acquiring the mortgage;
- holding the mortgage; or
- transferring the mortgage in whole or to the extent of a participation interest.

3. **Lender Has Full Right To Sell And Assign.** The Lender is the sole owner and holder of the mortgage and has full right and authority to sell and assign it, or a participation interest in it, to us. In addition, the Lender's right to sell or assign is not subject to any other party's interest or to an agreement with any other party.

4. **Lender's Lien On Property.** The mortgage, whether represented by the Lender as the first lien or as the second lien, is a valid and subsisting lien on the property described in it.

If the mortgage is represented by the Lender as the first lien, the property is free and clear of all encumbrances and liens having priority over it except for liens for real estate taxes, and liens for special assessments, that are not yet due and payable.

**FannieMae**

# Contract

If the mortgage is represented by the Lender as the second lien, the property is free and clear of all encumbrances and liens having priority over it except for one properly recorded first mortgage lien, real estate taxes and liens of special assessments not yet due and payable.

Any security agreement, chattel mortgage or equivalent document that is related to the mortgage and that is held by the Lender or delivered to us, is a valid and subsisting lien on the property described in such document, of the same priority as the mortgage.

The Lender has full right and authority to sell or assign each lien to us or to an extent that is proportionate to our participation interest.

**5. Documents Are Valid And Enforceable.** The mortgage and any security agreements, chattel mortgages, or equivalent documents relating to it have been properly signed, are valid, and their terms may be enforced by us, our successors and assigns, subject only to bankruptcy laws, Soldiers' and Sailors' Relief Acts, laws relating to administering decedents' estate, and general principles of equity.

**6. Property Not Subject To Liens.** The Property is free and clear of all mechanics' liens, materialmen's liens or similar types of liens. There are no rights outstanding that could result in any of such liens being imposed on the property.

This warranty is not made if the Lender furnishes us with title insurance that gives us substantially the same protection as this warranty.

**7. Title Insurance.** There is a mortgage title insurance policy, or other title evidence acceptable to us, on the property. The title insurance policy is on a current ALTA form (or other generally acceptable form) issued by a generally acceptable insurance company.

The title insurance insures (or the other title evidence protects) us or the Lender and its successors and assigns, as holding a lien of the priority warranted in "4. Lender's Lien On Property."

**8. Modification Or Subordination Of Mortgage.** The Lender has not done any of the following:

* materially modified the mortgage;

* satisfied or cancelled the mortgage in whole or in part;

* subordinated the mortgage in whole or in part, unless it is represented to us as a second mortgage;

* released the property in whole or in part from the mortgage lien; or

* signed any release, cancellation, modification or satisfaction of the mortgage.

This warranty is not made if any of the things just mentioned have been done but have been expressly brought to our attention in a letter before we make payment to the Lender. The letter must be acknowledged by us in writing.

# Contract

**9. Mortgage In Good Standing.** There are no defaults under the mortgage, and all of the following that have become due and payable have been paid or an escrow of funds sufficient to pay them has been established:

* taxes;

* government assessments;

* insurance premiums;

* water, sewer and municipal charges;

* leasehold payments; or

* ground rents.

**10. Advances.** The Lender has not made or knowingly received from others, any direct or indirect advance of funds in connection with the loan transaction on behalf of the borrower except as provided in our Guides. This warranty does not cover payment of interest from the earlier of:

* the date of the mortgage note; or

* the date on which the mortgage proceeds were disbursed to

* the date one month before the first installment of principal and interest on the mortgage is due.

**11. Property Conforms To Zoning Laws.** The Lender has no knowledge that any improvement to the property is in violation of any applicable zoning law or regulation.

**12. Property Intact.** The property is not damaged by fire, wind or other cause of loss. There are no proceedings pending for the partial or total condemnation of the property.

**13. Improvements.** Any improvements that are included in the appraised value of the property are totally within the property's boundaries and building restriction lines. No improvements on adjoining property encroach on the mortgaged property unless FHA or VA regulations or our Guides permit such an encroachment.

**14. Mortgage Not Usurious.** The mortgage is not usurious and either meets or is exempt from any usury laws or regulations.

**15. Compliance With Consumer Protection Laws.** The Lender has complied with any applicable federal or state laws, regulations or other requirements on consumer credit, equal credit opportunity and truth-in-lending.

**16. Property Is Insured.** A casualty insurance policy on the property is in effect. It is written by a generally acceptable insurance company and provides fire and extended coverages for an amount at least equal to the amount required by our Guides.

**FannieMae**

# Contract

A flood insurance policy is in effect on the property if any part of it is in an area listed in the Federal Register by the Federal Emergency Management Agency as an area with special flood hazards, and if insurance is available. The flood insurance is written by a generally acceptable insurance company, meets current guidelines of the Federal Insurance Administration, and is for an amount at least equal to the amount required by our Guides.

The Lender will make sure the required insurance is maintained as long as it services the mortgage. Any policy mentioned in this warranty contains a standard mortgage clause that names us or the Lender and its successors and assigns as mortgagee.

