**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X   04 CV 4971 (NG) (MDG)
**FEDERAL NATIONAL MORTGAGE ASSOCIATION,**

                            Plaintiff,

                -against-

**OLYMPIA MORTGAGE CORPORATION; LIEB
PINTER; SHAINDY PINTER; BARRY GOLDSTEIN;
MIRIAM GOLDSTEIN; SAMUEL PINTER; FAGIE
PINTER; ABE DONNER; ZESHA AUERBACH;
ALAN BRAUN; ALAN J. BRAUN & COMPANY;
MARCUS PINTER; MIDWOOD FEDERAL CREDIT
UNION; 1716 REALTY CORPORATION; KAHAL
SHOMREI HADATH; and DOE COMPANIES,**

                            Defendants.
-------------------------------------------------------------------------X   <u>OPINION AND ORDER</u>
**OLYMPIA MORTGAGE CORPORATION,**

                        Crossclaim Plaintiff,

                -against-

**LEIB PINTER; SHAINDY PINTER; BARRY
GOLDSTEIN; MIRIAM GOLDSTEIN; SAMUEL
PINTER; FAGIE PINTER; ABE DONNER; ZESHA
AUERBACH; ALAN BRAUN; ALAN J. BRAUN &
COMPANY; MARCUS PINTER; KAHAL SHOMREI
HADATH; PATTY TRINDAD; BARRING SHIELDS
& COMPANY, LLC; JASMINE LAKES PROPERTIES
CORPORATION; S&F OCEAN REALTY; 6401 BINGLE
CORPORATION; SAM PINTER & ASSOCIATES; Z&S
REALTY; P&G REALTY ASSOCIATES LLC; CHARLES
PINTER; MOISHE M. PINTER; BASI NIERENBERG;
DAVID PINTER; SARAH PINTER; SAMSON PINTER;
TOVA TAUB; CHAIM TAUB; ZVI PINTER; MALKE
PINTER; MOISHE PINTER; ESTHER PINTER; YOSSIE
PINTER; HADASSAH PINTER; PEARL PINTER;
ABRAHAM PINTER; SHOSHANNA KIRSHENBAUM;
DAVID KIRSHENBAUM; RACHAEL STEIN; PERETZ
STEIN; GILLIAN SAX; NACHEMADONNER;
PERRY LERNER; SARAH DONNER; NAFTALI
DONNER; CHAIM DONNER; and DOE COMPANIES,**

                        Crossclaim Defendants.
-------------------------------------------------------------------------X

**GERSHON, United States District Judge:**

In this action arising from a set of fraudulent schemes allegedly perpetrated by defendant Olympia Mortgage Corporation ("Olympia") acting through its principals and employees, defendants Samuel Pinter, Fagie Pinter, 1716 Realty Corporation ("1716 Realty"), Kahal Shomrei Hadath ("KSH"), Shaindy Pinter, Abe Donner, Alan J. Braun & Company ("Braun & Co."), Alan Braun, and Zesha Auerbach move to dismiss the claims asserted against them by plaintiff Federal National Mortgage Association ("Fannie Mae"). In addition, crossclaim defendants Shaindy Pinter, Zesha Auerbach, and Patty Trinidad move to dismiss the crossclaims asserted against them by a court-appointed Receiver acting on behalf of Olympia. For the reasons set forth below, the motions to dismiss are granted in part and denied in part.

## FACTS

Fannie Mae commenced this lawsuit on November 16, 2004. On consent of the parties, the court appointed a Receiver for Olympia on November 23, 2004 and empowered her to take all necessary and appropriate steps to secure and protect Olympia's assets. On July 29, 2005, Fannie Mae filed an Amended Complaint. As relevant to the instant motions, in the Amended Complaint Fannie Mae asserts claims of negligent misrepresentation against Samuel Pinter; aiding and abetting fraud, fraud through conspiracy, and unjust enrichment against Samuel Pinter and Abe Donner; breach of fiduciary duty against Samuel Pinter, Abe Donner, and Fagie Pinter; fraudulent conveyance against Samuel Pinter, Abe Donner, 1716 Realty, KSH, and Shaindy Pinter; and aiding and abetting fraud and negligent misrepresentation against Braun & Co., Alan Braun, and Zesha Auerbach. Fannie Mae also seeks to pierce the corporate veil to hold Samuel Pinter, Abe Donner, Fagie Pinter,

and Shaindy Pinter liable for Olympia's alleged wrongdoing. On September 26, 2005, the Receiver, on behalf of Olympia, filed an Answer to the Amended Complaint in which she asserted crossclaims in accordance with Federal Rules of Civil Procedure 13(g) and (h). On October 18, 2005, the Receiver filed an Amended Answer with crossclaims (the "Amended Crossclaims"). As relevant to the instant motions, the Receiver asserts crossclaims of breach of fiduciary duty, director and officer misconduct, fraudulent conveyance, and unjust enrichment against Shaindy Pinter and Patty Trinidad; conversion against Shaindy Pinter; and professional malpractice against Zesha Auerbach. The Receiver also seeks to pierce the corporate veil to hold Shaindy Pinter liable for Olympia's alleged wrongdoing and seeks an accounting of funds allegedly diverted from Olympia.

For purposes of the motions to dismiss plaintiff's claims, all facts alleged in the Amended Complaint are accepted as true and all reasonable inferences are drawn in favor of plaintiff. For purposes of the motions to dismiss Olympia's crossclaims, all facts alleged in the Amended Crossclaims are accepted as true and all reasonable inferences are drawn in favor of Olympia. Except where otherwise noted, the following relevant facts are set forth in both the Amended Complaint and the Amended Crossclaims.

