UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

                   Plaintiff,    ORDER

                                   CV 2004-4971 (NG)(MDG)
      - against -

OLYMPIA MORTGAGE CORPORATION,
et al.,

                   Defendants.

- - - - - - - - - - - - - - - - - X

By letter dated May 15, 2007, plaintiff Federal National Mortgage Association ("FNMA") moves to compel the production of documents claimed to be privileged by defendants Samuel Pinter and counsel for Kahal Shomrei Hadath ("KSH"), Giacchino Russo. See ct. doc. 376. FNMA argues that any privilege has been waived by the voluntary disclosure of documents.

## BACKGROUND

The instant motion arises from an unusual set of facts. As discussed in an Order dated March 30, 2007 (ct. doc. 353), the documents at issue belong to various entities controlled by defendant Samuel Pinter and were obtained by Karen Balmer, Receiver (the "Receiver") of defendant Olympia Mortgage Corporation ("Olympia"), when she responded to the request of Samuel Pinter to remove boxes of documents of Olympia stored in the basement of 1716 Coney Island Avenue. As the Receiver

acknowledged, she took possession of nineteen boxes of documents thinking that they belonged to Olympia since many other documents of Olympia had previously been stored in the same basement. She later discovered that some of the boxes contained documents of KSH and entities other than Olympia, some of which are defendants in this action. Her counsel stated that some of these documents were responsive to discovery requests made to Samuel Pinter, KSH and other entities controlled by Samuel Pinter. However, because some of the materials appeared to be attorney-client communications, the Receiver ceased her review and brought the matter to this Court's attention.

At a conference held on March 30, 2007, FNMA and the Receiver argued waiver and also objected to turning over these potentially responsive documents to Samuel Pinter because of his purported failure to produce documents earlier in this litigation. This Court ruled that the unknowing release of these documents did not effect a waiver of privilege under the circumstances. To allay the parties' fears that the documents might be secreted by Mr. Pinter, the Court fashioned a remedy whereby Mr. Russo was to review the documents at the offices of FNMA's counsel to determine whether any privilege attached and to create a "count or general inventory" of the documents prior to their release into his custody. See minute entry dated 3/30/07; Transcript of conference held on March 30, 2007 at 37-38, 43, 48.

According to FNMA, Mr. Russo reviewed the documents at the offices of its counsel, Reed Smith LLP, and as he identified documents that he claimed were privileged, he gave the documents to a paralegal working for Reed Smith to create a privilege log of the documents. Mr. Russo contends that when he arrived at Reed Smith's offices, he was met by that paralegal who advised him that he was to make a log of any documents Mr. Russo claimed were privileged. Mr. Russo states that he intended the paralegal to create such a log by recording each document's date, the drafter and the addressee and believed that he was acting in accordance with the Court's rulings. Mr. Russo did not intend for the paralegal to review the documents beyond the limited information that would be required to ensure that there was an accounting of the documents that were released to him.

## DISCUSSION

A party asserting a claim of attorney-client privilege with respect to any document sought in discovery has the burden of demonstrating that the privilege exists and has not been waived. See von Bulow v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987). As the Second Circuit has recognized, a "more limited form of implied waiver may be appropriate where disclosure occurred in a context that did not greatly prejudice the other party in the litigation." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000). In the case of waiver resulting from "inadvertent

document disclosure, courts have limited the scope of that waiver based on the circumstances involved and overall fairness." Id. (citation omitted). Whether waiver has occurred must be "decided on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." Id. at 183.

In making such a determination, courts in the Second Circuit typically consider the following five factors: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of the production, (4) the extent of the disclosure, and (5) overriding issues of fairness. In re Copper Market Antitrust Litigation, 200 F.R.D. 213, 217 (S.D.N.Y. 2001) (citing Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y. 1985)). Although Mr. Russo clearly failed to take any appropriate precautions to prevent disclosure of the documents to the paralegal at Reed Smith, the remaining factors weigh against a finding of waiver. As Mr. Russo admits, he permitted a paralegal at Reed Smith to review the documents in order to create a list, mistakenly believing that this approach would be in accordance with the rulings of this Court. This Court never contemplated that Mr. Russo would give the allegedly privileged documents to employees of Reed Smith for the purpose of creating the log since "'a pertinent aspect of confidentiality will be lost'" once "an adverse party is provided access to

privileged material." In re Dow Corning Corp., 261 F.3d 280, 284 (2d Cir. 2001) (quoting Chase Manhattan Bank, N.A. v. Turner & Newall, PLC, 964 F.2d 159, 165 (2d Cir. 1992)).

However foolhardy Mr. Russo's reliance on the goodwill of the offices of Reed Smith, the release of the documents claimed to be privileged to the paralegal presumably was only for the brief time necessary to review the document. As this Court directed, after an inventory was taken, the documents were to be returned to Mr. Russo and retained by him at his offices. Although Mr. Russo did not immediately take custody of the documents, neither counsel for plaintiff nor Olympia were authorized to retain any copies of the documents.

Under these circumstances, "disclosure occurred in a context that did not greatly prejudice the other party in the litigation." In Re Grand Jury Proceedings, 219 F.3d at 184. In fact, plaintiff and Olympia have not suffered any prejudice other than to be deprived of material they may find important. See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 446 (S.D.N.Y. 1995) (noting that "[t]he prejudice factor focuses only on whether the act of restoring immunity to an inadvertently disclosed document would be unfair, not whether the privilege itself deprives parties of pertinent information"). Nor is this an instance where they have relied on the documents' disclosure or where Mr. Russo's clients have "made strategic use

of the selective waiver of the privilege." Johnson v. Sea-Land Service, Inc., No. 99 CIV 9161 (TK), 2001 WL 897185, at *6 (S.D.N.Y. August 9, 2001).

Thus, as a matter of fairness, I decline to find waiver under the unique circumstances here. See In re Grand Jury Subpoena, 219 F.3d at 188 (fairness dictates that any "waiver should be tailored to remedy the prejudice"). However, Mr. Russo is warned that this Court may not treat his lapses so charitably in the future.

## CONCLUSION

The motion to compel is denied without prejudice to a further motion directed at the specific documents that have been recently listed in a privilege log made by Mr. Russo.

**SO ORDERED.**

Dated: Brooklyn, New York
       August 16, 2007

/s/
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE