UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>         Plaintiff,<br><br>    - against -<br><br>OLYMPIA MORTGAGE CORPORATION, et al.<br><br>         Defendants. | Index No. 04-CV-4971<br>(NG) (MDG) |
| OLYMPIA MORTGAGE CORPORATION,<br><br>         Cross-Claim Plaintiff,<br><br>    - against -<br><br>LEIB PINTER, et al.<br><br>         Cross-Claim Defendants. | |

OLYMPIA'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT


LAW OFFICES OF ERIC J. GRANNIS

620 Fifth Avenue
New York, New York 10020
(212) 903-1025

Attorneys for Olympia Mortgage
Corporation

Cross-Claim Plaintiff Olympia Mortgage Corporation ("Olympia") respectfully submits this Memorandum of Law in support of its motion for partial summary judgment against certain Cross-Claim Defendants on its alter ego claims and its claims under New York Debtor and Creditor Law § 273.

## PRELIMINARY STATEMENT

Olympia seeks summary judgment on two sets of claims. First, Olympia has asserted an alter ego claim against Sam Pinter. This claim by Olympia is identical to claims that the Federal National Mortgage Association ("Fannie Mae") has asserted against Mr. Pinter and on which it seeks summary judgment. Olympia seeks summary judgment on its claim on the grounds set forth in Fannie Mae's submissions.

The second set of claims on which Olympia seeks summary judgment are its claims against certain Counterclaim Defendants for fraudulent transfers under New York Debtor and Creditor Law § 273. Since at least December 31, 1997, Olympia has been insolvent. Olympia hid that insolvency for years by, among other things, perpetrating a fraud against Fannie Mae that generated fake profits. The owners of Olympia distributed these fake profits to numerous individuals and entities including Cross-Claim Defendants Kahal Shomrei Hadath ("KSH"), Jasmine Lakes Properties Corporation ("Jasmine Lakes"), S&F Ocean Realty ("S&F"), 6401 Bingle Corporation ("6401 Bingle"), and Z&S Realty ("Z&S"). Olympia made these transfers when it was insolvent and received nothing in return. These transfers were therefore fraudulent as a matter of law under New York Debtor and Creditor Law § 273.

ARGUMENT

I. OLYMPIA IS ENTITLED TO SUMMARY JUDGMENT ON ITS
NEW YORK DEBTOR & CREDITOR LAW § 273 CLAIMS.

New York Debtor & Creditor Law § 273 states that "Every conveyance made, and every obligation incurred, by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."  McKinney's Debtor and Creditor Law § 273; accord Federal Nat. Mortg. Ass'n v. Olympia Mortg. Corp., 2006 WL 2802092 at *8 (E.D.N.Y. 2006). Under Section 273, the transfers made to Cross-Claim Defendants KSH, Jasmine Lakes, S&F, 6401 Bingle, and Z&S were fraudulent for the reasons set forth below.

   A. Olympia Made Transfers to Cross-Claim Defendants KSH, Jasmine Lakes, S&F, 6401 Bingle and Z&S.

Olympia transferred the following amounts while insolvent to the following Cross-Claim Defendants:

- KSH: $2,044,876.00 (SUF ¶ 2)
- Jasmine Lakes: $447,952.51 (SUF ¶ 3)
- S&F: $148,659.59 (SUF ¶ 5)
- 6401 Bingle: $4,500.00 (SUF ¶ 6)
- Z&S: $163,786.41 (SUF ¶ 7).

   B. Olympia Did Not Receive Anything in Exchange for the Foregoing Transfers.

The Receiver, after conducting an extensive investigation and review of Olympia's books, has located no evidence that KSH, Jasmine Lakes, S&F, 6401 Bingle, and Z&S provided any fair value in exchange for the transfers that Olympia made to them.  (SUF ¶¶ 2-3, 5-7.)

With respect to the transfers to KSH, certain of these transfers were shown as "rental payments" on Olympia's books even though KSH did not in fact provide any facilities to

2

Olympia. (SUF ¶ 2.) Barry Goldstein and Defendant Alan Braun, one of Olympia's accountants, even produced a fake lease for the rental space that KSH never provided. (SUF ¶ 2.) Other transfers appeared as interest payments or principal repayments on loans from KSH to Olympia when in fact KSH did not loan the listed funds to Olympia. (SUF ¶ 2.)

