441-79273

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
FEDERAL NATIONAL MORTGAGE ASSOCIATION,

                    Plaintiff,


          - against -
                                          Case No: 04 CV 4971 (NG)
                                          (MDG)

OLYMPIA MORTGAGE CORPORATION and LIEB
PINTER, SHAINDY PINTER, BARRY GOLDSTEIN,
MIRIAM GOLDSTEIN, SAMUEL PINTER, FAGIE
PINTER, ABE DONNER, ZEISHA AUERBACH, ALAN
BRAUN, ALAN J. BRAUN AND CO., MARCUS PINTER,
MIDWOOD FEDERAL CREDIT UNION, 1716 REALTY
CORPORATION, KAHAL SHOMREI HADATH and DOE
COMPANIES,

                         Defendants.
-----------------------------------------------------------------x
OLYMPIA MORTGAGE CORPORATION,

                    Crossclaim Plaintiff,

          -against-

LIEB PINTER, et al.

                    Crossclaim Defendants.
-----------------------------------------------------------------x


## MEMORANDUM OF LAW
## IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(b) ON BEHALF OF THE DEFENDANT AND CROSS CLAIM DEFENDANT MARCUS PINTER


*Of Counsel*
Michael F. Lynch

**MARTIN CLEARWATER & BELL** LLP
**220 EAST 42ND STREET**
**NEW YORK, NY 10017-5842**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

PROCEDURAL HISTORY ................................................................................................ 2

PRELIMINARY STATEMENT ......................................................................................... 2

THE FANNIE MAE-OLYMPIA RELATIONSHIP ........................................................... 3

THE CLAIM ....................................................................................................................... 3

THE ALLEGED FRAUD ................................................................................................... 4

UNDISPUTED FACTS ...................................................................................................... 4

ARGUMENT ...................................................................................................................... 7

POINT I
    THE 13th CAUSE OF ACTION IN THE AMENDED
    COMPLAINT ALLEGES A CLAIM FOR ACCOUNTING
    MALPRACTICE AGAINST MR. PINTER WHICH
    CANNOT BE SUSTAINED ........................................................................................ 7

POINT II
    FANNIE MAE CANNOT SUSTAIN AN ACCOUNTING
    MALPRACTICE CLAIM AS A NONCLIENT AGAINST
    MR. PINTER ............................................................................................................. 13

POINT III
    FANNIE MAE CANNOT SUSTAIN A CLAIM FOR
    AIDING AND ABETTING FRAUD .......................................................................... 15

POINT IV
    OLYMPIA CANNOT SUSTAIN A CLAIM FOR
    ACCOUNTING MALPRACTICE .............................................................................. 17

POINT V
    MR. PINTER SHOULD BE GRANTED RELIEF TO
    AMEND THE ANSWER TO THE AMENDED
    COMPLAINT ............................................................................................................ 19

CONCLUSION ................................................................................................................. 21

i

# TABLE OF AUTHORITIES

*Cases*

*Alliance Corp. v. Arthur Anderson & Co.*,
   65 N.Y.2d 536, 551, 493 N.Y.S. 2d 435, 483 N.E. 2d 110 (1985)...................................... 7, 13

*Ambassador Factors v. Kandel & Co.*,
   215 A.D. 2d 305, 306-307, 626 N.Y.S.2d 803 (1st Dept. 1995) ............................................... 13

*Citytrust v. Atlas Capital Corp.*,
   173 AD2d 300, 570 NYS2d 275 (1st Dept. 1991) ....................................................................... 7

*Constantino v. State of New York*,
   99 Misc. 2d 362, 415 N.Y.S.2d 966 (Ct. Cl. 1979) ................................................................. 20

*Credit Alliance Corp. v. Arthur Anderson & Co. et al.*,
   65 NY2d 536, 493 NYS2d 435 (1985) ........................................................................................ 7

*Cumis Ins. Society Inc. v. Tooke*,
   293 A.D. 2d 794, 739 N.Y.S. 2d 489 (3d Dept. 2002) ......................................................... 9, 18

*D.D. Hamilton Textiles, Inc. v. Estate of Mate*,
   269 AD2d 214, 703 NYS2d 451 (1st Dept. 2000) ......................................................... 7, 10, 17

*De Long v. Erie*,
   60 NY2d 296, 469 NYS2d 611, 457 NE2d 717 (1983).......................................................... 10, 18

*Estate of Burke v. Peter J. Repetti Co.*,
   255 AD2d 483, 680 NYS2d 645 (2nd Dept. 1998).......................................................... 7, 10, 17

*Forman v. Davis*,
   371 U.S. 178, 182 (1962)........................................................................................................... 19

*Garvin v. U.S.*,
   2001 U.S. Dist. LEXIS 14228 .................................................................................................... 19

*Herbert H. Post & Co. v. Sidney Bitterman, Inc.*,
   219 AD2d 214, 639 NYS2d 329 (1st Dept. 1996) .......................................................... 8, 10, 17

*Hill v. St. Claire Hospital*,
   499 N.Y.S.2d 904, 67 N.Y.2d 72 (1986) ................................................................................... 21

*Houbigant, Inc. v. Deloitte & Touche, LLP*,
   753 N.Y.S.2d (1st Dept. 2003) .................................................................................................. 15

