UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

        Plaintiff,

- against -

OLYMPIA MORTGAGE CORPORATION, *et al.*,

        Defendant.

04 Civ. 4971 (NG) (MDG)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT LEIB PINTER

**REED SMITH LLP**
599 Lexington Avenue, 29th Floor
New York, NY 10022

Attorneys for Plaintiff
Federal National Mortgage Association

Of Counsel:

Wendy H. Schwartz
Emily B. Kirsch
Luanne Chu

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS .......................................................................................................................................... 2

    A.   Olympia's Servicing Operation ................................................................................ 3

    B.   The Fraud ................................................................................................................ 4

ARGUMENT ................................................................................................................................ 7

A.   SUMMARY JUDGMENT SHOULD BE ENTERED IN FANNIE MAE'S FAVOR ON COUNT VI OF ITS AMENDED COMPLAINT ............................................................. 7

B.   PINTER HAS ADMITTED THE FIRST THREE ELEMENTS OF FANNIE MAE'S CLAIM FOR FRAUD ..................................................................................................... 10

C.   FANNIE MAE JUSTIFIABLY RELIED ON PINTER'S MISREPRESENTATIONS .. 11

D.   FANNIE MAE HAS SUFFERED $44.8 MILLION IN LOSSES IN RELIANCE ON PINTER'S MISREPRESENTATIONS ............................................................................ 12

CONCLUSION ........................................................................................................................... 13

## TABLE OF AUTHORITIES

### CASES

*Aeronca, Inc. v. Gorin*, 561 F. Supp. 370 (S.D.N.Y. 1983) .................................9, 10, 11, 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..........................................................8

*Anglo-Iberia Underwriting Management Co. v. Lodderhose*, 224 F. Supp. 2d 679 (S.D.N.Y. 2002) ..............................................................................................................9, 12

*In re Blackwood Associates, L.P.*, 153 F.3d 61 (2d Cir. 1998) ...............................................8

*Castle Rock Entertainment, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132 (2d Cir. 1998) ........................................................................................................................8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................................8

*Centennial Life Insurance Co. v. Nappi*, 956 F. Supp. 222 (N.D.N.Y. 1997) ...........8, 9, 11

*Cohen v. Koenig*, 25 F.3d 1168 (2d Cir. 1994) ......................................................................9

*Faller Group Inc. v. Jaffe*, 564 F. Supp. 1177 (S.D.N.Y. 1983) ..........................................11

*Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49 (2d Cir. 1985) ............................8

*JSC Foreign Economic Associate Technostroyexport v. International Development and Trade Services*, 386 F. Supp. 2d 461 (S.D.N.Y. 2005) ......................8

*Jamaica Ash & Rubbish Removal Co. v. Ferguson*, 85 F. Supp. 2d 174 (E.D.N.Y. 2000) ...................................................................................................................7, 8

*Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112 (1969) ....................................9

*Kessenich v. Raynor*, 120 F. Supp. 2d 242 (E.D.N.Y. 2000) ...............................................10

*Lang v. Retirement Living Public Co.*, 949 F.2d 576 (2d Cir. 1991) ....................................8

*SEC v. Enterprises Solutions, Inc.*, 142 F. Supp. 2d 561 (S.D.N.Y. 2001) ..........................8

*U.S. v. Incorporated Village of Island Park*, 888 F. Supp. 419 (E.D.N.Y. 1995) ................9

**PRELIMINARY STATEMENT**

Plaintiff Federal National Mortgage Association ("Fannie Mae"), by and through its attorneys, Reed Smith, LLP, hereby submits this memorandum of law in support of its motion for entry of summary judgment in its favor and against Defendant Leib Pinter ("Pinter") for liability under the Sixth Cause of Action in the Amended Complaint (Fraud).

