UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

                           Plaintiff,

      - against -

OLYMPIA MORTGAGE CORPORATION,
et al.,

                         Defendants.
-----------------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 6 - 2010 ★
BROOKLYN OFFICE

OPINION AND ORDER

04 CV 4971 (NG) (MDG)

**GERSHON, United States District Judge:**

Plaintiff Federal National Mortgage Association ("Fannie Mae") brought this action against defendant Leib Pinter[1] ("defendant"), among others, in connection with a fraud and breach of contract carried out by Olympia Mortgage Corporation ("Olympia"). Defendant, a former executive and part-owner of Olympia, has already pled guilty to a related count of wire fraud. Fannie Mae seeks summary judgment against defendant on its claim of fraud, with damages totalling $44.8 million.[2] Defendant does not contest his liability for the fraud, but does challenge plaintiff's calculation of damages.

## FACTS

The following facts are undisputed unless otherwise noted. Olympia is an independent mortgage lender headquartered in Brooklyn, New York, which was founded in 1986 by defendant's brother, Samuel Pinter. Defendant worked at Olympia from its early days. He held

---

[1] This case involves two brothers, both of whom used the name "Samuel Pinter" at various times. For clarity, this opinion will refer to the founder of Olympia as "Samuel" and his brother, the present defendant, as "Leib."

[2] Fannie Mae has other claims arising out of the same facts outstanding against defendant, on which it has not moved for summary judgment.

1

various titles there, including executive vice president; effectively, he served as his brother's representative and was responsible for the day-to-day running of the company. Although he was not initially a principal of the company because of his criminal record[3], he later acquired an ownership interest in Olympia.

Fannie Mae is a "government-sponsored entity" which supports the United States residential mortgage market by purchasing such mortgages in the secondary market. It does not itself originate mortgages, but rather buys them from lenders, such as Olympia. In 1988, Olympia began selling some of its mortgage loans to Fannie Mae. Under the terms of their contract, Olympia sold Fannie Mae thousands of mortgages which Olympia had originated, but retained the valuable rights to service the loans—that is, to handle (for a fee) the collection of payments and other administrative matters. After a mortgagor submitted a monthly payment to Olympia, Olympia, as the servicer, was responsible for depositing the payment into various bank accounts which corresponded to each component of the monthly payment, including 1) principal and interest and 2) taxes and for notifying Fannie Mae through a computer system called LASER that the payment had been made. Fannie Mae would then withdraw the money from the appropriate accounts. If a mortgagor paid off a loan entirely (usually as the result of a refinancing), Olympia was supposed to deposit all the funds into a custodial account and inform Fannie Mae that the loan was being closed out. Such loans were known at Olympia as "Code 59"[4] loans.

However, for a substantial number of Code 59 loans (a group called "Leib's list"), Olympia did not inform Fannie Mae that the loan was paid off, nor did it deposit the funds into the custodial account for withdrawal by Fannie Mae. Instead, at the direction of Leib Pinter and

---

[3] He had previously pled guilty to charges of bribing a Congressman.
[4] The code used in LASER to identify a refinanced loan to Fannie Mae was 60.

another Olympia executive, Barry Goldstein, it continued to report the loan as active and diverted the funds to other uses. In some cases, in violation of the contract with Fannie Mae, Olympia applied the funds to the repayment of other mortgages. In other cases, the funds were simply appropriated for Olympia.[5] Leib Pinter and Barry Goldstein went to great lengths to ensure that the diversion of these funds was not detected. Not only did Olympia continue to report the loan as active to Fannie Mae on LASER, it made monthly deposits into the bank accounts corresponding to the loan to make it appear that the mortgagor was continuing to make the mortgagor's monthly payments. It ceased sending monthly bills to the mortgagor and also adjusted tax forms so that the mortgagor was credited only for the interest the mortgagor had actually paid in a year, as opposed to any interest that Olympia had paid "for" the mortgagor.

Fannie Mae discovered this fraud in 2004 after receiving an anonymous tip that an unidentified lender was diverting payoff funds. Its examination of its records revealed that Olympia had sold it over a hundred mortgages in which there were two first liens outstanding against the same property, a situation explicable only by either gross incompetence in recordkeeping or outright fraud. As a result, Fannie Mae visited the offices of Olympia on October 19, 2004, to investigate. Fannie Mae terminated its contract with Olympia shortly thereafter. On October 28, 2004, the New York State Department of Banking summarily suspended Olympia's license to act as a mortgage lender; on November 4, 2004, Olympia surrendered its license permanently. On November 16, 2004, Fannie Mae sued Olympia, as well as defendant and a number of others, for, among other things, breach of contract and fraud.