**17. Mortgage Is Acceptable Investment.** The Lender knows of nothing involving the mortgage, the property, the mortgagor or the mortgagor's credit standing that can reasonably be expected to:

* cause private institutional investors to regard the mortgage as an unacceptable investment;

* cause the mortgage to become delinquent; or

* adversely affect the mortgage's value or marketability.

**18. Mortgage Insurance Or Guaranty In Force.** If the Lender represents that the mortgage is insured or guaranteed under the National Housing Act as amended, or under the Servicemen's Readjustment Act of 1944 as amended, or by a contract with a mortgage insurance company, the insurance or guaranty is in full force. In addition, the Lender has complied with all applicable provisions and related regulations of the Act, or the insurance contract, that covers the mortgage.

**19. Adjustable Mortgages.** If the mortgage provides that the interest rate or the principal balance of the mortgage may be adjusted, all of the terms of the mortgage may be enforced by us, our successors and assigns.

These adjustments will not affect the priority of the lien warranted in "4. Lender's Lien On Property."

**20. Participation Information Is Correct.** All the information and statements in any participation certificate that the Lender delivers to us are complete, correct and true.

**B.
Consequences Of
Untrue Warranties
-- Repurchase**

We may require the Lender to repurchase a mortgage or participation interest sold to us if any warranty made by the Lender about the mortgage or participation interest is untrue (whether the warranty is in this Contract or was made at our specific request).

We may require repurchase whether or not the Lender had actual knowledge of the untruth. We may also enforce any other available remedy.

The Lender must pay us the repurchase price within 30 days of our demand. The repurchase price, as provided in our Guides, will not be adjusted because the Lender paid us fees or charges or subscribed to our capital stock.

# Contract

**C.
Consequences Of
Untrue Warranties-
Termination
Of Contract**

While untrue warranties about a particular mortgage or participation interest may be the basis for requiring repurchase of the particular mortgage or participation interest, there can be additional consequences. They may also give rise to responsibilities of the Lender under "D. Indemnification For Breach Of Warranty; Holding Us Harmless." In addition, untrue warranties can, under certain circumstances, be treated as a breach of contract that could result in the withdrawal of our approval of a Lender and the termination of this Contract (details are contained in Sections VIII and IX).

**D.
Indemnification
For Breach Of
Warranty;
Holding Us Harmless**

If there is a breach of warranty under this Contract, the Lender, at our request, will indemnify us and hold us harmless against any related losses, damages, judgments or legal expenses.

## V  Servicing Mortgages

This section contains the basic rules governing the servicing of mortgages that we purchase, or in which we purchase a participation interest.

**A.
Servicing Duties
Of The Lender**

The servicing duties of the Lender are:

1. **Scope Of Duties.** The Lender will diligently perform all duties that are necessary or incident to the servicing of:

- all mortgages it is servicing for us on the date this Contract takes effect; and
- all other mortgages that the Lender is required to service by the terms of this Contract or any other existing or future agreement between us and the Lender.

2. **Mortgages To Be Serviced.** Any mortgage we have purchased from the Lender, or in which we have purchased a participation interest from the Lender, will be serviced by the Lender for us according to the terms of this Contract, unless:

- the mortgage is not within any category of those that are required by our Guide to be serviced; or
- we give the Lender written notification or consent that a mortgage to be purchased by us will not be serviced by the Lender.

3. **Service According To Guides.** Any mortgage serviced under this Contract, which we own or in which we have purchased a participation interest, must be serviced by the Lender according to the provisions in our Guides that are in effect on the date of this Contract or as amended in the future. This is true regardless of when:

- the mortgage was originated;
- the mortgage or a participation interest in it was transferred to us; or
- the Lender began servicing the mortgage.

The Lender will also follow other reasonable instructions we give it and must strictly follow accepted industry standards when servicing a mortgage for us.

**FannieMae**

# Contract

**4. Service At Lender's Own Expense.** The cost of servicing will be the Lender's unless our Guides expressly provide otherwise.

**5. Special Responsibilities In Foreclosures.** Among the other duties that may be assigned to the Lender through our special instructions or under the terms of our Guides is the responsibility to manage and appropriately dispose of property when a mortgage it is servicing for us has been foreclosed, or possession or title has been taken by us or on our behalf.

The Lender must manage and dispose of the property according to the terms of the mortgage and our Guides.

**6. Service Until Need Ends.** The Lender must service each mortgage continuously from the date its servicing duties begin until:

* the mortgage's principal and interest have been paid in full;

* the mortgage has been liquidated and the mortgaged property properly disposed of (if the Lender is required to do these things); or

* the Lender's servicing duties are terminated according to Section IX of this Contract.

**B.
Compensation**

The Lender's compensation for servicing mortgages, including the management and disposal of properties, under this Contract is specified in our Guides.

We may change the Lender's compensation by modifying our Guides at any time. However, such a change will not affect mortgages that we have purchased or committed to purchase before the date of the change.