Fannie Mae is a government-sponsored private corporation whose mission includes increasing the availability and affordability of homeownership for low, moderate, and middle income Americans. *See* 12 U.S.C. §§ 1716-1719. Fannie Mae does not originate mortgage loans; it purchases loans from mortgage lenders in the secondary mortgage market. Olympia, a closely held corporation organized under the laws of New York, acted as a mortgage lender and servicer from 1986 until November 4, 2004, when the company surrendered its license following a suspension by the New York State Department of Banking. According to the Amended Complaint, Defendants

Samuel Pinter and Fagie Pinter together own a 49% interest in Olympia. Defendant Abe Donner owns a 32% interest in Olympia. Defendants Barry Goldstein and Miriam Goldstein together own a 9% interest in Olympia. Defendants Lieb Pinter and Shaindy Pinter together own a 9% interest in Olympia.[1] At relevant times, Samuel Pinter served as Senior Vice President of Olympia and Chairman of the Board of Directors. Fagie Pinter served as Secretary of Olympia and sat on the Board of Directors. Abe Donner served as President of Olympia and sat on the Board of Directors. Barry Goldstein served as Managing Director of Olympia. Lieb Pinter served as Executive Vice President of Olympia.

According to the Amended Complaint, on June 8, 1988, Fannie Mae and Olympia entered into a Mortgage Selling and Servicing Contract (the "Contract"). Subsequently, the parties executed three addenda to the Contract, dated January 23, 1989, June 19, 1996, and March 7, 1997. Pursuant to the Contract, the parties agreed that Fannie Mae would purchase certain mortgage loans from Olympia and that Olympia would service those loans. On a monthly basis, Olympia was required to collect from borrowers payments comprised of amortized shares of the principal and interest due on the loans and the taxes and insurance charges accruing on the properties that secured the loans. Olympia was required to deposit the portion of the payments representing principal and interest into one set of bank accounts (the "P&I Accounts") and to inform Fannie Mae, via a computer system called "LASER," of the amount of money that was deposited into the P&I Accounts. Olympia was required to deposit the portion of the payments representing taxes and insurance into another set of bank accounts (the "Escrow Accounts"), from which it was supposed to pay the taxes and insurance

---

[1]The Amended Crossclaims allege that the percentage of Olympia owned by each of its principals cannot be ascertained because Olympia no longer has a complete set of corporate books and records and many of the documents that the Receiver has located contain contradictory and/or incomplete information.

premiums on the borrowers' properties as they came due. When a borrower paid off a loan in connection with a refinance, Olympia was required to deposit the payoff funds, *i.e.*, the outstanding principal and accrued interest, into the P&I Accounts and to inform Fannie Mae through the LASER system that the loan had been paid off.

The Amended Complaint alleges that, in at least 257 instances, Olympia, acting through its principals and employees,[2] accepted payoff funds from borrowers who sought to refinance their loans but did not deposit the funds into the P&I Accounts and did not inform Fannie Mae that the loans had been paid off. Instead, Lieb Pinter and Barry Goldstein caused Olympia to deposit the payoff funds into its operating account and continue to report to Fannie Mae via LASER that the original loans were active. On a monthly basis, Olympia deposited funds from its operating account into the P&I Accounts in amounts equal to the principal and interest that would have been due on the loans had they not been paid off. When Olympia did not have enough money on hand to make the deposits, its principals took short term loans from defendant Midwood Federal Credit Union ("Midwood"), a credit union controlled by Abe Donner. Although the loans were secured by promissory notes signed by Olympia's principals, they were repaid by Olympia. In October 2002, Olympia paid Midwood $300,000 in satisfaction of a loan taken by Samuel Pinter. In December 2002, Olympia paid Midwood $100,000 in satisfaction of a loan taken by Lieb Pinter and $100,000 in satisfaction of a loan taken by Barry Goldstein. Olympia stopped sending the borrowers payment booklets for the original loans and stopped collecting payments for property taxes and insurance

---

[2]The Amended Crossclaims allege that Patty Trinidad, Olympia's Director of Operations, participated in the scheme complained of by Fannie Mae, as well as schemes to defraud other creditors, together with Lieb Pinter, Shaindy Pinter, Samuel Pinter, Fagie Pinter, Barry Goldstein, Miriam Goldstein, and Abe Donner. The Amended Complaint makes no allegations concerning Patty Trinidad.

premiums so that it would appear to the borrowers that their loans had been refinanced.

The pleadings further allege that Olympia retained defendant Marcus Pinter to provide routine accounting services, including preparation of tax returns and review of the company's books and records prior to its annual audit and retained defendant Alan J. Braun & Company, an accounting firm, to prepare audited financial statements on an annual basis, which Olympia was required to submit to Fannie Mae under the Contract. Defendants Alan Braun and Zesha Auerbach are accountants who were employed by Alan J. Braun & Company at relevant times and prepared the audited financial statements that were submitted to Fannie Mae. Olympia's audited financial statements did not disclose any of Olympia's allegedly deceptive conduct.

According to the Amended Complaint, during the period from 2001 to 2004, Olympia conveyed in excess of $3,500,000 to defendant 1716 Realty, which corporation is organized under the laws of New York and owned by Olympia's principals. Some or all of the funds were subsequently transferred to Samuel Pinter, Barry Goldstein, Abe Donner, and Shaindy Pinter. During the period from 1999 to 2004, Olympia conveyed in excess of $400,000 to Midwood. Some or all of the funds were subsequently transferred to Abe Donner. During the period from 1999 to 2004, Olympia conveyed in excess of $1,760,000 to defendant KSH, a nonprofit corporation organized under the laws of New York that functioned as the alter ego of Samuel Pinter. Some or all of the funds were subsequently transferred to Samuel Pinter. According to the Amended Crossclaims, Olympia transferred $1,316.40 to Shaindy Pinter as wages in 2004, even though Shaindy Pinter did little or no work for Olympia at that time. The Amended Crossclaims also allege that Olympia transferred funds to creditors of both Shaindy Pinter and Patty Trinidad, including mortgage lenders, credit card companies, insurance companies, and others, for the payment of those

crossclaim defendants' debts. All of the foregoing transfers are alleged to have been made without fair consideration, at times when Olympia was insolvent, with actual intent to hinder, delay, and/or frustrate Olympia's creditors.