Olympia also produced a false journal entry stating that KSH had loaned $714,000 to Olympia. This entry suggested that Olympia owed money to KSH. But this was not true. In 2002, Fannie Mae sent $714,000 to Olympia in exchange for certain loans. Olympia quickly used these funds to make a payment it owed to Ginnie Mae. Yet on the advice of Defendant Marcus Pinter, an accountant for Olympia, Olympia drew up its books to show that this $714,000 came as a loan from KSH. (SUF ¶ 2.) Olympia did not receive anything in return for this transfer or the sham rent and interest payments.

Olympia engaged in similar conduct with Jasmine Lakes. Olympia made numerous payments on behalf of Jasmine Lakes, totaling almost $450,000. Barry Goldstein has protested that these payments were loans, but the Receiver has not discovered any loan documentation for them. In addition, Jasmine Lakes has not given Olympia any equity interest or repaid any of this money. (SUF ¶ 3.) Furthermore, no such loan was ever recorded in Olympia's books and records. Rather, all payments on behalf of Jasmine Lakes were recorded as expenses in Olympia's general ledger. Olympia received nothing in exchange for the fraudulent transfers to Jasmine Lakes.

C. Interest Should be Awarded from a Reasonable Intermediate Date.

Rule 5001(a) of the CPLR provides that "interest shall be recovered upon a sum awarded because of . . . an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property." Accordingly, Olympia is entitled to an award of interest on its fraudulent transfer claims.

3

With respect to the date from which interest runs, Rule 5001(b) of the CPLR provides as follows:

> Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

Accordingly, "[w]here damages are incurred at various times after the cause of action accrues, section 5001 grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest." Conway v. Icahn & Co., Inc., 16 F.3d 504, 512 (2d Cir. 1994) "When precision isn't practicable, [§ 5001(b) ] allows the fact-trier to select 'a single reasonable intermediate date' from which the interest may be computed on all of the items together." David Siegel, Practice Commentaries to C.P.L.R. § 5001 at 359; accord Pacific Westeel, Inc. v. D & R Installationm, 2003 WL 22359512 at *3 (S.D.N.Y. 2003). In particular, where "calculating interest based on each individual item would be impractical, the Court should fix a 'reasonable intermediate date' in order to simplify the calculations." Pacific Westeel, 2003 WL 22359512 at *3. "In determining this date, the Court has substantial discretion." Id.

In the instant case, the fraudulent transfers were numerous with hundreds of particular transactions. Because it would be impractical to make interest calculations on hundreds of individual transfers, the Court should exercise its discretion to fix a "reasonable intermediate date." In Kookmin Bank v. B.G. Fashion, Inc., 2000 WL 1880315, 4 (S.D.N.Y. 2000), damages arose from 54 bills of exchange that matured on different dates over the course of fifteen months. The Court determined that "a reasonable intermediate date is mid-way between the first and last maturity dates." Id. This Court should take the same approach here, choosing the date mid-way between the first and last fraudulent transfers to each defendant.

These interest calculations should therefore be as follows:

4

- KSH: Olympia made payments while insolvent totaling $2,044,876.00 to KSH. (SUF ¶ 2) These include regular monthly payments and additional ones totaling $1,885,876 from August 3, 1998, through October 1, 2004. Interest should run on these payments from September 4, 2001, the date midway through these dates. KSH also received two additional payments, a payment on November 18, 1998 in the amount of $6,500 and a payment on November 30, 1998 in the amount of $152,500. Interest should run on those payments from the dates on which they occurred.

- Jasmine Lakes: Interest should run on transfers totaling $447,952.51 from June 5, 2003, the date midway between the first transfer to Jasmine Lakes on January 18, 2002 and the last transfer on October 19, 2004. (SUF ¶ 3)

- S&F Ocean Realty: Olympia transferred $148,659.59 to S&F. (SUF ¶ 5). Interest should run on payments totaling $122,045 from February 16, 2000, the date midway between the first transfer to S&F on December 28, 1998 and the last of these transfers on April 5, 2001. S&F also received a payment on August 25, 2003 of $26,614.59. Interest should run on this payment from the date on which it occurred.

- 6401 Bingle: Olympia transferred $3,375 to 6401 Bingle on August 16, 2004 and $1,125 on September 22, 2004. (SUF ¶ 6) Interest should run on those payments from the dates on which they occurred.

- Z&S Realty: Olympia transferred $163,786.41 to Z&S (SUF ¶ 7). Interest should run from November 11, 2000, the date midway between the first transfer to Z&S on October 23, 1998 and the last transfer on December 1, 2002.