*Housing Works, Inc. v. Turner*,
179 F. Supp. 2d 177 (S.D.N.Y. 2001) ...................................................... 9, 18

*McDowell v. Brown*,
392 F.3d 1283 (11th Cir. 2004) ............................................................. 9, 18

*Nerney v. Valente & Sons Repair Shop*,
66 F.3d 25, 28 (2d 1995)............................................................................ 19

*Purcell v. Doherty*, 102
Misc.2d 1049, 424 N.Y.S.2d 991 (N.Y.Sup.  1980)................................. 21

*Reznor v. J. Artist Management, Inc.*,
365 F. Supp.2d 565, 580 (SDNY 2005) ...................................... 13, 15, 16

*Roma v. Buffalo General Hospital*,
103 A.D.2d 606, 481 N.Y.S.2d 811 (3rd Dept. 1984)............................. 21

*Utter v. South Brookhaven Obstetric & Gynecologic Associates, P.C.*,
135 A.D.2d 811, 522 N.Y.S.2d 915 (2d Dept. 1987) .............................. 20

*Williams v. Niske*,
81 N.Y.2d 437, 615 N.E.2d 1003, 599 N.Y.S.2d 519 (1993)................... 20

**Statutes**

*Am, Jur. 2d, at Attorneys at Law §237* ...................................................... 9, 18

*New York General Obligations Law 15-108(a)* ............................................. 20

New York State Education Law §7401 ........................................................ 9, 18

*Restatement of Torts 2d §299A*.................................................................... 9, 18

**Rules**

Civ. P. 15(a) ...................................................................................................... 1

Civ. P. 56(b)....................................................................................................... 1

F.R. Civ. P 15(a) .............................................................................................. 19

F.R.E. 702 ...................................................................................................... 9, 18

Rule 15(a).......................................................................................................... 19

iii

## INTRODUCTION

This memorandum of law is submitted on behalf of defendant and cross claim defendant, Marcus Pinter, ("Mr. Pinter") in support of the annexed motion pursuant to Fed. R. Civ. P. 56(b) for an order:

A.     Pursuant to Fed. R. Civ. P. 56(b) granting summary judgment and dismissing plaintiff, Federal National Mortgage Association's, ("Fannie Mae") amended complaint with prejudice, as against Mr. Pinter on the following grounds:

(i).     Fannie Mae cannot sustain a claim for aiding and abetting fraud against Mr. Pinter;

(ii).     Fannie Mae cannot sustain a claim of accounting malpractice against Mr. Pinter; and

B.     Pursuant to Fed. R. Civ. P. 56(b) granting summary judgment and dismissing the defendant/crossclaim plaintiff, Olympia Mortgage Corporation's, ("Olympia") crossclaim with prejudice, as against the crossclaim defendant, Mr. Pinter on the following grounds:

(i).     Olympia cannot sustain a claim of accounting malpractice against Mr. Pinter; and

C.     In the alternative and in the event that the instant motion for summary judgment is denied with respect to Fannie Mae's claim against Mr. Pinter, pursuant to Fed. R. Civ. P. 15(a), allowing Mr. Pinter to amend his answer to the amended complaint and assert the affirmative defense of set off;

D.     Together with such other and further relief as this Court may deem just and proper.

References to exhibits set forth herein refer to the exhibits annexed to the annexed declaration of Michael F. Lynch, Esq., dated May 1, 2008.

1

## PROCEDURAL HISTORY

Fannie Mae commenced this action by filing a summons and amended complaint on or about August 1, 2005 (Exhibit "A"). Issue was joined by service of Mr. Pinter's answer on September 26, 2005 ( Exhibit "B"). Olympia filed a crossclaim on October 18, 2005 (Exhibit "C"). Mr. Pinter filed an answer to the crossclaim on January 12, 2006 (Exhibit "D"). On August 27, 2007 Fannie Mae and Olympia entered into a consent judgment whereby judgment was entered in favor of Fannie Mae and against Olympia on the first and second causes of action in the amended complaint (the "Contract Claims") in the amount of $44,800,000 plus pre-judgment interest in accordance with New York C.P.L.R. §5001 (Exhibit "E"). On November 7, 2007 Fannie Mae voluntarily discontinued its claim against Olympia's auditor, Alan Braun and Alan J. Braun & Co., (hereinafter collectively referred to as "Mr. Braun") without prejudice (Exhibit "F").

## PRELIMINARY STATEMENT

Fannie Mae asserts a single cause of action against Mr. Pinter in the 13th cause of action in the amended complaint which is styled as a cause of action for aiding and abetting fraud (Exhibit "A", page. 26, 27, para. 152-155). However, based on a closer reading of the allegations within the 13th cause of action this Court should find that the 13th cause of action in the amended complaint is a claim for accounting malpractice against Mr. Pinter. Whether the 13th cause of action is interpreted as a claim against Mr. Pinter for aiding and abetting fraud or accounting malpractice this cause of action must fail because Fannie Mae cannot sustain a claim upon which relief can be granted under either theory of liability and the amended complaint should be dismissed with prejudice in favor of Mr. Pinter.

2

Olympia asserts a single cause of action against Mr. Pinter in the 9th cause of action in the crossclaim alleging that Mr. Pinter committed accounting malpractice (Exhibit "C", page. 62, 63, para. 154-155). Olympia cannot sustain a claim upon which relief can be granted under this theory of liability and the crossclaim should be dismissed with prejudice in favor of Mr. Pinter.