In late 2004, plaintiff Federal National Mortgage Association ("Fannie Mae") learned that defendant Olympia Mortgage Corporation ("Olympia"), a New York-based mortgage banker and a servicer of mortgage loans for Fannie Mae, was in default of its loan servicing contractual obligations to Fannie Mae as the result of a well-concealed multi-year servicing fraud in which Fannie Mae lost more than $44 million. Specifically, in its capacity as a servicer of loans for Fannie Mae, Olympia had failed to report and remit payoff monies due to Fannie Mae for 257 mortgage loans that Olympia had been servicing on Fannie Mae's behalf. On August 27, 2007, the Court entered a consent judgment against Olympia in the amount of $44.8 million for its breach of its servicing contractual obligations to Fannie Mae related to its failures to timely and accurately report the status of, and remit payoff amounts for the 257 loans that Olympia was servicing for Fannie Mae.

Pinter is at the heart of these wrongdoings. Indeed, through his Answer to the Amended Complaint, Pinter admits that he made misrepresentations to Fannie Mae, that he made these misrepresentations knowingly, and that he intended that Fannie Mae rely on those misrepresentations. Thereafter, Pinter invoked his Fifth Amendment privilege against incrimination, which precludes him from presenting additional evidence. Undisputed evidence from other sources confirms the detail underlying Pinter's admissions and demonstrates that Fannie Mae justifiably relied on Pinter's affirmative servicing fraud and suffered considerable

pecuniary damages in excess of $44 million as a result. Thus, there is no genuine issue of material fact relative to Pinter's liability, and summary judgment should be entered against him.

## FACTS

Olympia Mortgage Corporation ("Olympia"), also a defendant to this action, was a mortgage lender and servicer ("seller/servicer"). *Kirsch Decl., Exh. 1* (Leib Pinter Answ.) at ¶¶ 1, 11. Fannie Mae is a private, shareholder-owned company that has been chartered by the federal government to channel its efforts into increasing the availability and affordability of homeownership for low-, moderate-, and middle-income Americans. *Kirsch Decl., Exh. 2* (Affidavit of Joseph Sakole, dated November 16, 2004) ("Sakole Aff.") ¶ 3. Fannie Mae operates in what is commonly referred to as the secondary mortgage market, *i.e.*, it does not originate mortgages; rather it purchases them from others. *Kirsch Decl., Exh. 2* ¶¶ 2, 3. In addition, Fannie Mae does not service mortgages directly; instead it generally retains the loan seller (or another third party) to act as loan servicer. *Kirsch Decl., Exh. 2* ¶ 4

Fannie Mae and Olympia are parties to a June 8, 1988 Mortgage Selling and Services Contract by and between Fannie Mae and Olympia, (the "Contract"), under which Fannie Mae authorized Olympia to sell loans meeting certain criteria to Fannie Mae and Fannie Mae also retained Olympia to service those loans. *Kirsch Decl., Exh. 3* (Contract); *Exh. 2* (Sakole Aff.) ¶ 4; *Exh. 4* (Consent Judgment) ¶ 2(c). Over the years, Olympia serviced thousands of loans on behalf of Fannie Mae under the Contract. *Kirsch Decl., Exh. 4* (Consent Judgment) ¶¶ 2b, 2c. In breach of Olympia's servicing obligations to Fannie Mae, among other things, Olympia failed to report as payoffs some 257 loans that had been refinanced or modified and failed to remit payoff funds to Fannie Mae for those same loans. *Kirsch Decl., Exh. 4* at ¶¶ 2g, 2h, 2n, 2o. Furthermore, using its servicing functions, Olympia took various steps to conceal these failings

from Fannie Mae. *Kirsch Decl., Exh. 4* at ¶ 2k. As a direct result of this scheme, at the time it was discovered in late 2004, Olympia owed Fannie Mae in excess of $44 million. *Kirsch Decl., Exh. 4* at ¶¶ 4, 5.

### A. Olympia's Servicing Operation

Pinter was an Executive Vice President at Olympia. *Kirsch Decl., Exh.* 1 (Leib Pinter Answ.) at ¶ 12. Pinter's responsibilities included the servicing operations, which were run by Olympia employee Roseann Silecchia. *R. Silecchia 7/26/05 Dep.* at 122:8-13; *L. Pinter 9/18/06 Dep.* at 56:19-23; 58:8-13 (invoking the Fifth Amendment). Ms. Silecchia reported to Pinter. *R. Silecchia 7/26/05 Dep.* at 110:5-10; 269:14-21.