---

[5] This court has already found that Samuel Pinter used Olympia as a means of channeling funds to himself, his related entities, his friends, and his relatives. See *Federal Nat'l Mortgage Ass'n v. Olympia Mortgage Corp.*, --- F. Supp. 2d ---, 2010 WL 2774096 (E.D.N.Y. 2010).

3

Olympia, which went into receivership by the order of this court, has consented to judgment in the amount of $44.8 million to settle the breach of contract claim.

As noted above, defendant ultimately pled guilty to one count of conspiracy to commit wire fraud in connection with the "Code 59" scheme. See *United States v. Goldstein*, 08-cr-0297 (E.D.N.Y.).

## DISCUSSION

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); see Fed. R. Civ. P. 56(c). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the facts in the light most favorable to the non-moving party, and all reasonable inferences and ambiguities must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), but "must come forward with specific facts showing that there is a genuine issue for trial," *Matsushita*, 475 U.S. at 586-88 (emphasis removed).

Plaintiff asserts, and defendant has not disputed, that New York law governs this diversity action. "The elements of fraud under New York law are: (1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the

purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009); *State Farm Mut. Auto Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 220 (E.D.N.Y. 2009). Defendant has not contested his liability to Fannie Mae for this fraud either in his motion papers or at oral argument. Indeed, he has disputed only two paragraphs, both pertaining only to damages, in Fannie Mae's Local Civil Rule 56.1 statement. Thus, the only issue remaining is whether there are any material questions of fact concerning the amount of damages for which defendant is liable. To establish damages, Fannie Mae has submitted both a report from Olympia's receiver and a report from its own expert. Each identifies the specific "Code 59" accounts and calculates the losses resulting from the diversion of the funds which were intended to repay those mortgages. The loss calculated by plaintiff's expert is $43,918,500.

Although defendant did not submit his own expert report in response, he makes a few objections to Fannie Mae's calculations. First, he argues that Fannie Mae should deduct the value of the portfolio of servicing rights which it reassumed from Olympia upon learning of the "Code 59" fraud. However, even assuming for the sake of argument that defendant is entitled to a setoff based on *Olympia's* losses, the contract between Fannie Mae and Olympia clearly provides that, upon breach by Olympia, "[Fannie Mae] will not pay [Olympia] a termination fee or proceeds from any sale of the servicing involved." Defendant does not deny that Olympia breached its contract with Fannie Mae, and therefore the rights to Olympia's servicing portfolio simply reverted to Fannie Mae without compensation to Olympia.

Second, defendant asserts that Olympia had made advances, which remain outstanding, of "between $1 million and $2 million" to Fannie Mae on certain accounts for principal and

interest and other expenses. It should be noted that Olympia itself has made no such claim. Once again, it is far from clear that defendant would be entitled to a setoff even if Olympia had made such advances. Even more importantly, defendant's claim has no support besides his own conclusory statement in his declaration. But, as plaintiff points out, defendant invoked his Fifth Amendment privilege in his deposition in this case. Although the court has the discretion to permit the defendant to waive the privilege now and make such a declaration, "if the litigant's request to waive comes only at the 'eleventh hour' and appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation, a trial court may be fully entitled" to deny such waiver. *United States vs. Certain Real Property and Premises Known as 4003-4005 5th Ave.*, 55 F.3d 78, 85 (2d Cir. 1995). In this case, defendant invoked his privilege throughout the case, only to produce his declaration at the last possible moment in opposition to summary judgment. The prejudice to the plaintiff is obvious. This court will not permit defendant to use his Fifth Amendment privilege as a convenience.

Defendant also argues that plaintiff's expert report is too speculative in dealing with these supposed advances by Olympia. However, the analysis to which defendant objects actually refers not to interest advanced by Olympia to Fannie Mae in the ordinary course of servicing loans, but rather to "interest" paid by Olympia on Code 59 loans as part of its scheme to deceive plaintiff into believing that the loans were still active. (Since the loans had been refinanced, if the fraud had not occurred, plaintiff would not have received this interest.) The court does not find this unrebutted analysis speculative.

Defendant also objects that Olympia's concession in the consent judgment cannot bind him, as he did not sign that document. In the consent judgment, Olympia stipulated to a liability of $44.8 million in damages. Although Fannie Mae's expert report and the report of Olympia's

receiver are more than sufficient to substantiate plaintiff's loss of $43.9 million, they do not account for the remaining approximately $900,000 or conclude that this loss arises from the "Code 59" fraud. Therefore, this court finds that plaintiff has established that defendant is liable for fraud in the amount established as Fannie Mae's loss by its expert, that is, $43,918,500 million.

## CONCLUSION

For the foregoing reasons, Fannie Mae's motion for summary judgment is granted to the extent that the court finds Fannie Mae entitled to judgment in the amount of $43,918,500 from defendant Leib Pinter.

SO ORDERED.

_____
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
   August 2, 2010