**C.
Ownership
Of Records**

All mortgage records reasonably required to document or properly service any mortgage we own in its entirety are our property at all times. This is true whether or not the Lender developed or originated them.

The following are considered mortgage records:

* all mortgage documents;

* tax receipts;

* insurance policies;

* insurance premium receipts;

* ledger sheets;

* payment records;

* insurance claim files and correspondence;

* foreclosure files and correspondence;

* current and historical data files; and

* all other papers and records.

# Contract

**1. Lender As Custodian.** The mortgage records belong to us. The Lender can have possession of the mortgage records only with our approval, and the Lender is acting as our custodian. This is true whether the Lender receives the mortgage records from an outside source or prepares them itself.

**2. Delivery.** When we ask for any mortgage records in writing, the Lender will deliver them to us or someone we choose. The Lender must also send us a list that identifies each mortgage, and must give us other information we request to identify the mortgages delivered.

We will not be required to sign or deliver any trust receipts before the Lender delivers the mortgage records we have requested.

If we ask the Lender in writing for reproductions of any mortgage records the Lender microfilmed or condensed, the Lender will reproduce them promptly at no cost to us or the party to whom we want them delivered.

**3. Joint Ownership.** If we own a participation interest in a mortgage, the other owners and we own the mortgage records jointly. For these mortgages, the Lender possesses the mortgage records as a custodian for the joint owners.

If we ask for copies of the mortgage records and servicing information about any such mortgages, the Lender will furnish them. Or, if we need any mortgage records for legal evidence or other purposes, the Lender will release them to us for a reasonable time.

**D.**
**Agreement To**
**Indemnify And**
**Hold Harmless**

The Lender will indemnify us and hold us harmless against all losses, damages, judgments or legal expenses that result from its failure in any way to perform its services and duties in connection with servicing mortgages or managing or disposing of property according to this Contract or our Guides.

If any private entity or governmental agency sues us, makes a claim against us or starts a proceeding against us based on the Lender's acts or omissions in servicing mortgages or managing or disposing of property, the Lender's obligation to indemnify and hold us harmless must be met regardless of whether the suit, claim or proceeding has merit or not.

The Lender's obligation does not apply, however, if during a suit, claim or proceeding, we give the Lender express written instructions and as a result of the Lender following them we suffer losses, damages, judgments or legal expenses.

**E.**
**Ownership Of**
**Our Stock**

If our Guides require, the Lender will continuously own our common stock in connection with all mortgages it services under this Contract. The amount of stock to be owned will be established by our Guides as they were in existence on the date the Lender started servicing the applicable mortgages.

# VI  Assignment, Consideration And Continuance

This section describes our requirements covering assignment of, consideration for and continuance of this Contract.

# Contract

| | |
|---|---|
| **A.**<br>**Assignment** | Because the relationships created by this Contract are personal, the Lender may not, without our prior written approval, assign: |

- this Contract under any circumstances, either voluntarily or involuntarily, by operation of law, or otherwise; or

- its responsibility for servicing individual mortgages we own or in which we have a participation interest. (See Section VII of this Contract for required procedures governing assignments of servicing).

| | |
|---|---|
| **B.**<br>**Limited Value**<br>**Of Contract**<br>**To Lender** | The Lender acknowledges that it has paid us no monetary consideration for making it an approved mortgage seller or servicer, except an application fee to reimburse us for the expenses of reviewing its application. |

The Lender also agrees that, except for the purchase of mortgages, the servicing of mortgages, or any fee for the termination of this Contract, this Contract has no value to the Lender.

| | |
|---|---|
| **C.**<br>**Requirements**<br>**For Continuance** | The Lender's right to continue selling and servicing mortgages under this Contract depends on, among other things, its continuing to meet the eligibility requirements in Section II of this Contract. |

## VII   Assigning Mortgage Servicing

The Lender may not assign its responsibility for servicing all or any part of the mortgages that it is servicing for us without first obtaining our written consent.

Any Lender to which servicing is assigned must:

- be acceptable to us; and

- sign a Mortgage Selling and Servicing Contract with us.

We may require that the Lender and transferee lender sign documents and take other reasonable steps to perfect the assignment.

## VIII   Breaches Of Contract

The Lender's taking certain actions, or failing to take certain actions, can be treated by us as a breach of contract. A breach of contract can lead to a termination of the Contract. Termination is provided for in detail in Section IX.

| | |
|---|---|
| **A.**<br>**Specific**<br>**Breaches Of**<br>**Contract** | Breaches of this Contract include the following: |

**1. Harm, Damage, Loss Or Untrue Warranties.** It is a breach if any act or omission of the Lender in connection with the origination and sale to us of any mortgage or participation interest causes us harm, damage or loss. It is also a breach if the Lender sells us any mortgage or participation interest knowing that any of the mortgage warranties are untrue (these warranties are listed in Section IV A).