## DISCUSSION

### I. Standard for a Motion to Dismiss

In deciding whether a pleading states a claim on a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all factual allegations set forth in the pleading and draw all reasonable inferences in favor of the claimant. *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002).

#### A. Basic Pleading Standard of Rule 8

Federal Rule of Civil Procedure 8 sets forth the basic standard of pleading by which the sufficiency of a claim is evaluated on a motion to dismiss. Rule 8(a)(2) provides that a complaint need include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement need do no more than "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. *Id.* Other provisions of the Federal Rules of Civil Procedure are inextricably linked to Rule 8(a)'s simplified notice pleading standard. For example, Rule 8(e)(1) states that "[n]o technical forms of pleading or motions are required," and

Rule 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice." Fed. R. Civ. P. 8(e)(1), 8(f); *id.* at 513-14. Given the Federal Rules' simplified standard for pleading, "[a] court may dismiss a complaint [under Rule 12(b)(6)] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz*, 534 U.S. at 514 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

### B.      Heightened Pleading Standard of Rule 9(b)

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The particularity requirement of Rule 9(b) serves to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit. *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). To comply with Rule 9(b), a complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Lerner v. Fleet Bank, N.A.*, ___ F.3d ___, ___, 2006 WL 2260822, *13 (2d Cir. 2006). "Malice, intent, knowledge, and other condition of mind of a person may be averred generally" under Rule 9(b). Nevertheless, the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind is not a license to base claims of fraud on speculation and conclusory allegations; accordingly, the pleader must allege facts that give rise to a strong inference of fraudulent intent. *Id*. The requisite inference may be established by alleging either: (a) facts showing that defendants had both motive and opportunity to commit fraud, or (b) facts that constitute strong circumstantial

evidence of conscious misbehavior or recklessness.  *Id*.

## II.    Motions to Dismiss Claims in the Amended Complaint

### A.    *Claims Against Olympia's Principals*

#### 1.    Aiding and Abetting Fraud

To establish liability for aiding and abetting fraud under New York law, a plaintiff must show:  (1) that a fraud existed; (2) that the defendant had actual knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission.  *Lerner*, 2006 WL 2260822 at *15.   The parties agree that claims of aiding and abetting fraud are subject to the heightened pleading standard of Rule 9(b).

Samuel Pinter and Abe Donner each argue that the claims of aiding and abetting fraud asserted against them by Fannie Mae should be dismissed for failing to satisfy Rule 9(b).  Their arguments are meritless.  The first element of the claim, existence of the fraud, is pled adequately. The Amended Complaint paints a clear picture of the fraud alleged by Fannie Mae.  In at least 257 instances between 1988 and 2004, Olympia accepted payoff funds from borrowers but did not remit those funds to Fannie Mae.  Instead, through the actions of Lieb Pinter and Barry Goldstein, it deposited the funds into its own operating account and continued to report the paid off loans as active via the LASER reporting system.  The Amended Complaint also details various steps taken by Olympia and its principals to prevent the fraud from being detected.  For example, Olympia made monthly deposits via check into the P&I Accounts to make it appear that the borrowers who had paid off their loans were still making monthly payments.  Samuel Pinter and Barry Goldstein signed the checks.  When Olympia did not have enough money in its operating account to make the monthly

deposits, its principals took short term loans from Midwood. In 2002, such loans were taken by Samuel Pinter, Lieb Pinter, and Barry Goldstein. Further, Olympia stopped sending borrowers payment booklets and stopped collecting payments for property taxes and insurance premiums to prevent them from finding out that their loans had not been refinanced. Overall, the allegations of the fraud are more than adequate to satisfy the requirements of Rule 9(b) and to serve its three objectives: They provide defendants with fair notice of Fannie Mae's claim and satisfy the court that the charges of wrongdoing against defendants are not improvident nor part of a strike suit. *See Rombach*, 355 F.3d at 171; *cf. Wight v. Bankamerica Corp.*, 219 F.3d 79, 91-92 (2d Cir. 2000).

The second element of aiding and abetting fraud, actual knowledge, is likewise pled adequately with respect to both Samuel Pinter and Abe Donner. Although, as Abe Donner points out, the Amended Complaint's allegation that he "knew or was reckless and/or grossly negligent in not knowing" of Olympia's alleged fraud is insufficient in itself to satisfy Rule 9(b), *see id.*; *In re Worldcom Inc. Securities Litigation*, 382 F. Supp. 2d 549, 560 (S.D.N.Y. 2005), the Amended Complaint alleges specific facts that give rise to a strong inference of actual knowledge on the part of both defendants. According to the Amended Complaint, the fraud permeated every aspect of Olympia's business during a period when Abe Donner served as Olympia's President and Samuel Pinter served as its Senior Vice President and Chairman of its Board of Directors. Samuel Pinter caused Olympia to make monthly deposits into the P&I Accounts in an effort to prevent Fannie Mae from learning of Olympia's fraud. Abe Donner caused Midwood to lend money to Olympia's principals to help finance the fraudulent scheme. Furthermore, Olympia conveyed proceeds from the fraud on Fannie Mae to Samuel Pinter, Abe Donner, and entities that they controlled.

The allegations that Samuel Pinter caused Olympia to make monthly deposits to the P&I

Accounts and that Abe Donner caused Midwood to lend money to Olympia's principals also satisfy the pleading requirements with respect to the third element of the claim, substantial assistance.