5

II.  **SUMMARY JUDGMENT SHOULD BE GRANTED ON OLYMPIA'S ALTER EGO CLAIM AGAINST SAM PINTER.**

Olympia has an alter ego claim against Sam Pinter that is identical to the claim of Plaintiff Fannie Mae against Mr. Pinter.  Compare Amended Answer and Counterclaims of Olympia Mortgage Corporation at ¶¶ 160-163 with Amended Complaint of Fannie Mae at ¶¶ 100-105.  Fannie Mae is moving for summary judgment on its alter ego claims against Mr. Pinter.  Olympia requests that summary judgment also be entered in its favor on its identical claim.

III. **JUDGMENT SHOULD BE ENTERED IMMEDIATELY ON THE FOREGOING CLAIMS.**

Fed R. Civ. P. 54(b) allows the Court "to enter a final judgment as to less than all the claims or parties to an action, if it decides that the ends of justice so require."  10 Fed. Prac. & Proc. Civ.3d § 2656.  The Court may do so when "there is no just reason for delay," Fed.R.Civ.P. 54(b,) or when it is "[i]n the interests of sound judicial administration," Bowne of New York City, Inc. v. AmBase Corp., 161 F.R.D. 270, 272 (S.D.N.Y. 1995).

Entry of partial summary judgment is appropriate when "preservation of the assets of [an] estate are best served" by entry of judgment.  In re Manhattan Inv. Fund, Ltd., 2007 WL 534547 at *2 (Bkrtcy. S.D.N.Y. 2007).  Olympia's Receiver has reasonable grounds for believing that Barry Goldstein, Leib Pinter, Sam Pinter and the entities that they control have been dissipating the assets that the Receiver seeks to recover and may continue to do so.  First, the fraudulent transfers on which Olympia seeks summary judgment provide a basis for belief that the Defendants may engage again in similar conduct.  In addition, since the Receiver was appointed, the foregoing Defendants have engaged in conduct that made assets more difficult to recover:

- On or around March 27, 2007, Barry Goldstein facilitated a transfer of Jasmine Lakes' assets to Jasmine Lakes Acquisition for $10 and other consideration.  The Receiver has claims against Jasmine Lakes in this action (and upon which it is seeking summary judgment.)  However, in the contract for the sale of this

6

    property, Mr. Goldstein falsely represented that there were no Court actions pending against Jasmine Lakes.  (SUF ¶ 4.)

- On or around March 10, 2005, Barry Goldstein and Leib Pinter participated in a transfer of a property owned by P&G Realty Associates LLC ("P&G") to Flatbush Ave. Townhouses LLC.  P&G originally purchased this property with Olympia's funds.  (SUF ¶ 1.)

## CONCLUSION

For the reasons stated above, Olympia Mortgage Corporation respectfully requests that the Court:

(i) grant summary judgment in it favor on its claims under Section 273 of the Debtor and Creditor Law as follows:

Against KSH in the amount of $2,044,876.00 plus interest at 9% on (a) $1,885,876 from September 4, 2001, (b) on $6,500 from November 18, 1998 and (c) on $152,500 from November 30, 1998;

Against Jasmine Lakes in the amount of $447,952.51 plus interest at 9% from June 5, 2003;

Against 6401 Bingle in the amount of $4,500.00 plus interest at 9% on (a) $3,375 from August 16, 2004 and (b) $1,125 from September 22, 2004;

Against S&F in the amount of $148,659.59 plus interest at 9% on (a) $122,045 from February 16, 2000 and (b) on $26,614.59 from August 25, 2003; and

Against Z&S in the amount of $163,786.41 plus interest at 9% from November 11, 2000;

(ii) grant summary judgment on Olympia's Alter Ego Claims against Sam Pinter, in the amount of $44.8 million plus interest in the amount of 9% per annum from November 23, 2004 – the date when this Court appointed Karen Kincaid Balmer as Receiver of Olympia – until the date of judgment;

    (iii) direct that the Clerk enter judgment immediately on the foregoing claims; and

    (iv) grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
    May 30, 2008

            LAW OFFICES OF ERIC J. GRANNIS

            By: _/s/ Eric J. Grannis_____
             Eric J. Grannis   (EJG 8403)
            620 Fifth Avenue
            New York, NY 10020
            212-903-1025

            Attorneys for Olympia Mortgage
            Corporation