## THE FANNIE MAE-OLYMPIA RELATIONSHIP

Fannie Mae has a federal charter and operates in the secondary mortgage market. Fannie Mae's mission is to add liquidity to the market by buying mortgages from primary market lenders, including mortgage companies, savings and loan associations, other thrift institutions and commercial banks, among others. In some instances when mortgages are sold, the selling institutions retain the right to service the mortgage for which they are paid a fee normally expressed as a percentage of the principal balance of the mortgage. Servicing the mortgage entails collection of mortgage payments, remittance of payments to the investor, insurers and taxing authorities, maintenance of custodial accounts, etc. (Exhibit "J", page.1).

Olympia sold mortgages to Fannie Mae and retained the servicing rights. Olympia was formed in 1986. Olympia grew during the 1990s operating in 30 states through branch offices or by using outside brokers (Exhibit "J", page. 1).

## THE CLAIM

In 2004 Fannie Mae allegedly became aware of an alleged scheme to allegedly defraud it by allegedly withholding and using amounts from paid off loans that allegedly should have been remitted to Fannie Mae. A receiver was appointed by the Court on November 23, 2004 (Exhibit "J", page.1). Fannie Mae brought the instant action against Olympia and its officers and directors, parties allegedly providing accounting and auditing services to Olympia and others

3

who allegedly provided inadequate consideration for monetary and other transfers of value from Olympia (Exhibit "J", page. 1, 2).

### THE ALLEGED FRAUD

Fannie Mae claims that Olympia allegedly failed to remit loan payoff amounts for 257 loans sold to Fannie Mae and serviced by Olympia (the "A Loans") when the loans were refinanced (the "B Loans"). Olympia allegedly misappropriated the payoff funds of the A Loans while continuing to report the A Loans as active through LASER. LASER is an automated Fannie Mae loan servicing system that traced and reported the amounts collected by Olympia and available for withdrawal by Fannie Mae. LASER was also used to notify Fannie Mae that a loan that Olympia was servicing had been paid off and that proceeds were available for withdrawal (Exhibit "M", page. 2, para. 3.0). Fannie Mae claims that the 257 loans in question were allegedly separately tracked by Olympia in its ledgers as "Code 59" loans (Exhibit "M", page 3. para. 4.0)

### UNDISPUTED FACTS

<u>FANNIE MAE'S POSITION</u>

Fannie Mae never engaged Mr. Pinter to provide accounting services (Exhibit "G", page. 228, line 23-25 and page. 229, line 1-13).

<u>MR. PINTER'S POSITION</u>

- -Mr. Pinter is licensed as a certified public accountant in New York (Exhibit "H", page. 11, line 8-14).

- -Mr. Pinter started performing services for Olympia in 1992 (Exhibit "H, page. 30, line 14-16).

4

- -Mr. Pinter was not Olympia's auditor and he did not prepare and/or issue Olympia's certified financial statements  (Exhibit "H", page. 67, line 7-24; page. 76, line 17-21; page. 155, line 16-18 and Exhibit "J", page. 8 and Exhibit "L", page. 53, line 5-23).

- -Mr. Pinter prepared Olympia's tax returns based upon financial statement prepared by Olympia's auditors (Exhibit "H", page. 76, line 17-21).

- -Mr. Pinter did not provide any professional services for Olympia's loan servicing department (Exhibit "H", page. 47, line 18-25 and page. 48, line 1-2).

- -Mr. Pinter did not have any knowledge of the Code 59 loans while he was providing professional services to Olympia (Exhibit "H", page. 168, line 19-22, page. 170, line 5-25).

## MR. BRAUN'S POSITION

- -Mr. Braun was Olympia's auditor and he was paid by Olympia to perform audit work (Exhibit "I", page. 58, line 14-19 and Page. 68, line 3-6).

## MR. LOVE'S UNREFUTED EXPERT OPINION

Vincent Love, CPA issued an expert report and provided expert testimony on behalf of Mr. Pinter (Exhibit "J" and Exhibit "K").  Neither Fannie Mae nor Olympia can refute the following facts with evidence in admissible form:

- -Mr. Pinter complied with all applicable professional standards related to the work he performed when providing accounting and tax services to Olympia (Exhibit J, page. 2 and Exhibit "K", page. 14, line 17-23; page. 36, line 18-25 and page. 37, line 2).

- -Mr. Pinter was not retained by Olympia to perform any attestation service (Exhibit "J", page. 8).

- -Fannie Mae was never Mr. Pinter's client (Exhibit "J", page. 8).

5

- -Mr. Pinter never issued an attestation or any other report on any financial data related to Olympia (Exhibit "J", page. 8).

- -The professional services performed by Mr. Pinter for Olympia were (i) management consulting services and are governed by the Statement on Standards for Consulting Services and (ii) tax preparation services (Exhibit "J", page. 8).

- -Mr. Pinter was retained by Olympia to prepare certain accounting entries based on data given him by Olympia and to determine if entries that had been made in Olympia's accounting system were correct based on the unverified information he was given (Exhibit "J", page. 8 and Exhibit "K", page. 26, line 6-20; page. 31, line 12-25 and page. 32, line 2-5).