As a servicer, Olympia was required, among other things, to collect the monthly principal and interest ("P&I") payments, along with any real estate tax, homeowner's insurance, and other escrows payments made by the borrower. *R. Silecchia 7/26/05 Dep.* at 119:14-23; *Kirsch Decl., Exh. 5* (Servicing Guide) at § I:202, pp.127-128; § III:101, p. 303. For loans serviced on behalf of Fannie Mae, Olympia, as a servicer, was required to: (1) place the P&I payments into a custodial account from which Fannie Mae could withdraw, on a monthly basis, the remittances due to Fannie Mae; and (2) report on a monthly basis the then-current status (*e.g.*, current, in default, paid off) of each loan serviced, informing Fannie Mae as to whether the loan was current and the monies Fannie Mae could expect to find in the custodial account. *Kirsch Decl., Exh. 3* (Contract) § V(A)(1); *Kirsch Decl., Exh. 5* (Servicing Guide) at § IX:101, pp. 903-905; § X:101, p. 1003; *R. Silecchia 7/26/05 Dep.* at 230:12-231:22; *R. Silecchia 4/26/07 Dep. ((Federal National Mortgage Association v. National Union Fire Insurance Co. of Pittsburgh, PA, et al.) ("FNMA v. NU"))* at 71:11-72:4; *L. Pinter 9/18/06 Dep.* at 27:19-28:10 (invoking the Fifth

Amendment). Thus, when a loan was refinanced or modified,[1] Olympia, as servicer, was required to notify Fannie Mae that the loan was a "payoff," and to remit the appropriate payoff amount to a custodial account from which Fannie Mae could then withdraw the funds. *Kirsch Decl., Exh. 5* (Servicing Guide) at § VI:106, pp. 608-610; § X:103.01, p. 1005; *Kirsch Decl., Exh. 4* (Consent Judgment) ¶ 2(f); *R. Silecchia 4/26/07 Dep. (FNMA v. NU)* at 73:21-74:3; 75:9-22; *L. Pinter 9/18/06 Dep.* at 27:19-29:6 (invoking the Fifth Amendment). Olympia expressly warranted to Fannie Mae that Olympia would comply with its loan servicing obligations. *Kirsch Decl., Exh. 3* (Contract) § IV.

### B. The Fraud

Here, in a number of instances when mortgage loans were refinanced/modified, Olympia in its capacity as loan servicer failed both to report the status of the loan as a payoff to Fannie Mae and to place the payoff funds into the custodial account for Fannie Mae. *Kirsch Decl., Exh. 4* (Consent Judgment) ¶ 2. Instead, Olympia represented to Fannie Mae that these paid-off mortgages were "active" by falsely reporting through the servicing system monthly loan payments as if they were being made by the borrowers and then placing amounts equaling the expected monthly P&I payments into the custodial account, while simultaneously retaining the loan payoff proceeds. *Id., Exh. 4* (Consent Judgment) at ¶¶ 2i-2l; *R. Silecchia 7/26/05 Dep.* at 256:8-21; 264:9-25.

Pinter was the main perpetrator of the scheme. He was personally directing which loans were to be paid off and which were not. *R. Silecchia 3/15/06 Dep.((Independence Cmty. Bank v. Olympia Mortgage Corp., et al.) ("ICB v. OMC"))* at 98:19-102:13; *R. Silecchia 7/26/05 Dep.* at

---

[1] Typically, to obtain a lower interest rate on an existing mortgage, a borrower will take out a new loan to "refinance" their existing loan. New York law permits a borrower to refinance a loan through a process technically called a "modification" in order to allow the borrower to avoid certain tax consequences otherwise associated with a refinance. McKinney's Tax Law § 255.

250:18-251:16, 252:21-253:11, 255:11-256:7, 262:16-263:10, 266:24-267:11, 268:8-22, 273:14-274:13; *K. Balmer 10/23/06 Dep.* at 74:5-75:2, 84:13-85:24. As he admitted in his Answer:

> In a variation on the typical Ponzi scheme, [he] systematically and repeatedly lied to Fannie Mae by misrepresenting loans that should have been paid off as current and active. In order to hide the truth from Fannie Mae, [he caused Olympia to make] payments on these loans as if the borrowers were still making them.