# Contract

**2. Failure To Comply With This Contract Or Our Guides.** It is a breach if the Lender does not comply with this Contract or our Guides through any act or omission, including, without limitation, the following:

* failure to establish and maintain accounts for our funds or mortgagors' funds as required by our Guides;

* use of our or mortgagors' funds in any manner other than that permitted by our Guides, including the Lender's failure to deposit all mortgage funds if, when, and to the extent required by our Guides;

* failure to remit all funds due to us within the time periods required by our Guides;

* failure to make or ensure, according to the provisions of each mortgage or of applicable laws or regulations, proper and timely payment of all:

  — taxes;

  — assessments;

  — leasehold payments;

  — ground rents;

  — insurance premiums (including premiums of casualty, liability and mortgage insurance and other forms of required insurance);

  — required interest on escrow funds; and

  — other required payments with respect to any mortgage (including mortgaged property) serviced;

  unless the Lender is relieved of these responsibilities by the express provisions of our Guides, or by our written instructions that relate to a particular mortgage or property;

* failure to renew or ensure renewal of any required insurance policy on any mortgage (including mortgaged property) serviced under this Contract;

* failure to maintain adequate and accurate accounting records and mortgage servicing records for the mortgages, or to maintain proper identification of the applicable loan files and mortgage records that prove our outstanding participation interests;

* failure to submit adequate and accurate accounting and mortgage servicing reports within the time required by our Guides; or

* failure to take prompt and diligent action under applicable law or regulation to collect past due sums on mortgages, or to take any other diligent action described in our Guides that we reasonably require for mortgages in default.

 **FannieMae**

# Contract

**3. Failure To Properly Foreclose Or Liquidate.** Where a mortgage is in default and the Lender is required or has decided to foreclose or liquidate it, it is a breach if the Lender fails to take prompt and diligent action consistent with applicable law or regulations to foreclose on or otherwise appropriately liquidate such mortgage and to perform all incident actions. It is a breach whether or not the failure results from the acts or omissions of an attorney, trustee or other person or entity the Lender chooses to effect foreclosure or liquidation.

**4. Failure To Properly Manage, Dispose Of, Or Effect Proper Conveyance Of Title.** It is a breach if any mortgage serviced under this Contract has been foreclosed or the possession or title to the property has been taken by us or on our behalf, or on behalf of other owners of a participation interest in the mortgage, and the Lender:

- fails to properly manage, dispose of or effect proper conveyance of title to the mortgaged property; or

- fails to do the above in accordance with this Contract, our Guides, and any pertinent laws, regulations, or mortgage insurance policies or contracts.

**5. Lender's Financial Ability Impaired.** It is a breach if there is a change in the Lender's financial status that, in our opinion, materially and adversely affects the Lender's ability to satisfactorily service mortgages.

Changes of this type include:

- the Lender's insolvency;

- adjudication of the Lender as a bankrupt;

- appointment of a receiver for the Lender; or

- the Lender's execution of a general assignment for the benefit of its creditors.

If any such change does take place:

- no interest in this Contract will be considered an asset or liability of the Lender or of its successors or assigns; and

- no interest in this Contract will pass by operation of law without our consent.

**6. Failure To Obtain Our Prior Written Consent.** It is a breach if the Lender fails to obtain our prior written consent for:

- a sale of the majority interest in the Lender; or

- a change in its corporate status or structure.

**7. Failure To Comply With This Contract Or Our Guides.** It is a breach if the Lender fails at any time to meet our standards for eligible mortgage sellers or servicers so that, in our opinion, the Lender's ability to comply with this Contract or our Guides is adversely affected.

# Contract

8. **Court Findings Against Lender Or Principal Officers.** It is a breach if:

* a court of competent jurisdiction finds that the Lender or any of its principal officers has committed an act of civil fraud; or

* the Lender or any of its principal officers is convicted of any criminal act related to the Lender's lending or mortgage selling or servicing activities or that, in our opinion, adversely affects the Lender's reputation or our reputation or interests.

**B.
Actions
To Correct
A Breach**

If there is a breach of contract by the Lender, we will have the right to take any reasonable action to have any breach corrected by the Lender before we exercise any right we have to terminate this Contract in whole or in part; however, we are not required to try to have a breach corrected before termination.

Any forbearance by us in exercising our right to terminate this Contract in whole or in part will not be a waiver of any present or future right we have under this Contract to so terminate it.

## IX   Termination Of Contract

The reason why this Contract may be terminated and the ways in which this may be done are outlined in this section. When the Contract is terminated, the entire relationship between the Lender and us ends (with certain exceptions that are explained in this section).

**A.
Termination
By Either Party
Of Mortgage
Selling
Arrangements**

The provisions of this Contract covering the sale of mortgages or participation interests under this Contract may be terminated by the Lender or by us, with or without cause, by giving notice to the other party. Notice of termination may be given at any time but must conform to Section XII of this Contract.

Termination is effective immediately upon notice of termination, unless the notice specifies later termination.

Termination will not affect any outstanding commitments we have made to purchase mortgages or participation interests from the Lender. However, if the Lender has breached this Contract, we may declare any or all outstanding commitments void.