In sum, the claims against Samuel Pinter and Abe Donner of aiding and abetting fraud are adequately pled in the Amended Complaint.

### 2. Fraud through Conspiracy

Samuel Pinter and Abe Donner also argue that the claims of fraud through conspiracy asserted against them should be dismissed for failing to satisfy Rule 9(b). For the reasons discussed above, the alleged fraud and defendants' roles in advancing it are adequately pled in the Amended Complaint.

### 3. Negligent Misrepresentation

Under New York law, the elements of a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment. *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). Samuel Pinter argues that Fannie Mae's claim of negligent misrepresentation fails to satisfy the pleading requirements of Rule 9(b).

"Rule 9(b) may or may not apply to a state law claim for negligent misrepresentation." *Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York*, 375 F.3d 168, 188

(2d Cir. 2004). The Court of Appeals for the Second Circuit has never reached the issue and district courts in the circuit are split. *See id*; *compare HSA Residential Mortgage Services of Texas v. Casuccio*, 350 F. Supp. 2d 352, 368 (E.D.N.Y. 2003) ("The heightened pleading requirements of Rule 9(b) are not required.") and *In re LILCO Securities Litigation*, 625 F. Supp. 1500, 1504 (E.D.N.Y. 1986) ("Negligent misrepresentation is not a claim that necessitates the particularized pleading of Rule 9(b).") *with Northwestern Mutual Life Ins. Co. v. Banc of America Securities LLC*, 254 F. Supp. 2d 390, 400 (S.D.N.Y. 2003) ("A common law claim for negligent misrepresentation must satisfy the requirements of Fed. R. Civ. P. 9(b).") and *Simon v. Castello*, 172 F.R.D. 103, 105 (S.D.N.Y. 1997) ("The particularity requirements of Rule 9(b) have also been found to apply to claims for negligent misrepresentation.").

With respect to the claim of negligent misrepresentation asserted against Samuel Pinter, the Amended Complaint contains sufficient allegations to satisfy even the heightened pleading standard of Rule 9(b). The factual allegations that give rise to the claim of negligent misrepresentation are the same as those that give rise to plaintiff's claim of aiding and abetting fraud. Thus, for the reasons discussed above, the allegations satisfy the requirements of Rule 9(b).

### 4.    Unjust Enrichment

Samuel Pinter and Abe Donner move to dismiss the claims of unjust enrichment asserted against them in the Amended Complaint.

Under New York law, claims of unjust enrichment sound in quasi-contract. *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 575, 586 (2d Cir. 2006) (citing *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005)). Quasi-contract

is an obligation imposed by law, in the absence of a valid and enforceable contract, because of the conduct of the parties or some special relationship between them, to prevent unjust enrichment. For example, when two parties have bargained with each other on the terms of a contract but have failed to create an enforceable contract, whether because of failure to reach a meeting of the minds on terms or because of noncompliance with some formal requisite of contract law, and one party has conferred a benefit on the other, that party may seek recovery in quasi-contract. *U.S. East Telecommunications, Inc. v. U.S. West Communications Services*, 38 F.3d 1289, 1299 (2d Cir. 1994). The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter. *Beth Israel Medical Center*, 448 F.3d at 587. Thus, "[q]uasi contracts are not contracts at all, although they give rise to obligations more akin to those stemming from contract than from tort." *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 388 (1987) (quoting *Bradkin v. Leverton*, 26 N.Y.2d 192, 196 (1970)).

The Amended Complaint's allegations of wrongdoing against Samuel Pinter and Abe Donner are not consistent with quasi-contractual liability; they all sound in tort. *Cf. Capital Distribution Services, Ltd. v. Ducor Express Airlines, Inc.*, ___ F. Supp. 2d ___, ___, 2006 WL 2041574 (E.D.N.Y. 2006). Accordingly, the claims of unjust enrichment against Samuel Pinter and Abe Donner are dismissed.

### 5.     Breach of Fiduciary Duty

Fannie Mae takes the position that, when a corporation enters the zone of insolvency, the officers and directors owe fiduciary duties to the corporation's creditors. The moving defendants

13

do not dispute this position.  Instead, Samuel Pinter and Fagie Pinter argue that "it is impossible to intelligently address the claim" of breach of fiduciary duty because "there are no details of the purported breach."  Their argument is rejected.  The Amended Complaint alleges that "Olympia's officers' and directors' fiduciary duties to Fannie Mae included, among other things, the duty to collect and hold principal, interest and escrow payments for the benefit of Fannie Mae, to remit such payments promptly to Fannie Mae, and to fully and honestly inform Fannie Mae with regard to the loans it serviced" and that defendants breached those duties by participating in the fraudulent scheme described above.  Amended Complaint ¶ 159.  Those allegations are sufficient to give defendants fair notice of the claim and to afford them an opportunity to draft an intelligent response.

Abe Donner argues that Fannie Mae has not pleaded sufficient facts to show that his conduct in committing the alleged breaches was knowing.  But, as discussed above, the allegations that Abe Donner served as Olympia's President during the time that the alleged fraud occurred, that he caused Midwood to lend money to Olympia's principals to help finance the fraudulent scheme, and that Olympia conveyed some of the proceeds from the fraud to him support an inference of knowledge on his part.

In sum, Samuel Pinter, Fagie Pinter, and Abe Donner are not entitled to dismissal of Fannie Mae's claims of breach of fiduciary duty.