- -Mr. Pinter was not required to verify any of the data he was given by Olympia (Exhibit "J", page. 8)

- -There is no nexus between Mr. Pinter and any attestation service performed for Olympia by its outside auditors (Exhibit "J", page. 12).

- -Olympia's auditors under Generally Accepted Auditing Standards ("GAAS") had no bases for and could not rely on anything Mr. Pinter did during his performance of accounting and tax services for Olympia (Exhibit "J", page. 11).

- -Olympia's auditors had no bases under the professional standard for relying on the work of Mr. Pinter, even, *assuming arguendo*, that Olympia's auditors did rely on Mr. Pinter's work (Exhibit "J", page. 11).

## MR. LASCHENSKI'S EXPERT OPINION

Olympia retained John Laschenski, CPA to provide an alleged expert accounting opinion (Exhibit "L").  Mr. Laschenski had no opinion, with a reasonable degree of professional accounting certainty, regarding the following:

6

- -Fannie Mae's claim against Mr. Pinter (Exhibit "L", page. 17, line 13-20).

- -The audit work performed by Olympia's auditors (Exhibit "L", page. 22, line 15-25 and page. 23, line 1-6).

- -The alleged proximate cause between the professional services Mr. Pinter provided to Olympia and any alleged damage that Olympia suffered (Exhibit "L", page. 47, line 21-25; and page. 48, line 1-48).

- -The scope of the professional services Mr. Pinter provided to Olympia (Exhibit "L", page. 52, line 5-23).

- -Olympia's claim that Mr. Pinter departed from good and accepted accounting practice with respect to the professional services he provided to Olympia (Exhibit "L", page. 75, line 2-9).

## ARGUMENT

## POINT I

## THE 13th CAUSE OF ACTION IN THE AMENDED COMPLAINT ALLEGES A CLAIM FOR ACCOUNTING MALPRACTICE AGAINST MR. PINTER WHICH CANNOT BE SUSTAINED

A defendant may be held liable under New York law for accounting malpractice if it is shown that he/she was (1) in privity with the plaintiff; *Citytrust v. Atlas Capital Corp.*, 173 A.D.2d 300, 570 N.Y.S.2d 275 (1st Dept. 1991); *Credit Alliance Corp. v. Arthur Anderson & Co. et al.*, 65 N.Y.2d 536, 493 N.Y.2d 435 (1985); (2) there was a departure from the accepted standard of practice; and (3) the departure was the proximate cause of the plaintiff's injury. *D.D. Hamilton Textiles, Inc. v. Estate of Mate*, 269 A.D.2d 214, 703 N.Y.S.2d 451 (1st Dept. 2000); *Estate of Burke v. Peter J. Repetti Co.*, 255 A.D.2d 483, 680 N.Y.S.2d 645 (2nd Dept. 1998);

7

*Herbert H. Post & Co. v. Sidney Bitterman, Inc.*, 219 A.D.2d 214, 639 N.Y.S.2d 329 (1st Dept. 1996).

In this case the Court should find that the 13th cause of action in the amended complaint is a claim for accounting malpractice notwithstanding that Fannie Mae styled the cause of action as one for aiding and abetting fraud.

In the 13th cause of action in the amended complaint plaintiff alleges the following:

- -Mr. Pinter was reckless and grossly negligent in not knowing of the fraud Olympia allegedly perpetrated against Fannie Mae (Exhibit "A", page. 27, para. 151).

- -Mr. Pinter failed to utterly perform his duties with any degree of skill and diligence customary in this profession (Exhibit "A", page. 27, para. 152).

- -Mr. Pinter knew that audited financials would be provided to Fannie Mae, Fannie Mae would rely on those financials to its detriment and that such reliance was reasonable. Mr. Pinter knew auditors would rely on his work in reviewing and certifying the financial statements of Olympia (Exhibit "A", page. 27, para. 153).

- -Mr. Pinter took no steps to ensure that the audited certified financial statements of Olympia disclosed Olympia's true and accurate financial condition, including the fraud it was perpetrating on Fannie Mae (Exhibit "A", page. 27, para. 154).

- -Mr. Pinter substantially assisted in Olympia's fraud (Exhibit "A", page. 27, para. 155).

Of the five (5) allegations underlying the 13th cause of action in the amended complaint four (4) describe departures from a professional accounting standard (Exhibit "A", page 27, para. 151-154) and only one (1) makes passing reference to fraud (Exhibit "A", page 27, para. 155). Taken as a whole, this Court should find that the 13th cause of action in the amended complaint constitutes a claim for accounting malpractice.

In the event that the Court does find that the 13th cause of action in the amended complaint is a claim for accounting malpractice the Court should find further that Fannie Mae cannot sustain this claim against Mr. Pinter.

8

Fannie Mae is not in privity with Mr. Pinter since Fannie Mae never engaged Mr. Pinter to provide accounting services (Exhibit "G", page. 228, line 23-25 and page. 229, line 1-13). Consequently, Fannie Mae cannot sustain a necessary element of the 13th cause of action in the amended complaint which alleges accounting malpractice against Mr. Pinter.