*Kirsch Decl., Exh. 1* (Leib Pinter Answ.) at ¶ 4.

Specifically, to effectuate the scheme, Pinter instructed Silecchia to keep track of these loans within Olympia's servicing system by coding them with the number "59." *See R. Silecchia 7/26/05 Dep.* at 244:14-245:25 (collectively, this group of loans were referred to as the Code 59 loans); *Kirsch Decl., Exh. 4* (Consent Judgment) at ¶ 2k. The Code 59 loans were loans that "should have been paid off" as the result of the borrower's refinance/modification and for which Olympia was due to report and remit to Fannie Mae payoff amounts. *R. Silecchia 7/26/05 Dep.* at 266:3-5. Every month, Pinter would review a copy of the Code 59 list of loans and he would identify the loans for which Olympia would remit a payoff, and those for which Olympia would not. *R. Silecchia 4/26/07 Dep. (FNMA v. NU)* at 83:15-84:11; *L. Pinter 9/18/06 Dep.* at 33:17-22 (invoking Fifth Amendment).

When a loan was coded 59, Silecchia would also "shut down" the normal servicing for that loan, so that no further payments, other than those Olympia used to conceal the fraud, would be posted to the system. *R. Silecchia 7/26/05 Dep.* at 244:14-245:25; 268:20-25; *R. Silecchia 4/26/07 Dep. (FNMA v. NU)* at 91:12-22. *See generally, Kirsch Decl., Exh. 4* (Consent Judgment) ¶ 2l; *L. Pinter 9/18/06 Dep.* at 36:13-20 (invoking Fifth Amendment). So, even though the loan was still being reported to Fannie Mae as active, via the reporting and remittance of monthly principal and interest payments made by Olympia, *R. Silecchia 7/26/05 Dep.* at

264:18-21, "taxes and insurance were not due to be disbursed," *R. Silecchia 7/26/05 Dep.* at 265:2-25; *L. Pinter 9/18/06 Dep.* at 37:16-20 (invoking Fifth Amendment), IRS Form 1098s (which report interest and mortgage related expenses) were doctored because "you can't give the borrower credit for the [interest] payments Olympia was making," *R. Silecchia 7/26/05 Dep.* at 267:12-268:5; *L. Pinter 9/18/06 Dep.* at 38:9-16 (invoking Fifth Amendment), Olympia would not report to credit bureaus that the loans had been satisfied, *R. Silecchia 7/26/05 Dep.* at 266:9-17; *L. Pinter 9/18/06 Dep.* at 38:2-8 (invoking Fifth Amendment), and coupon booklets that contain monthly payment coupons were not sent to the borrowers on the refinanced/modified loan. *R. Silecchia 7/26/05 Dep.* at 268:6-19; *L. Pinter 9/18/06 Dep.* at 37:21-25 (invoking Fifth Amendment).

Pinter, by directing Silecchia which loans to remit the payoff to Fannie Mae, directed use of Olympia's servicing functions to conceal the fraud and the management of the Code 59 loans. *See R. Silecchia 7/26/05 Dep.* at 250:18-252:2. *See, e.g., R. Silecchia 7/26/05 Dep.* at 267:13-18 ("at the end of the year when the 1098s were done, the first year Leib came and said, don't forget you can't give the borrower credit for the payments Olympia was making, so make sure you take care of that"). Pinter admitted that the above-described conduct by him constituted misrepresentations of fact: (a) causing Olympia to fail to inform Fannie Mae that loans should have been paid off; (b) causing Olympia to fail to inform Fannie Mae of the diversion of funds due and owing to Fannie Mae; (c) causing Olympia to pay borrowers' apparent principal and interest obligations; and (d) causing Olympia to misrepresent information regarding the mortgages sold to Fannie Mae and serviced on Fannie Mae's behalf. *Kirsch Decl., Exh. 1* (Leib Pinter's Answ.) at ¶ 85. Pinter also admits that these misrepresentations were material and that he knew that these misrepresentations were false. *Id., Exh. 1* (Leib Pinter's Answ.) at ¶ 86.