**B.
Termination
By Lender Of
Mortgage
Servicing
Arrangements For
Wholly-Owned
Mortgages**

The Lender may terminate the provisions of this Contract covering the servicing of mortgages we entirely own by giving us notice at any time. Notice must conform to Section XII of this Contract.

Termination is effective the last day of the third calendar month after the calendar month in which notice is given.

If the Lender terminates this Contract in whole or in part, we will not pay the Lender a termination fee.

 **FannieMae**

# Contract

**C.**
**Termination**
**By Us Of**
**Servicing**
**Arrangements**
**For Wholly-Owned**
**Mortgages**

We may terminate the provisions of this Contract covering the servicing under this Contract of any or all mortgages that we entirely own. This may be done by following the procedures outlined below.

**1. Termination Without Cause.** We may terminate servicing for any reason, by giving the Lender notice of the termination. If we do so, the provisions of this Contract covering the servicing of the affected mortgages will automatically terminate on the thirtieth day following the day our notice is given. Whenever we do this (and the termination is not because of any breach by the Lender as described in Section IX C2) we will pay the Lender, for each mortgage on which servicing is terminated, a lump-sum termination fee as provided in *a.* below. However, whenever we terminate solely in order to transfer the servicing to another Lender, and there has been no sale of our interest in the affected mortgages, the provisions of *b.* below will apply.

*a. Termination Fee.* The termination fee will be an amount equal to twice the Lender's annualized servicing compensation, at the rate of compensation that is in effect for the mortgage as of the date of the termination, applied against the unpaid principal balance of the mortgage as of such date.

For purposes of determining the termination fee:

* The Lender's servicing compensation consists of the servicing fee at the Applicable Servicing Rate plus any previously agreed upon excess yield that the Lender is permitted to retain on the applicable mortgage.

* "Applicable Servicing Rate" means the rate of the servicing fee for the servicing of the mortgage, expressed as an annualized fractional percentage.

[Refer to appropriate sections of our Guides for more detailed information regarding the computation of termination fees.]

*b. Termination To Effect Transfer.* Whenever we terminate servicing solely in order to transfer servicing of the mortgages to another Lender, and there has been no sale of our interest in the mortgages, we will give the Lender notice of the required transfer. Within the 90-day period immediately following the date our notice is given, the Lender may arrange for the sale of the servicing to another Fannie Mae-approved Lender in good standing that, in our judgment, will properly service the mortgages to be transferred. Within that 90-day period, the Lender will give notice of any proposed sale to us, together with all related information. The sale of servicing is conditioned upon our approval, which will not be unreasonably withheld. Any resulting transfer of servicing will be completed not later than 60 days after our approval of the transfer; and

* the Lender will be entitled to the proceeds of the sale of servicing, and will bear all costs and expenses related to the sale and transfer of servicing;

* the Lender will not pay us a transfer fee;

* we will not pay the Lender a termination fee;

# Contract

- we may require the purchaser of the servicing to assume any or all warranties that were made to us in connection with the sale to us of the affected mortgages; and

- the purchaser of the servicing will succeed to the Lender's obligations, rights and servicing compensation, under the provisions of this Contract covering the servicing of the affected mortgages. For all of the affected mortgages that we purchased under a net-yield contract, the servicing compensation will include the specified minimum servicing fee, plus the Lender's share of that portion of the yield which exceeds the stated net yield, as provided under the commitment contract.

[Refer to appropriate sections of our Guides for more detailed information regarding the computation of the Lender's servicing compensation.]

If at the end of the 90-day period following our notice, the Lender has not arranged to sell and transfer the servicing of the affected mortgages to another Lender acceptable to us and given us the required notice, the provisions of this Contract covering the servicing of the mortgages will automatically terminate on the fifteenth day following the end of the 90-day period, and we will transfer the servicing to a Lender of our choice. In such a case, we will pay the Lender, for each mortgage on which servicing is terminated, a termination fee computed as provided under *a.* above. We will deduct from the termination fee paid to the Lender a transfer fee that is the greater of $500.00 or 1/100 of 1% of the aggregate unpaid principal balance of all of the affected mortgages on which servicing is transferred.

*c. General Criteria For Termination Fees.* Notwithstanding anything to the contrary in this Contract, we may change the amount of termination fee that we pay, or other provisions of this Section IX C1, from time to time, by changing the appropriate provisions of our Guides. However, such a change will not affect mortgages that we have purchased or that we have committed to purchase before the date of the change.

Our written tender of the termination fee to the Lender, or its successors or assigns, is complete compensation for each mortgage serviced by the Lender on which servicing is terminated. Any sums we owe the Lender for servicing prior to the termination date are not included in the termination fee. When we pay a termination fee, the Lender will not be entitled to the proceeds for any sale of the servicing involved.

2. **Termination With Cause.** We may terminate if the Lender breaches any agreement in this Contract, including, without limitation, any of those breaches listed in Section VIII A. This may be done by giving the Lender notice of termination. Notwithstanding anything in this Contract to the contrary, if we terminate for breach, we may make it effective immediately, and we will not pay the Lender a termination fee or proceeds from any sale of the servicing involved. Furthermore, we will not pay a servicing termination fee if a mortgage is repurchased by the Lender because a warranty is untrue.