### 6. Piercing the Corporate Veil

Under New York law, the concept of piercing the corporate veil is a limitation on the accepted principles that a corporation exists independently of its owners, as a separate legal entity, that the owners are normally not liable for the debts of the corporation, and that it is perfectly legal

to incorporate for the express purpose of limiting the liability of the corporate owners. *Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135, 140 (1993). It is typically employed by a third party seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation. *Id*. at 141. The concept is equitable in nature and assumes that the corporation itself is liable for the obligation sought to be imposed. Thus, an attempt of a third party to pierce the corporate veil does not constitute a claim independent of that against the corporation; rather, it is an assertion of facts and circumstances that will persuade the court to impose the corporation's obligations on its owners. *Id.*

Generally, piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury. *Id*. While complete domination of the corporation is the key to piercing the corporate veil, such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward the plaintiff is required. The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party that a court in equity should correct. *Id*. at 141-42.

To avoid dismissal, a party seeking to pierce the corporate veil must present factual allegations concerning both elements of the doctrine. *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005). Allegations concerning the domination element are subject to the basic pleading standard of Rule 8. *See id*.; *Network Enterprises, Inc. v. APBA Offshore Productions, Inc.*, 2002 WL 31050846, *4-6 (S.D.N.Y. Sept. 12, 2002). Allegations concerning the fraud or wrongful act element are subject to the heightened pleading standard of Rule 9(b) to the

extent that they allege fraud.  *See id*.

Samuel Pinter, Fagie Pinter, Shaindy Pinter, and Abe Donner move to dismiss Fannie Mae's application to pierce the corporate veil on the ground that it is inadequately pled.  The Amended Complaint contains the following allegations:  Olympia is a closely held corporation.  Samuel Pinter, Fagie Pinter, Shaindy Pinter, and Abe Donner, together with Lieb Pinter, Barry Goldstein, and Miriam Goldstein (collectively, the "Principal Defendants") owned all of Olympia's shares and comprised all of the company's directors and officers.  The Principal Defendants did not observe corporate formalities.  The Principal Defendants exercised total discretion with regard to Olympia's business and the use of its funds.  The Principal Defendants routinely disbursed Olympia's funds for personal rather than corporate purposes.  The Principal Defendants paid and/or guaranteed Olympia's debts.  And the Principal Defendants used Olympia's property as if it were their personal property.  These allegations are sufficient to establish the domination element.  *See In re Vebeliunas*, 332 F.3d 85, 90 n.3 (2d Cir. 2003); *Mag Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001).  In addition, the Amended Complaint alleges that, through their domination of Olympia, the Principal Defendants caused Olympia to breach the Contract and commit fraud against Fannie Mae.  I have already found that the allegations concerning Olympia's purported fraud satisfy the heightened pleading standard of Rule 9(b).

Shaindy Pinter argues that Fannie Mae's application should be dismissed with respect to her because the Amended Complaint does not contain any factual allegations concerning her role in the alleged wrongdoing and, unlike the other Principal Defendants, she is not alleged to have been a director or officer of Olympia.  Shaindy Pinter is, however, alleged to be an owner of Olympia and is alleged to have, together with Olympia's other owners, abused the corporate form to perpetrate

16

a wrong against Fannie Mae. On a motion to dismiss, the issue for the court to decide is not whether a plaintiff is likely to prevail ultimately, but whether the plaintiff is entitled to offer evidence to support the plaintiff's claims. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). The allegations in the Amended Complaint are sufficient to entitle Fannie Mae to offer evidence in support of its application to pierce the corporate veil with respect to Shaindy Pinter. Her precise role in the purported wrongdoing need not be alleged in the Amended Complaint; it is a matter that is appropriately the subject of discovery.

In sum, Fannie Mae's application to pierce the corporate veil is adequately pled.

### B.      *Fraudulent Conveyance*

Samuel Pinter, 1716 Realty, KSH, Shaindy Pinter, and Abe Donner argue that the claims of fraudulent conveyance asserted against them in the Amended Complaint are inadequately pled.

New York's Uniform Fraudulent Conveyance Act ("UFCA"), N.Y. Debtor and Creditor Law §§ 270-81 (McKinney 2001), provides remedies for both constructive fraud and actual fraud. Under the statute, if a conveyance is made without fair consideration and the transferor is a debtor who is insolvent or will be rendered insolvent by the transfer, the conveyance is deemed constructively fraudulent. N.Y. Debtor and Creditor Law § 273. In general, the party challenging the conveyance has the burden of proving both insolvency and the lack of fair consideration. *United States v. McCombs*, 30 F.3d 310, 324 (2d Cir. 1994). However, in cases of intra-family transfers, where facts concerning the nature of the consideration are within the exclusive control of the transferee, the burden shifts to the transferee to prove the adequacy of consideration. *Id*. If the conveyance is found lacking in consideration, the burden also shifts to the transferee to prove continued solvency after

17

the transaction. *RTC Mortgage Trust 1995-S/N1 v. Sopher*, 171 F. Supp. 2d 192, 199 (S.D.N.Y. 2001); *United States v. Hansel*, 999 F. Supp. 694, 699 (N.D.N.Y. 1998). Claims of fraudulent conveyance by constructive fraud are subject to the basic pleading standard of Rule 8. *Eclaire Advisor Ltd. v. Daewoo Engineering & Construction Co., Ltd.*, 375 F. Supp. 2d 257, 268 (S.D.N.Y. 2005) ("[T]he sections of New York law here at issue deal with constructive fraud . . . . This is not the kind of fraud to which Rule 9(b) applies.").

If a conveyance is made with actual intent to hinder, delay, or defraud either present or future creditors, then it is deemed actually fraudulent. N.Y. Debtor and Creditor Law § 276. Actual intent need not be proven by direct evidence, but may be inferred from the circumstances surrounding the allegedly fraudulent transfer. *Steinberg v. Levine*, 6 A.D.3d 620, 621 (2d Dep't 2004). In determining whether a conveyance was fraudulent, courts will consider "badges of fraud," which are circumstances that accompany fraudulent transfers so commonly that their presence gives rise to an inference of intent. *Id*. The badges of fraud include lack or inadequacy of consideration, family, friendship, or close associate relationship between transferor and transferee, the debtor's retention of possession, benefit, or use of the property in question, the existence of a pattern or series of transactions or course of conduct after the incurring of debt, and the transferor's knowledge of the creditor's claim and the inability to pay it. *Id*. Claims of fraudulent conveyance by actual fraud are subject to the heightened pleading standard of Rule 9(b). *Eclaire Advisor Ltd.*, 375 F. Supp. 2d at 268.