Fannie Mae sets out a New York state law claim for accounting malpractice against Mr. Pinter. Pursuant to Fed. R. Evid. 702 this Court will look to the substantive New York law with respect to the necessity of expert testimony to sustain this professional malpractice claim. *McDowell v. Brown*, 392 F.3d 1283 (11th Cir. 2004). Under New York law expert testimony as to the standards of practice and negligence with respect to accounting malpractice is necessary for the determination of the question of liability for malpractice. AM. JUR. 2D, *Attorneys at Law* §237; RESTATEMENT (SECOND) OF TORTS §299A . A party alleging a claim of accounting malpractice under New York law must show, with expert testimony, (1) a departure from accepted standards of practice and (2) that the departure was the proximate cause of injury. *Housing Works, Inc. v. Turner*, 179 F. Supp. 2d 177 (S.D.N.Y. 2001); *Cumis Ins. Society Inc. v. Tooke*, 293 A.D. 2d 794, 739 N.Y.S. 2d 489 (3d Dept. 2002).

Fannie Mae has not offered any expert accounting testimony to establish that the professional services Mr. Pinter provided in this case constitute a departure from accepted accounting malpractice. The New York Educ. Law §7401 defines the practice of public accounting as follows:

> The practice of the profession of public accountancy is defined as holding one's self out to the public, in consideration of compensation received or to be received, offering to perform or performing for other persons, services which involve signing, delivering or issuing or causing to be signed, delivered or issued any financial, accounting or related statement or any opinion on, report on, or certificate to such statement if, by reason of the signature, or the stationery or wording employed, or otherwise, it is indicated or implied that the practitioner has acted or is acting, in relation to said financial, accounting or

9

related statement, or reporting as an independent accountant or auditor **or as an individual having or purporting to have expert knowledge in accounting or auditing**. (emphasis added).

Thus, by definition New York State has deemed that the practice of the profession of public accountancy to require expertise in accounting. The New York State courts then recognized this required expertise in deciding whether an accountant had engaged in professional malpractice. Under New York law, a defendant is liable for accounting malpractice if it is shown by **expert testimony** that (1) there was a departure from the accepted standard of practice; and (2) the departure was the proximate cause of the plaintiff's injury. *D.D. Hamilton Textiles, Inc. v. Estate of Mate,supra*; *Estate of Burke v. Peter J. Repetti Co.*, *supra*; *Herbert H. Post & Co. v. Sidney Bitterman, Inc.*, *supra*.

A plaintiff seeking to establish professional negligence under New York law based upon a departure from the reasonable standard of care in a particular profession must offer expert testimony to establish the standard of care, a departure from it, and the causal link between the departure and the harm to the plaintiff. *Gerber Trade Finance Inc., v. Skwiersky*, 12 A.D.3d 286 (1st Dept. 2004) (where expert's affidavit did not raise a triable issue as to whether accountant was negligent),

The law in New York is clear that expert testimony should be received by the Court when it would help to clarify an issue calling for professional and technical knowledge possessed by the expert and beyond the ken of the typical juror. *De Long v. Erie*, 60 N.Y.2d 296, 469 N.Y.S.2d 611, 457 N.E.2d 717 (1983).

In the case at bar, Fannie Mae has not offered an accounting expert report or offered an expert accountant for deposition testimony to support its claim for accounting malpractice against Mr. Pinter. In stark contrast, Mr. Pinter offered the expert report of Vincent Love, CPA

10

and presented Mr. Love for an expert deposition.  Mr. Love established, with necessary professional accounting certainty, the following undisputed facts:

- -Mr. Pinter complied with all applicable professional standards related to the work he performed when providing accounting and tax services to Olympia (Exhibit J, page. 2 and Exhibit "K", page. 14, line 17-23; page. 36, line 18-25 and page. 37, line 2).

- -Fannie Mae was never Mr. Pinter's client (Exhibit "J", page. 8).

- -Mr. Pinter never issued an attestation or any other report on any financial data related to Olympia (Exhibit "J", page. 8).

- -Mr. Pinter was not required to verify any of the data he was given by Olympia (Exhibit "J", page. 8)

- -There is no nexus between Mr. Pinter and any attestation service performed for Olympia by its outside auditors (Exhibit "J", page. 12).

- -Olympia's auditors under Generally Accepted Auditing Standards ("GAAS") had no bases for and could not rely on anything Mr. Pinter did during his performance of accounting and tax services for Olympia (Exhibit "J", page. 11).

- -Olympia's auditors had no bases under the professional standard for relying on the work of Mr. Pinter, even, *assuming arguendo*, that Olympia's auditors did rely on Mr. Pinter's work (Exhibit "J", page. 11).

Fannie Mae cannot rely on the alleged expert opinion offered by Olympia to support its crossclaim since Olympia's alleged accounting expert had no opinion with a reasonable degree of professional accounting certainty, regarding Fannie Mae's claim against Mr. Pinter (Exhibit "L", page. 17, line 13-20).

11

Most significantly, Fannie Mae chose to unilaterally discontinue its claim for accounting malpractice against Olympia's auditor, Mr. Braun the only certified public accountant with whom Fannie Mae was in privity (Exhibit "F"). Mr. Braun was Olympia's auditor and he was paid by Olympia to perform audit work (Exhibit "I", page. 58, line 14-19 and Page. 68, line 3-6).