Finally, Defendant Pinter admits that he made these misrepresentations to Fannie Mae for the purpose of and intending Fannie Mae to rely on them. *Id., Exh. 1* (Leib Pinter's Answ.) at ¶ 87.

Code 59 was internal to Olympia and not known to Fannie Mae. *R. Silecchia 7/26/05 Dep.* at 236:12-25, 251:10-252:20; *K. Balmer 10/23/06 Dep.* at 73:7-75:2. As a consequence, this scheme concealed from Fannie Mae that these loans had, in fact, been paid off. *R. Silecchia 7/26/05 Dep.* at 256:8-21; 264:9-25; 229:11-233:10; 236:19-25 (Fannie Mae would have no way of knowing there was a payoff if not reported); *L. Pinter 9/18/06 Dep.* at 33:8-16 (invoking Fifth Amendment); *Kirsch Decl., Exh. 4* (Consent Judgment) ¶ 2(h) & (i); *Kirsch Decl., Exh. 1* (Leib Pinter Answ.) at ¶ 4.

Fannie Mae did rely on Defendant Pinter's misrepresentations, *Sakole 5/4/07 Dep. (FNMA v. NU)* at 255:16-20; *R. Silecchia 7/26/05 Dep.* at 236: 19-25 (if the payoff is not reported and funds don't appear in custodial account, Fannie Mae does not know there is a payoff); *L. Pinter 9/18/06 Dep.* at 41:17-42:13 (invoking the Fifth Amendment). Moreover, Fannie Mae has been significantly damaged by that reliance, in that it did not receive the payoff funds to which it was entitled for the 257 loans. *Kirsch Decl., Exh. 4* (Consent Judgment) ¶ 2(h). Fannie Mae has been damaged in the amount of $44,800,000. *Kirsch Decl., Exh. 4* (Consent Judgment) ¶4; *L. Pinter 9/18/06 Dep.* at 30:15-22 (invoking the Fifth Amendment). Fannie Mae has been damaged in at least that amount.

## ARGUMENT

### A. SUMMARY JUDGMENT SHOULD BE ENTERED IN FANNIE MAE'S FAVOR ON COUNT VI OF ITS AMENDED COMPLAINT

It is well-established that where, as here, "there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law," summary

judgment should issue. *Jamaica Ash & Rubbish Removal Co. v. Ferguson*, 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *In re Blackwood Assocs., L.P.*, 153 F.3d 61, 67 (2d Cir. 1998); citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir. 1991); Fed. R. Civ. P. 56.

In deciding a summary judgment motion, a district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entertainment, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). However, to defeat a properly supported motion for summary judgment, "there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash*, 85 F. Supp. 2d at 180 (quoting *Celotex*, 477 U.S. at 322). Neither conclusory allegations nor speculation will defeat a properly supported motion. *Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49, 56 (2d Cir. 1985).

Furthermore, Pinter's invocation of his Fifth Amendment right not to testify does not preclude entrance of summary judgment against him. *JSC Foreign Economic Assoc. Technostroyexport v. International Development and Trade Services*, 386 F. Supp.2d 461, 464 (S.D.N.Y. 2005). On the contrary, the invocation of the Fifth Amendment in a civil proceeding permits the Court to draw adverse inferences against him. *Id.*; *Centennial Life Ins. Co. v. Nappi*, 956 F. Supp. 222, 228 (N.D.N.Y. 1997) (citations omitted). Indeed, a movant may rely on the non-movant's assertion of Fifth Amendment privilege to confirm matters supported by other

independent evidence. *SEC v. Enterprises Solutions, Inc.*, 142 F. Supp. 2d 561, 567 n.1 (S.D.N.Y. 2001); *Centennial*, 956 F. Supp. at 228-29; *U.S. v. Incorporated Village of Island Park*, 888 F. Supp. 419, 431-32 (E.D.N.Y. 1995).

To prevail on a claim of fraud under New York law, the plaintiff must show that:

1. the defendant made a false representation of fact,
2. that the defendant made the representation with scienter,
3. that the defendant intended the plaintiff to act or refrain from acting in reliance on the misrepresentation,
4. that the plaintiff justifiably relied upon the misrepresentation in taking, or refraining from, action, and
5. that the plaintiff sustained pecuniary loss as a result of this reliance.