 **FannieMae**

# Contract

**D.
Termination
By Us Of
Servicing
Arrangements
For Mortgages
In Which We
Have A
Participation
Interest**

If the Lender breaches any agreement in this Contract, including, without limitation, any breach listed in Section VIII A, we may terminate the provisions of this Contract covering the servicing of any or all mortgages in which we own a participation interest. This may be done by giving notice of termination. Such termination may be effective immediately, and we will not pay the Lender a termination fee.

**1. Transfer Of Lender's Powers.** Upon termination, we will automatically succeed to all the Lender's rights in and responsibilities for servicing of the affected mortgages. We will also have the option to exercise all the Lender's powers relating to these mortgages, and to designate any person or firm to exercise those powers. However, exercise of the Lender's powers must be consistent with the Lender's and our respective participation interests.

The mortgage instruments for these mortgages and all related mortgage records will be delivered to us or a party we designate. The Lender will also deliver necessary assignments, transfers and documents of authority.

**2. Transfer Of Servicing.** If we terminate the Lender's servicing of any such mortgages, we are authorized to transfer the servicing of the mortgages to new servicers and pay the new servicers a fee. The fee will apply to the total outstanding principal balance on each mortgage, including our participation interest in each mortgage as well as the participation interest of the Lender and of any other owner.

**3. Liability For Fees.** The Lender and all additional owners of a participation interest will be liable for their respective shares of the servicing fee we pay. They will also be liable for their respective shares of advances that, in our sole discretion, are required. Advances may be required for insurance, taxes, maintenance, improvements or other necessary outlays.

If the Lender or other owners fail to promptly provide their share of funds for advances, or for any other necessary expenses, during any period, we may supply the funds. The fact that we do this does not release the Lender or other owners from their liability. We may deduct any amount we advance the next time we owe money to the Lender or other owners.

**E.
Rights Of
Termination
Not Impaired**

The exercise of a right of termination under any provision of this Contract will not impair any further right of termination under another provision.

## X   Continuance Of Responsibilities Or Liabilities

Responsibilities or liabilities of the Lender that exist before the termination of this Contract will continue to exist after termination unless we expressly release the Lender from any of them in writing. This is true whether the Contract was terminated by the Lender or by us.

# Contract

## XI   Participation Interests-Special Provisions

This section contains special provisions that govern participation interests.

Listed below are the consequences of the sale of a participation interest.

**A.**
**After The**
**Sale Of A**
**Participation**
**Interest**

**1. Transfer Of Undivided Interest.** When the Lender sells and conveys to us a participation interest in one or more mortgages, this is a transfer of an undivided interest in each mortgage.

The sale and conveyance of the participation interest will have the same force and effect as:

* a separate assignment of each mortgage executed and delivered to us by the Lender; and

* a promissory note separately endorsed or transferred to us.

**2. Assurance Of Our Legal Rights.** If federal or state laws or regulations now, or later, provide that the purchase of a participation interest is an extension of credit, the Lender will take whatever additional steps we may require to assure our legal rights as a purchaser of participation interests.

Such steps may include:

* placing legends on promissory notes;

* endorsing promissory notes in blank and delivering them to us; and

* executing mortgage assignments in a form acceptable to us and delivering them to us.

**3. No Partnership Or Joint Venture.** Neither the simultaneous ownership of interests in one or more mortgages nor any provision of this Contract will mean that a partnership or joint venture exists between the Lender and us.

**B.**
**Payments To Us**

The Lender will make the following payments to us, according to our Guides, for mortgages in which both the Lender and we own an interest:

**1. Ratable Sharing Of Principal.** The Lender will ratably share with us all mortgage principal payments.

**2. Participation Share Of Interest.** The Lender will pay us our participation share of interest payments up to:

* an amount sufficient for us to earn our yield on each mortgage; plus

* any amounts due us pursuant to this section.

**C.**
**Enforcement Of**
**Due-On-Sale**
**And Call Options**

As required by our Guides, the Lender will enforce the due-on-sale provisions and call options in the mortgages it services for us.

# Contract

**D.
Repurchase
Option**

The Lender will have the option to repurchase our interest in a mortgage if:

- the Lender is required by our Guides to enforce a due-on-sale clause of a mortgage in which the Lender and we own an interest; or

- we elect to exercise a call option provision of such a mortgage.

If the Lender wishes to repurchase our interest in such a mortgage, it may do so by:

- giving us notice of its intention to repurchase; and

- paying us an amount calculated according to the provisions of our Guides.

**E.
Note Rate Increase,
Foreclosure
Expenses And
Prepayment Charges**

The note rate of a mortgage is stated in the participation certificate or attached loan schedule.

**1. Note Rate Increase.** If, for any reason, there is an increase of the note rate of a mortgage in which we hold a participation interest, the Lender will pay us, according to our Guides, a percentage of the increase equal to the percentage represented by our participation interest in the mortgage. This amount will be in addition to our yield on the mortgage.