A creditor whose claims have matured may recover from "any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser." N.Y. Debtor and Creditor Law § 278.

Generally, the creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance. *Neshewat v. Salem*, 365 F. Supp. 2d 508, 521 (S.D.N.Y. 2005) (applying New York law). However, where the assets fraudulently transferred no longer exist or are no longer in the possession of the transferee, a money judgment may be entered against the transferee in an amount up to the value of the fraudulently transferred assets. *Id.* at 521-22; *see Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993).

According to the Amended Complaint, between 2001 and 2004, Olympia transferred at least $3,500,000 to 1716 Realty, and Samuel Pinter, Shaindy Pinter, and Abe Donner were subsequent transferees of those funds. Between 1999 and 2004, Olympia transferred at least $1,760,000 to KSH, and Samuel Pinter was a subsequent transferee of those funds. Between 1999 and 2004, Olympia transferred at least $400,000 to Midwood, and Abe Donner was a subsequent transferee of those funds. In October 2002, Olympia transferred at least $300,000 to Samuel Pinter by repaying his loan to Midwood. At the times that the above transfers were made, Olympia was insolvent. All transfers were made in bad faith and without fair consideration.

The allegations in the Amended Complaint concerning the purported fraudulent conveyances are sufficient to satisfy the notice pleading standard of Rule 8, but, with the exception of the alleged $300,000 transfer to Samuel Pinter in 2002, not the heightened pleading standard of Rule 9(b). The allegations serve to give fair notice of Fannie Mae's claims, but do not provide any details of those claims. Notably, the Amended Complaint does not identify how many transfers plaintiff is challenging or the specific dates and amounts of those transfers. Instead, it aggregates the transfers into lump sums over three to five year time periods. Moreover, the Amended Complaint does not,

with respect to each transaction, specify the mechanism of transfer or even the type of property transferred. The Amended Complaint alleges only that the transfers consisted of either "payments of money, assignments, releases, or transfers of tangible or intangible property." Amended Complaint ¶ 193. As a result, Fannie Mae's claims under New York Debtor and Creditor Law Section 276 (actual fraud) are dismissed under Rule 9(b), except for the claim concerning the alleged $300,000 transfer to Samuel Pinter in 2002, which is pled with the particularity required to satisfy Rule 9(b).

Relying on *Sullivan v. Kodsi*, 373 F. Supp. 2d 302 (S.D.N.Y. 2005), Shaindy Pinter argues that the claims of fraudulent conveyance, including those based on constructive fraud, asserted against her should be dismissed because the Amended Complaint does not contain allegations that she participated in any of the purported fraudulent transfers. In *Sullivan*, the court held that the complaint failed to state a claim of fraudulent conveyance against subsequent transferees under either Section 273 or Section 276 because it did not contain allegations that the subsequent transferees actively participated in the transfers. *Sullivan* is distinguishable from this case, however, because in *Sullivan* the subsequent transferees were the beneficiaries of a trust, who received the property at issue passively via the trust as a result of the actions of the transferor and the original trustee, as well as a successor trustee who was appointed after the transfers occurred. *Id.* at 309-10. The court observed that, "[w]hile ordinarily it might be difficult for a transferee or beneficiary to be distinguished by definition from a participant in the transfer, the particular relationship of these defendants to the transferred assets creates just such a distinction." *Id.* at 309. Here, it is alleged that Shaindy Pinter was a part owner of both closely held corporations involved in the chain of purportedly fraudulent transfers to her. From those facts, a reasonable inference may be drawn, as

required on a motion to dismiss, that she was a participant in the transfers.  Thus, the allegations in the Amended Complaint are sufficient to state a claim of fraudulent conveyance against Shaindy Pinter under Section 273.

### C.    *Claims Against the Accounting Defendants*

The Amended Complaint alleges that, during the period from 1988 to 2004, the Accounting Defendants audited Olympia's books and records on an annual basis.  Based on their audits, the Accounting Defendants prepared and certified Olympia's annual financial statements, on which they knew Fannie Mae would rely.  Each year's financial statements contained materially false statements that served to conceal Olympia's alleged fraud from Fannie Mae.  Based on those factual allegations, Fannie Mae asserts claims of aiding and abetting fraud and negligent misrepresentation against the Accounting Defendants.

### 1.    Aiding and Abetting Fraud

The Accounting Defendants argue that the aiding and abetting fraud claims are not pled with the particularity required by Rule 9(b).  As set forth above, the elements of aiding and abetting fraud are: (1) that a fraud existed; (2) that the defendant had actual knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission.  *Lerner*, 2006 WL 2260822 at *15.

Here, the existence of a fraud is adequately pled.  *See supra* at 9-10.  Knowledge of the fraud by the Accounting Defendants also is adequately pled.  Although the general allegation that the Accounting Defendants "knew, or were reckless and/or grossly negligent in not knowing" of the

fraud is insufficient to satisfy the requirements of Rule 9(b), as with Samuel Pinter and Abe Donner, the Amended Complaint alleges specific facts that give rise to a strong inference of actual knowledge by the Accounting Defendants. According to the Amended Complaint, although the Accounting Defendants audited Olympia's books and records, they failed to report Olympia's numerous financial irregularities. In addition, the Accounting Defendants failed to prepare or maintain workpapers to support their audits. For purposes of pleading, the substantial assistance element of the claim is established by the allegation that the Accounting Defendants prepared false financial statements to conceal Olympia's fraud from Fannie Mae.