Despite the fact that in the amended complaint Fannie Mae claims that Mr. Braun aided and abetted Olympia's fraud by issuing fraudulent certified financial statements reflecting Olympia's financial health upon which Fannie Mae allegedly relied to its detriment (Exhibit "A", See the 12th cause of action, page. 25,26, para., 138-147); and despite the fact that in the amended complaint Fannie Mae claims that Mr. Braun engaged in negligent misrepresentation and committed accounting malpractice with respect to the certified financial statements he issued and upon which Fannie Mae allegedly relied to its detriment to assess Olympia's financial health (Exhibit "A", See the 16th cause of action page. 30,31, para. 171-181); Fannie Mae no longer holds Mr. Braun responsible for its alleged damage (Exhibit "F"). Mr. Braun's voluntary discontinuance eradicates any possible linking conduct upon which Fannie Mae might rely to assert an accounting malpractice claim against Mr. Pinter as a result of which it was allegedly damaged and further serves to establish that Fannie Mae cannot make out the proximate cause element of its accounting malpractice claim against Mr. Pinter.

Lastly, Fannie Mae cannot sustain the element of damage necessary to proceed with an accounting malpractice claim against Mr. Pinter. Fannie Mae claims that it was damaged in the amount of $43,918,500 (Exhibit "M", page 5, para. 5.0). Fannie Mae's damage expert offers no opinion, with a reasonable degree of accounting certainty, with respect to any professional services provided by Mr. Pinter. Fannie Mae and Olympia have entered into a consent judgment whereby judgment was entered in favor of Fannie Mae and against Olympia on the first and

12

second causes of action in the amended complaint in the amount of $44,800,000 plus pre-judgment interest in accordance with New York C.P.L.R. §5001 (Exhibit "E").  Consequently, Olympia has conceded complete and total liability for Fannie Mae's entire alleged damages and Fannie Mae has been made whole with respect to any damage it might claim it suffered as a result of the professional services Mr. Pinter provided in this case by virtue of Olympia's confession of judgment.

**POINT II**

**FANNIE MAE CANNOT SUSTAIN AN ACCOUNTING MALPRACTICE CLAIM
AS A NONCLIENT AGAINST MR. PINTER**

Fannie Mae also cannot sustain a claim for accounting malpractice against Mr. Pinter in its position as a nonclient of Mr. Pinter's.  Should this Court find that Fannie Mae was a nonclient of Mr. Pinter's then Mr. Pinter would be liable to Fannie Mae for accounting malpractice only where Mr. Pinter was aware that Fannie Mae would rely on his work for a particular purpose. *Reznor v. J. Artist Management, Inc.*, 365 F. Supp.2d 565, 580 (S.D.N.Y. 2005); *Alliance Corp. v. Arthur Anderson & Co.*, 65 N.Y.2d 536, 551, 493 N.Y.S. 2d 435, 483 N.E. 2d 110 (1985); *Ambassador Factors v. Kandel & Co.*, 215 A.D. 2d 305, 306-307, 626 N.Y.S.2d 803 (1st Dept. 1995).  Here, Fannie Mae cannot offer any evidence that Mr. Pinter was aware that Fannie Mae would rely on his work for a particular purpose.

On the contrary, the evidence presented establishes that Olympia hired outside auditors to prepare and issue certified financial statements upon which Fannie Mae allegedly relied to its detriment.  Fannie Mae cannot refute the following evidence with respect to the certified financial statements Mr. Braun issued and upon which Fannie Mae allegedly relied to its detriment:

13

- -Mr. Pinter never issued an attestation or any other report on any financial data related to Olympia (Exhibit "J", page. 8).

- -The professional services performed by Mr. Pinter for Olympia were (i) management consulting services and are governed by the Statement on Standards for Consulting Services and (ii) tax preparation services (Exhibit "J", page. 8).

- -Mr. Pinter was retained by Olympia to prepare certain accounting entries based on data given him by Olympia and to determine if entries that had been made in Olympia's accounting system were correct based on the unverified information he was given (Exhibit "J", page. 8 and Exhibit "K", page. 26, line 6-20; page. 31, line 12-25 and page. 32, line 2-5).

- -Mr. Pinter was not required to verify any of the data he was given by Olympia (Exhibit "J", page. 8)

- -There is no nexus between Mr. Pinter and any attestation service performed for Olympia by its outside auditors (Exhibit "J", page. 12).

- -Olympia's auditors under Generally Accepted Auditing Standards ("GAAS") had no bases for and could not rely on anything Mr. Pinter did during his performance of accounting and tax services for Olympia (Exhibit "J", page. 11).

- -Olympia's auditors had no bases under the professional standard for relying on the work of Mr. Pinter, even, *assuming arguendo*, that Olympia's auditors did rely on Mr. Pinter's work (Exhibit "J", page. 11).

Mr. Love's expert report and testimony accurately set out the scope of professional services Mr. Pinter provided in this case and underscores the fact that Mr. Pinter was not aware that Fannie Mae would rely on his work for a particular purpose. Fannie Mae had no knowledge of Mr. Pinter during its relationship with Olympia and Fannie Mae never identified any work

14

prepared by Mr. Pinter during its relationship with Olympia (Exhibit "G", page. 228, line 23-25 and page. 229, line 1-25).