*Aeronca, Inc. v. Gorin*, 561 F.Supp. 370, 373 (S.D.N.Y. 1983) (citing W. Prosser, HANDBOOK OF THE LAW OF TORTS § 105, at 685-86 and *Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119 (1969)); *see also Anglo-Iberia Underwriting Mgmt Co. v. Lodderhose*, 224 F.Supp.2d 679, 684 (S.D.N.Y. 2002). It is well settled in New York that an individual officer or director of a corporation may be held liable for fraud committed by a corporation where the officer and/or director personally participated or had actual knowledge of the fraud. *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994); *Anglio-Iberia*, 224 F. Supp.2d at 686-87.

Here, the evidence, including Pinter's admissions in his Answer to the Amended Complaint, starkly demonstrates his liability to Fannie Mae for fraud. His subsequent invocation of the Fifth Amendment privilege in response to more detailed questioning creates an adverse inference against him, and prohibits any protest that he may now seek to make. In sum, there is no dispute of fact, that each of these elements is met, and that Mr. Pinter personally participated in the fraud committed on Fannie Mae. As such, summary judgment for Fannie Mae and against Pinter as to the fraud alleged in the Amended Complaint should be granted as a matter of law.

### B. PINTER HAS ADMITTED THE FIRST THREE ELEMENTS OF FANNIE MAE'S CLAIM FOR FRAUD

As described above, the first three elements of a claim for fraud require the plaintiff to demonstrate that: (i) the defendant made a false representation of fact; (ii) with knowledge that the statement was false; and (iii) with the intention that the plaintiff rely on the misrepresentation. *Aeronca*, 561 F.Supp. at 373. In his Answer, Pinter affirmatively admits that the following conduct by him constituted misrepresentations of fact:

(a) the failure to inform Fannie Mae that loans should have been paid off;

(b) the failure to inform Fannie Mae of the diversion of funds due and owing to Fannie Mae;

(c) the payment of expected P&I payments to conceal the fraud; and

(d) the representations as to the current status of loans that were serviced by Olympia on Fannie Mae's behalf.

*Kirsch Decl., Exh. 1* (Leib Pinter Answ.) at ¶ 85. He further admits that "these misrepresentations were material and known to . . . [him] . . . to be false." *Id., Exh. 1* (Leib Pinter Answ.) at ¶ 86. He admits that he "systematically and repeatedly lied to Fannie Mae by misrepresenting loans that should have been paid off as current and active [and] [i]n order to hide the truth from Fannie Mae, [Defendant has] made payments on these loans as if the borrowers were still making them." *Id., Exh. 1* (Leib Pinter Answ.) at ¶ 4. Finally, he admits that he made these misrepresentations to Fannie Mae for the purpose of and intending Fannie Mae to rely on them. *Id., Exh. 1* (Leib Pinter Answ.) at ¶ 87.

Having answered the Amended Complaint thusly, these statements are "judicial admissions" that have the effect of withdrawing the fact from issue such that they become conclusive for purposes of summary judgment. *Kessenich v. Raynor*, 120 F. Supp. 2d 242, 249 (E.D.N.Y. 2000) (defendant is bound by her admissions in her answer for purposes of summary

judgment). Pinter has thus admitted to three of the five elements of common law fraud under New York law, leaving no issues of fact as to those elements.

While the above is sufficient to conclusively determine the first three elements of Fannie Mae's fraud claim, it should also be noted that the facts judicially admitted by Pinter are confirmed by Olympia's stipulations, and the detailed testimony of Silecchia, the employee in charge of loan servicing who carried out Pinter's instructions to effectuate the fraud. *See* discussion above (at 4-7). Due to his Fifth Amendment invocations, *see id.*, Mr. Pinter cannot dispute any of these facts. *Centennial,* 956 F. Supp. at 228-29.