**2. Foreclosure Expenses.** The Lender will ratably share with us any reasonable foreclosure and related expenses in connection with a mortgage in which we own a participation interest.

**3. Prepayment Charges.** The Lender will ratably share with us any prepayment charges collected for mortgages in which we own a participation interest.

**F.
Advances**

The Lender will not make any optional or voluntary advances to the borrower under an open-end mortgage in which we own a participation interest.

**G.
Assignment
Or Sale Of
Participation
Interests**

Participation interests may be assigned either by the Lender or us, as follows:

**1. By Us.** Without the Lender's consent we may assign:

- our participation interest in any mortgage; and

- all rights in the mortgage we own under this Contract or under any other instruments.

**2. By Lender To Transferee.** The Lender may sell or transfer all or part of any participation interest that it owns in any mortgage under this Contract unless expressly prohibited from doing so by our Guides.

This sale or transfer of participation interests is subject to the conditions below, as well as to our Guides as they are in effect on the date of our commitment to purchase.

For every sale or transfer, the Lender must obtain and furnish us with a properly executed instrument by which the transferee:

- agrees to be bound by the terms of this Contract; and

- acknowledges our rights and interests under this Contract with respect to the mortgage.

# Contract

Our rights and interests that must be acknowledged include, without limitation, the right to assess a servicing fee against the owner of each participation interest if we:

- assume the servicing of the mortgage; or

- transfer the servicing to a new servicer under Section IX D of this Contract.

The sale or transfer of a participation interest does not relieve the Lender of any responsibility or liability under this Contract. For example, the Lender continues to be liable for any fees and other amounts charged under Section IX D3 of this Contract against the participation interest that is transferred. We may collect these amounts from the Lender or from the transferee.

**3. By Lender To Bank.** The Lender may be a member of, or be required to maintain reserves with a Federal Home Loan Bank or Federal Reserve Bank. If so, and the Lender transfers its participation interests in any mortgage under this Contract to such a bank to secure one or more advances, then the bank will not be deemed to have assumed the mortgage warranties found in Section IV A.

Also, such a transfer to the bank will not relieve the Lender of any responsibility or liability under this Contract.

## XII   Notice

Whenever notice is required under this Contract, it must be given as described in this section.

**A.**
**Notice Of**
**Termination**

Any notice of termination given under this Contract must be:

- in writing;

- delivered in person or sent by registered or certified mail, with a return receipt requested; and

- addressed to the party to which notice is being given.

Delivery and notice is given when we or the Lender mail or register the notice with any post office.

**B.**
**Our Guides**
**And Other**
**Documents**

Our Guides, including any amendments or supplements, and any other notices, demands or requests under this Contract or applicable law will be:

- in writing;

- delivered in person or mailed from any post office, substation, or letter box;

- enclosed in a postage prepaid envelope; and

- addressed to the Lender to which the matter is directed.

**C.**
**Address**

For purposes of notice, the following rules apply:

1. Our address is the address of our regional office given in this Contract.

2. The Lender's address is that of its principal place of business given in this Contract.

Any change of address must be given in writing.

# Contract

## XIII  Prior Agreements

This Contract supersedes any prior agreements between the Lender and us that govern selling or servicing of mortgages and participation interests to which this Contract relates.

However, this section will not release the Lender from any responsibility or liability under any prior agreements and understandings.

## XIV  Severability And Enforcement

If any provision of this Contract conflicts with applicable law, the other provisions of this Contract that can be carried out without the conflicting provision will not be affected.

All rights and remedies under this Contract are distinct and cumulative not only as to each other but as to any rights or remedies afforded by law or equity. They may be exercised together, separately or successively. These rights and remedies are for our benefit and that of our successors and assigns.

## XV  Captions

This Contract's captions and headings are for convenience only and are not part of the Contract.

## XVI  Scope of Contract

The following provisions apply, whether or not they are contrary to other provisions in this Contract.

**A.
Restriction
Of Lender**

We reserve the right to restrict the Lender's sale or servicing of mortgages or of participation interests to the type that the Lender and its employees have the experience and ability to originate, sell or service.

**B.
Types Of
Mortgages
Covered**

This Contract covers only the sale of mortgages and participation interests and the servicing of mortgages, within the following categories:

— FIRST MORTGAGE SELLER ONLY —

# Contract

## XVII   Signatures And Date

By executing this Contract, the Lender and we agree to all of this Contract's terms and provisions. Both the Lender and we have signed and dated this Contract below.

This Contract takes effect on the date we sign it.