In sum, the claims of aiding and abetting fraud asserted against the Accounting Defendants in the Amended Complaint are adequately pled.

### 2. Negligent Misrepresentation

Under New York law, before an accountant may be held liable in negligence to a noncontractual party who relied to its detriment on inaccurate financial reports, certain prerequisites must be satisfied: (1) the accountant must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party was intended to rely; and (3) there must have been some conduct on the part of the accountant linking the accountant to that party, which evinces the accountant's understanding of that party's reliance. *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551 (1985). To demonstrate linking conduct, a plaintiff generally must show some form of direct contact between the accountant and the plaintiff, such as a face-to-face conversation, the sharing of documents, or other "substantive communication" between the parties. *Securities Investor Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 75

(2d Cir. 2000).  Where direct contact between the accountant and the plaintiff has been nonexistent or even minimal, the plaintiff cannot recover for negligence.  *Id.*

The Accounting Defendants argue that Fannie Mae fails to state a claim against them for negligent misrepresentation because the Amended Complaint does not contain any allegations of "linking conduct" sufficient to satisfy the third prerequisite of *Credit Alliance*.

Even if claims of negligent misrepresentation are subject to the heightened pleading standard of Rule 9(b) generally, *see* discussion *supra* at 11-12, the *Credit Alliance* prerequisites need not be pled with particularity.  The terms of the rule require only that "the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The *Credit Alliance* prerequisites concern matters in addition and collateral to the circumstances constituting the alleged fraud or mistake.  Thus, to prevail on their motions to dismiss, the Accounting Defendants must demonstrate that there is no set of facts that could be proved consistent with the allegations of the Amended Complaint that would demonstrate linking conduct.  *See Swierkiewicz*, 534 U.S. at 514.  The Amended Complaint alleges that the Accounting Defendants "knew that the financial statements that they certified would be provided to Fannie Mae pursuant to the Contract and that Fannie Mae would rely on the certified financial statements."  Amended Complaint ¶ 178.  Plaintiff asserts that consistent with those allegations, it will be able to prove that the Accounting Defendants filled out a form each year provided by Fannie Mae certifying that Olympia met certain financial standards required by Fannie Mae.  Such conduct would link the Accounting Defendants to Fannie Mae and evince their understanding of Fannie Mae's reliance on the financial statements that they certified.

Zesha Auerbach also argues that the negligent misrepresentation claim asserted against him should be dismissed because he was a mere employee of Braun & Co. and did not, himself, certify

Olympia's financial statements. Thus, he argues, he was not the "maker" of any allegedly false representations contained in the financial statements. The court need not address his argument at this time because it relies on facts that do not appear on the face of the Amended Complaint. The Amended Complaint alleges that the "[Accounting] Defendants certified false financial statements issued by Olympia." Amended Complaint ¶ 145. Fannie Mae is entitled to an inference that Zesha Auerbach, as one of the Accounting Defendants, certified false financial statements.

In sum, the Accounting Defendants are not entitled to dismissal of the negligent misrepresentation claims.

## III.     Motions to Dismiss Olympia's Crossclaims

### A.     *Crossclaims Against Shaindy Pinter and Patty Trinidad*[3]

#### 1.     Breach of Fiduciary Duty and Accounting

Shaindy Pinter and Patty Trinidad both argue that the crossclaims of breach of fiduciary duty asserted against them by Olympia should be dismissed because they do not meet the heightened pleading standard of Rule 9(b). This argument fails because claims of breach of fiduciary duty are not subject to the heightened pleading standard of Rule 9(b). *In re Polaroid ERISA Litigation*, 362 F. Supp. 2d 461, 470 (S.D.N.Y. 2005).

---

[3]Prior to filing her motion to dismiss, Patty Trinidad filed a complete answer to the Amended Crossclaims that asserted affirmative defenses and crossclaims against other parties. As a result, her motion to dismiss is untimely. *See* Fed. R. Civ. P. 12(b); 5C Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1361 (3d ed. 2004). Nevertheless, in the interest of promoting an efficient resolution of this action, the court, exercising its discretion, will treat her motion to dismiss as a motion for judgment on the pleadings pursuant to Rule 12(c). Such a motion is subject to the same standards as a Rule 12(b)(6) motion. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

Shaindy Pinter also argues that the crossclaims against her for breach of fiduciary duty and an accounting should be dismissed because, as a minority shareholder, she did not owe fiduciary duties to Olympia. However, the Amended Crossclaims, unlike the Amended Complaint, do not allege that Shaindy Pinter was a minority shareholder. Instead, they allege that she owned an undetermined share of Olympia and, together with the company's other owners, controlled all aspects of Olympia's affairs. As a result, for purposes of the motion to dismiss, Olympia is entitled to an inference that Shaindy Pinter was a controlling shareholder. The parties agree that controlling shareholders owe fiduciary duties to the corporations that they own.

In sum, Shaindy Pinter and Patty Trinidad are not entitled to dismissal of the breach of fiduciary duty crossclaims. Furthermore, Shaindy Pinter is not entitled to dismissal of the crossclaim seeking an accounting.

### 2.    Director and Officer Misconduct

Shaindy Pinter and Patty Trinidad seek dismissal of the crossclaims asserted against them under New York Business Corporation Law Section 720, which imposes liability on corporate directors and officers for certain acts of misconduct. Olympia does not address these crossclaims in its memoranda in opposition to the motions to dismiss. Since Shaindy Pinter and Patty Trinidad are not alleged to have been directors or officers of Olympia, these crossclaims are dismissed.