## POINT III

### FANNIE MAE CANNOT SUSTAIN A CLAIM FOR AIDING AND ABETTING FRAUD

In the event this Court should find that the 13th cause of action in the amended complaint states a claim for aiding and abetting a fraud against Mr. Pinter this cause of action cannot be sustained. This Court should find that Fannie Mae was a nonclient of Mr. Pinter's. An accountant can be liable to a nonclient for fraud if he has knowledge of the falsity of his client's statements or acts in reckless disregard of such falsity where the circumstances should cast doubt on the information's veracity and where the accountant is aware of the plaintiff's reasonable reliance on him. *Reznor, supra* at 580, 581; *Houbigant, Inc. v. Deloitte & Touche, LLP*, 753 N.Y.S.2d (1st Dept. 2003).

It bears repeating that Mr. Pinter was not Olympia's auditor and he did not prepare and/or issue Olympia's certified financial statements (Exhibit "H", page. 67, line 7-24; page. 76, line 17-21; page. 155, line 16-18 and Exhibit "J", page. 8 and Exhibit "L", page. 53, line 5-23). Mr. Pinter did not provide any professional services for Olympia's loan servicing department (Exhibit "H", page. 47, line 18-25 and page. 48, line 1-2). Mr. Pinter did not have any knowledge of the Code 59 loans while he was providing professional services to Olympia (Exhibit "H", page. 168, line 19-22 and page. 170, line 5-25).

Mr. Pinter was retained by Olympia to prepare certain accounting entries based on data given him by Olympia and to determine if entries that had been made in Olympia's accounting system were correct based on the **unverified information he was given** (Exhibit "J", page. 8 and Exhibit "K", page. 26, line 6-20; page. 31, line 12-25 and page. 32, line 2-5) (emphasis

15

added).  Mr. Pinter was **not required to verify any of the data he was given by Olympia** (Exhibit "J", page. 8) (emphasis added).  There is no nexus between Mr. Pinter and any attestation service performed for Olympia by its outside auditors (Exhibit "J", page. 12). Olympia's auditors under Generally Accepted Auditing Standards ("GAAS") had no bases for and could not rely on anything Mr. Pinter did during his performance of accounting and tax services for Olympia (Exhibit "J", page. 11).  Olympia's auditors had no bases under the professional standard for relying on the work of Mr. Pinter, even, *assuming arguendo*, that Olympia's auditors did rely on Mr. Pinter's work (Exhibit "J", page. 11).

Fannie Mae cannot establish that (i) Mr. Pinter was in a position to have knowledge of the alleged falsity of Olympia's statements; (ii) he acted in reckless disregard of such falsity since there were no circumstances presented to Mr. Pinter which should have cast doubt on Olympia's information's veracity; and he was aware of Fannie Mae's reasonable reliance on him. *Reznor, supra*.  There is no evidence that even if Olympia was defrauding Fannie Mae, Mr. Pinter knew or should have known of the impropriety since Fannie Mae failed to submit any accounting expert opinion to establish that Olympia's financial transactions in question, which were subject to review by independent outside auditors, who then issued certified financial statements, were so facially suspect that Mr. Pinter should have doubted Olympia's information's veracity. *Reznor, supra* at 581.

16

## POINT IV

## OLYMPIA CANNOT SUSTAIN A CLAIM FOR ACCOUNTING MALPRACTICE

The principals underlying a sustainable claim for accounting malpractice set forth in POINT I herein to bar Fannie Mae's claim for accounting malpractice also apply to bar Olympia's 9th cause of action in the crossclaim asserting accounting malpractice against Mr. Pinter.

Olympia claims:

- -Mr. Pinter owed a duty to exercise the degree of skill and care exercised in the accounting profession and to apply accounting principals in all duties performed by Olympia (Exhibit "C", page 62,63, para. 154).

- -Mr. Pinter failed to perform his duties as an accounting professional by failing to use the ordinary and reasonable standard of care exercised by members of the accounting profession. Mr. Pinter was negligent in the performance of his responsibilities (Exhibit "C", page 62, 63, para. 154).

Olympia presented John Laschenski, CPA to provide an alleged expert accounting opinion (Exhibit "L").  However, this Court should find that Mr. Laschenski had no opinion, with a reasonable degree of professional accounting certainty, regarding any of the elements necessary for Olympia to sustain an accounting malpractice claim against Mr. Pinter.  Olympia's alleged accounting expert had no opinion or refused to provide an opinion to establish that (1) Mr. Pinter's performance of professional services constituted a departure from the accepted standard of practice; and (2) the alleged departure was the proximate cause of Olympia's alleged injury. *D.D. Hamilton Textiles, Inc. v. Estate of Mate*, *supra*;; *Estate of Burke v. Peter J. Repetti Co.*, *supra*; *Herbert H. Post & Co. v. Sidney Bitterman, Inc.*, *supra*. 1996).

17

On the contrary, Olympia's alleged accounting expert had no opinion or refused to provide an opinion regarding (i) the audit work performed by Olympia's auditor, Mr. Braun (Exhibit "L", page. 22, line 15-25 and page. 23, line 1-6); (ii) the alleged proximate cause between the professional services Mr. Pinter provided to Olympia and any alleged damage that Olympia suffered (Exhibit "L", page. 47, line 21-25; and page. 48, line 1-48); (iii) the scope of the professional services Mr. Pinter provided to Olympia (Exhibit "L", page. 52, line 5-23); or any alleged departures from good and accepted accounting practice with respect to the professional services Mr. Pinter provided to Olympia (Exhibit "L", page. 75, line 2-9).