## C. FANNIE MAE JUSTIFIABLY RELIED ON PINTER'S MISREPRESENTATIONS

The fourth element of a fraud claim under New York law is that the plaintiff "justifiably relied upon the misrepresentation in taking, or refraining from, action" as a result of the fraud. *Aeronca,* 561 F.Supp. at 373. Where a warranty is given, a party is entitled to accept and rely on that warranty. *Faller Group Inc. v. Jaffe,* 564 F. Supp. 1177, 1181 (S.D.N.Y. 1983).

Here, Fannie Mae's reliance was justified by the contractual relationship between Fannie Mae and Olympia. Under its contract, Olympia agreed to diligently perform all servicing duties, *Kirsch Decl., Exh. 3* (Contract) at § V(A)(1), and to service the loans in accordance with Fannie Mae's Servicing Guide. *Id.* § V(A)(3). When a loan was refinanced/modified (or paid in full), Olympia, as servicer, would remit to Fannie Mae the unpaid principal balance plus the full amount of interest charged to the borrower, less its servicing fee, *i.e.*, the payoff funds. *Kirsch Decl., Exh. 5* (Guide) at §VI:106, pp. 608-610. Olympia expressly warranted to Fannie Mae that Olympia would comply with its obligations. *Kirsch Decl., Exh. 3* (Contract) § IV. Olympia also agreed to accurately report to Fannie Mae. *Id.* at § V(A)(1).

Under these provisions, Fannie Mae was entitled to, and did, rely on Olympia's reports (or non-reports) of payoffs. Pinter was aware of these obligations, *L. Pinter 9/18/06 Dep.* at 28:11-29:19, and played on that reliance by making sure that Olympia paid sufficient funds into the appropriate custodial account so that the Code 59 loans would appear to Fannie Mae to be active. Pinter manipulated the servicing reporting to Fannie Mae so that when Fannie Mae would sweep the custodial accounts, all of the fraudulently serviced Code 59 loans would appear in order. As the testimony of Silecchia and Joe Sakole confirms, Fannie Mae relied on Olympia's reporting, and, due to the representations directed by Pinter, did not know that the 257 loans at issue had in fact been paid off, with the money retained by Olympia. *Sakole 5/4/07 Dep. (FNMA v. NU)* at 255:16-20. *See* 4-7 above. No rational jury would find that Fannie Mae's reliance on Olympia's representations was unreasonable. *See Anglo-Iberia*, 224 F. Supp.2d at 686.

### D. FANNIE MAE HAS SUFFERED $44.8 MILLION IN LOSSES IN RELIANCE ON PINTER'S MISREPRESENTATIONS

Finally, Fannie Mae need show that it suffered a loss as a result of its reliance on Pinter's misrepresentations. *Aeronca,* 561 F.Supp. at 373. This element is easily satisfied. It is undisputed that when Olympia was shut down in October of 2004, there were 257 loans outstanding that had been modified or refinanced without Olympia remitting the pay-off proceeds to Fannie Mae. Olympia has stipulated that its actions caused damage to Fannie Mae in the amount of $44,800,000. *Kirsch Decl., Exh. 4* (Consent Judgment) ¶ 4. Pinter invoked the Fifth Amendment in response to a question concerning this amount, *see L. Pinter 9/18/06 Dep.* at 30:15-22, and thus cannot now dispute it. Nor can he dispute that this represents the actual damage suffered by Fannie Mae, as he declined to provide any information of his own, again on Fifth Amendment grounds, in response to Fannie Mae's interrogatory questions asking for

information on the loans for which Olympia failed to remit payoff amounts. *Kirsch Decl., Exh..*

*6* (Leib Pinter's Response to Interrogatories, dated April 9, 2006) at 1.

## CONCLUSION

For the reasons stated above, Fannie Mae's motion for summary judgment against Defendant Leib Pinter on its Sixth Cause of Action (Fraud) should be granted, along with such other relief as the Court may deem just.

Respectfully submitted,
REED SMITH LLP

By: _____
Wendy H. Schwartz (WS-1862)
Emily Kirsch (EB-4216)
Luanne Chu (LC-4637)

599 Lexington Avenue
New York, NY 10022-7650
Telephone:   212.521.5400
Facsimile:    212.521.5450

*Counsel for Plaintiff*
*Federal National Mortgage Association*

Dated: May 30, 2008
       New York, New York