Lender: _____ OLYMPIA MORTGAGE CORPORATION _____

805 AVENUE L
_____
(Address)

BROOKLYN, NY   11230

By: _____
(Authorized Signature)

A.M. DONNER, PRESIDENT
_____
(Type Name and Title)

Date: _____

Federal National Mortgage Association

FANNIE MAE
_____
(Address)

510 WALNUT STREET, 16TH FLOOR

PHILADELPHIA, PA   19106

By: _____
(Authorized Signature)

ANGELINA P. ALLEVA, DIRECTOR, LENDER ADMINISTRATION
(Type Name and Title)

Date: JUNE 8, 1988

 **FannieMae**

## Addendum To Mortgage Selling And Servicing Contract

This Addendum modifies the Mortgage Selling and Servicing Contract (the "Contract") dated June 8, 1988 _____ between the Federal National Mortgage Association ("Fannie Mae", "we", "our", "us"), a corporation organized and existing under the laws of the United States, and __Olympia_____ Mortgage Corp._____ (the "Lender").

The purpose of the Contract is to establish the Lender as an approved seller and servicer of mortgages and participation interests, and to provide the terms and conditions of the sale and servicing of mortgages. Section XVI B of the Contract identifies the categories of mortgages and participation interests that the Contract covers. The purpose of this Addendum is to modify Section XVI B of the Contract to include the following additional categories:

SELL AND SERVICE COOPERATIVE SHARE LOANS

All other terms of the Contract, including any previous modification made to it, remain in effect.

By executing this Addendum, the Lender and we agree to the modification. The modification takes effect on the date we sign this Addendum.

Lender: _____Olympia Mortgage Corp._____

_____1413 Ave. J_____
(Address)
_____Brooklyn, NY 11230_____

By: _____*Helen Brudner*_____
(Authorized Signature)
_____Helen Brudner, V.P._____
(Type Name and Title)
Date: _____6/12/96_____

Federal National Mortgage Association

_____1900 MARKET STREET_____
(Address)
SUITE 800_____

PHILADELPHIA, PA 19103_____

By: _____*Lawrence J. Dondero*_____
(Authorized Signature)
LAWRENCE J. DONDERO, JR., DIRECTOR, SERVICING MANAGEMENT &
(Type Name and Title)                   DEVELOPMENT
Date: _____JUNE 19, 1996_____

 **FannieMae**

# Addendum To Mortgage Selling And Servicing Contract

This Addendum modifies the Mortgage Selling and Servicing Contract (the "Contract") dated ___June 8, 1988___ between the Federal National Mortgage Association ("Fannie Mae", "we", "our", "us"), a corporation organized and existing under the laws of the United States, and _____
___Olympia Mortgage Corp,_____ (the "Lender").

The purpose of the Contract is to establish the Lender as an approved seller and servicer of mortgages and participation interests, and to provide the terms and conditions of the sale and servicing of mortgages. Section XVI B of the Contract identifies the categories of mortgages and participation interests that the Contract covers. The purpose of this Addendum is to modify Section XVI B of the Contract to include the following additional categories:


All other terms of the Contract, including any previous modification made to it, remain in effect.

By executing this Addendum, the Lender and we agree to the modification. The modification takes effect on the date we sign this Addendum.

Lender: ___Olympia Mortgage Corp._____

        ___1413 Avenue J_____
                        (Address)
        ___Brooklyn, New York   11230_____


By: _____
                (Authorized Signature)
    ___A.M. Donner, President_____
                (Type Name and Title)
Date: ___January 9, 1989_____

Federal National Mortgage Association

        ___510 Walnut Street - 16th Floor___
                        (Address)
        ___Philadelphia, PA   19116_____

By: _____
                (Authorized Signature)
    Angelina P. Alleva
    Director - Lender Administration
                (Type Name and Title)
Date: ___January 23, 1989_____

**FannieMae**

## Addendum To Mortgage Selling And Servicing Contract

This Addendum modifies the Mortgage Selling and Servicing Contract (the "Contract") dated JUNE 8, 1988 between the Federal National Mortgage Association ("Fannie Mae", "we", "our", "us"), a corporation organized and existing under the laws of the United States, and OLYMPIA MORTGAGE CORPORATION (the "Lender").

The purpose of the Contract is to establish the Lender as an approved seller and servicer of mortgages and participation interests, and to provide the terms and conditions of the sale and servicing of mortgages. Section XVI B of the Contract identifies the categories of mortgages and participation interests that the Contract covers. The purpose of this Addendum is to modify Section XVI B of the Contract to include the following additional categories:

SELL AND SERVICE HOME IMPROVEMENT LOANS ("HIML"), TITLE 1 MORTGAGES AND HOMESTYLE MORTGAGE LOANS

All other terms of the Contract, including any previous modification made to it, remain in effect.

By executing this Addendum, the Lender and we agree to the modification. The modification takes effect on the date we sign this Addendum.

Lender: OLYMPIA MORTGAGE Corp

1413 Ave J

Brooklyn NY 11230
(Address)

By: _____
(Authorized Signature)

BARRY GOLDSTEIN
(Type Name and Title)

Date: MANAGING DIR

Federal National Mortgage Association

1900 MARKET STREET
(Address)

SUITE 800

PHILADELPHIA, PA 19103

By: Lawrence J. Dondero
(Authorized Signature)

LAWRENCE J. DONDERO, JR., DIRECTOR, SERVICING MANAGEMENT &
(Type Name and Title)                    DEVELOPMENT

Date: MARCH 7, 1997