### 3.    Fraudulent Conveyance

The Amended Crossclaims allege that Olympia transferred $1,316.40 to Shaindy Pinter as wages in 2004, even though Shaindy Pinter did little or no work for Olympia at that time. The

Amended Crossclaims also allege that Olympia transferred funds to creditors of both Shaindy Pinter and Patty Trinidad, including mortgage lenders, credit card companies, insurance companies, and others, for the payment of crossclaim defendants' debts, but does not provide the names of the creditors, the amounts of the transfers, or the time frames of the transfers.

The allegations concerning the $1,316.40 transfer are sufficient to satisfy the heightened pleading standard of Rule 9(b). Accordingly, Shaindy Pinter is not entitled to dismissal of the claims under either New York Debtor and Creditor Law Section 273 (constructive fraud) or Section 276 (actual fraud) that are based on those allegations. The remaining allegations concerning fraudulent conveyances are sufficient to satisfy the notice pleading standard of Rule 8 but not the heightened pleading standard of Rule 9(b). Accordingly, Shaindy Pinter and Patty Trinidad are entitled to dismissal of the claims under Section 276 that are based on those allegations, but not of the claims under Section 273. *See supra* at 19-20.

### 4.    Conversion

To establish a claim of conversion under New York law, a plaintiff must show legal ownership or an immediate superior right of possession to a specifically identifiable thing and must show that the defendant exercised unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights. *Batsidis v. Batsidis*, 9 A.D.3d 342, 343 (2d Dep't 2004). Money may be the subject of conversion if it is specifically identifiable and there is an obligation to return it or treat it in a particular manner. *Hoffman v. Unterberg*, 9 A.D.3d 386, 388 (2d Dep't 2004). When funds are provided for a particular purpose, the use of those funds for an unauthorized purpose constitutes conversion. *Id*. Where possession of the property is initially lawful, conversion occurs when there

is a refusal to return the property after a demand. *Id.*

The Amended Crossclaims allege that Olympia's Principals, including Shaindy Pinter, "intentionally exercised unlawful dominion and control over Olympia's corporate property, thereby interfering with Olympia's right of possession, including causing the payment of personal home mortgages, personal credit card obligations, automobile payments, automobile and medical insurance premiums, and phone bills, as well as payments to [others]." Amended Crossclaims at ¶ 141. Those allegations are sufficient to state a claim of conversion against Shaindy Pinter.

Shaindy Pinter argues that she has offered to return the allegedly converted funds to Olympia, abrogating its claim of conversion against her. Since this argument relies on facts that do not appear on the face of the Amended Crossclaims, it is not appropriate for the court's consideration at this time.

In sum, Shaindy Pinter is not entitled to dismissal of Olympia's crossclaim of conversion.

### 5.     Unjust Enrichment

The allegations of wrongdoing against Shaindy Pinter and Patty Trinidad contained in the Amended Crossclaims are not consistent with quasi-contractual liability. Accordingly, the unjust enrichment crossclaims are dismissed. *See supra* at 12-13.

### 6.     Piercing the Corporate Veil

In general, as a matter of New York law, a corporation cannot pierce its own veil; however, where the corporate entity is in receivership or insolvent, the receiver or trustee may bring a veil-piercing suit for the benefit of the corporation's creditors. *See Corcoran v. Frank B. Hall & Co., Inc.,*

149 A.D.2d 165, 174-75 (1st Dep't 1989).

The allegations in the Amended Crossclaims that support the Receiver's application to pierce the corporate veil mirror the allegations in the Amended Complaint that support Fannie Mae's application to pierce the corporate veil. Thus, for the same reasons that she is not entitled to have Fannie Mae's application to pierce the corporate veil dismissed, Shaindy Pinter is not entitled to have the Receiver's application to pierce the corporate veil dismissed. *See supra* at 16-17.

### B.    *Crossclaim Against Zesha Auerbach*

Zesha Auerbach seeks dismissal of Olympia's crossclaim alleging that he committed professional malpractice. A claim of professional malpractice requires proof that there was a departure from the accepted standards of practice and that the departure was a proximate cause of injury to the plaintiff. *Herbert H. Post & Co. v. Sidney Bitterman, Inc.*, 219 A.D.2d 214, 223 (1st Dep't 1996).

Zesha Auerbach argues that he cannot be held liable to Olympia for professional malpractice because he did not personally certify Olympia's financial statements. His argument is unsupported by caselaw and relies on facts that do not appear on the face of the Amended Crossclaims. The Amended Crossclaims allege that Zesha Auerbach was an accountant retained by Olympia to assist in preparing Olympia's audited financial statements; that Auerbach, together with the other Accounting Defendants, failed to conduct a reasonable investigation and audit of Olympia's finances; that Zesha Auerbach, together with the other Accounting Defendants, prepared and certified financial statements that were materially false; and that, as a result, Olympia suffered damages. Those allegations are sufficient to establish a claim of professional malpractice for

pleading purposes.

## CONCLUSION

For the reasons set forth above, defendants' and crossclaim defendants' motions are granted in part as follows: Fannie Mae's claims of unjust enrichment are dismissed with respect to Samuel Pinter and Abe Donner; Fannie Mae's claims of fraudulent conveyance under New York Debtor and Creditor Law Section 276 (actual fraud) are dismissed with respect to Samuel Pinter, 1716 Realty, KSH, Shaindy Pinter, and Abe Donner, with the exception of the claim concerning an alleged $300,000 transfer to Samuel Pinter in 2002; Olympia's crossclaims of director and officer misconduct and unjust enrichment are dismissed with respect to Shaindy Pinter and Patty Trinidad; and Olympia's crossclaims of fraudulent conveyance under Section 276 are dismissed with respect to Shaindy Pinter and Patty Trinidad with the exception of the claim concerning an alleged $1,316.40 transfer to Shaindy Pinter in 2004. Otherwise, the motions are denied.

SO ORDERED.

_____/S/_____

**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
     September 28, 2006