The fatal deficiencies of Olympia's alleged expert opinion are only highlighted by the comprehensiveness of Mr. Love's expert report and testimony in support of Mr. Pinter (Exhibit "J" and "K").  Consequently, this Court should find that Olympia's accounting expert opinion is so deficient as to be non-existent and consequently Olympia cannot present the necessary expert opinion to sustain its claim for accounting malpractice.  FED. R. EVD. 702, *supra; McDowell v. Brown, supra*; AM. JUR. 2D, *Attorneys at Law* §237; RESTATEMENT (SECOND) OF TORTS §299A ; *Housing Works, Inc. v. Turner, supra; Cumis Ins. Society Inc. v. Tooke, supra*; NEW YORK EDUC. LAW §7401, *supra; Gerber Trade Finance Inc., v. Skwiersky, supra; De Long v. Erie*, 60 N.Y.2d 296, 469 N.Y.S.2d 611, 457 N.E.2d 717 (1983).

18

## POINT V

## MR. PINTER SHOULD BE GRANTED RELIEF TO AMEND THE ANSWER TO THE AMENDED COMPLAINT

In the event the Court finds that Mr. Pinter is not entitled to summary judgment dismissing the 13th cause of action in the amended complaint then the Court should allow Mr. Pinter to amend his answer to the amended complaint to assert the affirmative defense of set off (Exhibit "N").

Pursuant to Fed. R. Civ. P 15(a) a party may amend its pleading with the other parties its pleading "with the opposing party's written consent or the court's leave, and [t]he court should freely give leave when justice so requires." The Supreme Court in *Forman v. Davis*, 371 U.S. 178, 182 (1962) observed that this mandate to grant amendments "freely" should be heeded. The Second Circuit has stated that leave to amend under 15(a) should "normally be permitted." *Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 28 (2d 1995). The Eastern District of New York in *Garvin v. U.S.*, 2001 U.S. Dist. LEXIS 14228 has stated "absent a substantial reason to deny such a motion, courts interpreting <u>Rule 15(a)</u> ordinarily grant motions to amend." However, an amendment is not automatically granted and the court must weigh "several factors, including any undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility, if any, of the proposed amendment." *Id.*

In this case Fannie Mae and Olympia entered into a consent judgment whereby judgment was entered in favor of Fannie Mae and against Olympia on the first and second causes of action in the amended complaint in the amount of $44,800,000 plus pre-judgment interest in accordance with New York C.P.L.R. §5001 (Exhibit "E") which constitutes the entirety of damages Fannie

19

Mae claims in the amended complaint. The Court should find that Mr. Pinter is entitled to assert a set off in this amount as an affirmative defense in the event his motion for summary judgment dismissing Fannie Mae's claim is denied.

Set-off emanates from a common law doctrine in equity, and, unlike recoupment, is not required to arise out of the same set of transactions as the main claim. *Constantino v. State of New York*, 99 Misc. 2d 362, 415 N.Y.S.2d 966 (Ct. Cl. 1979). Set-off under New York Gen. Oblig. Law 15-108(a), insures that a non-settling defendant does not pay more than his equitable share for the same injuries, particularly because of the fact that another tortfeasor has chosen to settle. *See Williams v. Niske*, 81 N.Y.2d 437, 615 N.E.2d 1003, 599 N.Y.S.2d 519 (1993).

New York Gen. Oblig. Law 15-108(a) provides:

(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to <u>one of two or more persons liable or claimed to be liable in tort for the same injury</u>, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest (emphasis added).

This statutory authority prevents double recovery by allowing the amount of any verdict against a non-settling tortfeasor to be reduced to the extent of the amount stipulated by a release or by the amount of the settlor's equitable share of damages, whichever is greater. *Utter v. South Brookhaven Obstetric & Gynecologic Associates, P.C.*, 135 A.D.2d 811, 522 N.Y.S.2d 915 (2d Dept. 1987). To claim the reduction benefit of this statute, tortfeasors may be concurrent, successive, independent, or even intentional; it is the liability for the same personal injury or its aggravation that is the determining point. *Hill v. St. Claire Hospital*, 499 N.Y.S.2d 904, 67

20

N.Y.2d 72 (1986); *Roma v. Buffalo General Hospital,*

103 A.D.2d 606, 481 N.Y.S.2d 811 (3d Dept. 1984); *Purcell v. Doherty,*

102 Misc.2d 1049, 424 N.Y.S.2d 991 (N.Y.Sup. 1980).

Since Olympia has stipulated to liability for Fannie Mae's damages and confessed

judgment in favor of Fannie Mae in the amount of $44,800,000 then Mr. Pinter should be

entitled to assert a set off in that amount in the event of a jury verdict award in favor of Fannie

Mae on the 13th cause of action in the amended complaint (Exhibit "N").

## CONCLUSION

For the reasons set forth above, it is respectfully requested that the instant motion be

granted in its entirety, together with such other and further relief as to this Court seems just and

proper.

Dated: New York, New York
       May 1, 2008

Respectfully submitted,

MICHAEL F. LYNCH
ML (8282)
MARTIN CLEARWATER & BELL LLP
Attorneys for Defendant
MARCUS PINTER
220 East 42nd Street
New York, New York 10017
(212) 697-3122

21