UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

                              Plaintiff,

              - against -                                          Index No. 04-CV-4971
                                                                   (NG) (MDG)
OLYMPIA MORTGAGE CORPORATION, et al.

                              Defendants.

OLYMPIA MORTGAGE CORPORATION,

              Cross-Claim Plaintiff,

              - against -

LEIB PINTER, et al.

              Cross-Claim Defendants.


**OLYMPIA'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR PARTIAL
SUMMARY JUDGMENT AGAINST ABE DONNER**


LAW OFFICES OF ERIC J. GRANNIS

620 Fifth Avenue
New York, New York 10020
(212) 903-1025

Attorneys for Olympia Mortgage Corporation

TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................... 1

I.  OLYMPIA IS ENTITLED TO SUMMARY JUDGMENT
ON ITS BREACH OF FIDUCIARY DUTY CLAIM. .................................................. 1

     A.     Donner Improperly Diverted Corporate Assets to Himself and His Family. ............. 2

          1.     Donner Used Olympia Funds to Pay Off a Personal Settlement
with the Small Business Administration, ............................................................ 2

          2.     Donner Improperly Diverted $350,000  to an Investment in Barring Shields.... 3

          3.     Donner Improperly Diverted Funds to His Family Members. .......................... 3

          4.     Donner Improperly Diverted Olympia Funds to Pay Himself  Salary and Other
Benefits to Which he Was Not Entitled............................................................. 4

          5.     Donner Used Olympia Funds To Pay For His Personal Mortgage. .................. 5

     B.     Donner Covered Up Olympia's Insolvency and Lack of Liquidity. ......................... 5

          1.     Donner Covered Up Olympia's Improper Loans from Midwood. .................... 5

          2.     Donner Covered Up Olympia's Liquidity Problems
by Engaging in a Check Kiting Scheme……………..…...……………………...5

          3.     Donner's Liability for Olympia's Deepening Insolvency. ................................ 6

II. OLYMPIA IS ENTITLED TO SUMMARY JUDGMENT
ON  ITS NEW YORK DEBTOR AND CREDITOR LAW § 276 CLAIM. ..................... 7

III.OLYMPIA IS ENTITLED TO SUMMARY JUDGMENT
ON  ITS NEW YORK DEBTOR AND CREDITOR LAW § 273 CLAIM. ..................... 9

IV. OLYMPIA IS ENTITLED TO SUMMARY JUDGMENT
ON ITS CONVERSION CLAIM.................................................................................... 10

V. OLYMPIA IS ENTITLED TO SUMMARY JUDGMENT
ON ITS ALTER EGO CLAIM. ..................................................................................... 11

     A.     Donner Completely Dominated Olympia.................................................................. 13

B.    Donner's Domination Was Used To Commit A Wrong
      That Injured Olympia. ...................................................................................... 15

VI. THE COURT SHOULD CONSIDER DONNER'S INVOCATION OF HIS
FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION......................................... 15

VII. FINAL JUDGMENT SHOULD BE ENTERED IMMEDIATELY
ON THE FOREGOING CLAIMS. ............................................................................... 16

CONCLUSION ................................................................................................. 17

**Cases**

*Ault v. Soutter*,
   204 A.D.2d 131, 131 (1st Dep't 1994) ......................................................... 2

*Balmer v. 1716 Realty LLC*,
   No. 05 CV 839 (NG)(MDG), 2008 WL 2047888 (E.D.N.Y. May 9, 2008) ............... 14

*Baxter v. Palmigiano*,
   425 U.S. 308, 318 (1976) ..................................................................... 15

*Birnbaum v. Birnbaum*,
   73 N.Y.2d 461, 466 (1989) ................................................................... 2

*Bowne of New York City, Inc. v. AmBase Corp.*,
   161 F.R.D. 270, 272 (S.D.N.Y. 1995) ....................................................... 16

*Capital Distribution Servs., Ltd. v. Ducor Express Airlines, Inc.*,
   2007 WL 1288046, at *2 (E.D.N.Y. May 1, 2007) ..................................... 11

*Employers' Fire Ins. Co. v. Cotten*,
   245 N.Y. 102, 105 (1927) ..................................................................... 10

*Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*,
   724 F. Supp. 2d 308 (E.D.N.Y. 2010) ............................................. 11, 12, 13

*Feiger v. Iral Jewelry, Ltd.*,
   41 N.Y.2d 928, 928, 394 N.Y.S.2d 626, 363 N.E.2d 350 (1977) ................... 4

*Fidelity Funding of Calif., Inc., v. Reinhold*,
   79 F.Supp.2d 100, 116 (E.D.N.Y. 1997) ............................................... 16

*Grumman Aerospace Corp. v Rice*,
   199 A.D.2d 365, 366-67 (2d Dep't 1993) ............................................. 7

*HBE Leasing Corp. v. Frank*,
   48 F.3d 623, 639 (2d Cir. 1995) ........................................................... 8

*Herman v. Feinsmith*,
   39 A.D.3d 327, 328 (1st Dep't 2007) ..................................................... 1

*Howard v. Carr*,
   222 A.D.2d 843, 845 (3d Dep't 1995) ..................................................... 2

*In re Food Mgt. Group, LLC*,
   380 BR 677, 713 (Bankr. S.D.N.Y. 2008) ............................................... 4

*In re Global Serv. Group, LLC*,
   316 B.R. 451, 456 (Bankr. S.D.N.Y. 2004)..................................................................6

*In re Manhattan Inv. Fund, Ltd.*,
   2007 WL 534547 at *2 (Bankr. S.D.N.Y. 2007)......................................................16

*In re Saba Enterprises, Inc.,*
   421 B.R. 626, 642 (Bankr. S.D.N.Y. 2009)..............................................................8

*Independence Discount Corp. v. Bressner*,
   47 A.D.2d 756, 757 (2d Dep't 1975)......................................................................10

*Lefkowitz v. Turley*,
   414 U.S. 70, 77 (1973)............................................................................................15

*Marine Midland Bank v. Murkoff*,
   120 A.D.2d 122 (2d Dep't 1986)..........................................................................7, 9

*Milbank, Tweed, Hadley & McCloy v. Boon,*
   13 F.3d 537, 543 (2d Cir. 1994)..............................................................................2

*Morris v. New York State Dep't of Taxation and Finance*,
   82 N.Y.2d 135, 140-41, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993) ........................12

*Murin v. Estate of Schwalen*,
   31 A.D.3d 1031, 1034-35, 819 N.Y.S.2d 341, 345 (3d Dep't 2006) ............................9

*Pen Pak Corp. v. LaSalle National Bank of Chicago*,
   240 A.D.2d 384, 386, 658 N.Y.S.2d 407 (2d Dep't 1997).........................................8

*Peters Griffin Woodward, Inc. v. WCSC, Inc.*,
   88 A.D.2d 883 (1st Dep't 1982)..............................................................................10

*Polk v. Gittens*,
   171 A.D.2d 470, 471 (1st Dep't 1991) ....................................................................10

*Rotella v. Derner*,
   283 A.D.2d 1026, 1027, 723 N.Y.S.2d 801 (4th Dep't 2001) ....................................12

*Schacht v. Brown*,
   711 F.2d 1343, 1350 (7th Cir.), *cert denied,* 464 U.S. 1002 (1983) ............................7

*Schmitt v. Morgan*,
   98 A.D.2d 934, 471 N.Y.S.2d 365 (3d Dep't 1983).................................................9

*Scholtz v. Yastrzemski*,
   247 A.D. 823, 823-34 (2d Dep't 1936) ....................................................................7

*Sec. Inv. Protection Corp. v. Stratton Oakmont, Inc.*,
  234 B.R. 293, 329 (Bankr. S.D.N.Y. 1999) ................................................................ 2

*Sheehy v. New Century Mortg. Corp.*,
  690 F. Supp. 2d 51, 62 (E.D.N.Y. 2010) ................................................................... 1

*Trustees of Hamilton Coll. V. Cunningham*,
  70 A.D. 2d 1048, 1049 (4th Dep't 1979) ................................................................... 7

*U.S. v. Certain Real Prop. and Premises Kown as 4003-4005 5th Ave., Brooklyn, N.Y.*,
  55 F.3d 78, 83 (2d Cir. 1995) .................................................................................. 15

*Wall St. Assoc. v Brodsky*,
  257 A.D.2d 526, 529 (1st Dep't 1999) ...................................................................... 8

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*,
  933 F.2d 131, 139 (2d Cir. 1991) ............................................................................ 12

## Statutes

*N.Y. Debtor and Creditor Law § 273* ............................................................................ 9

*N.Y. Debtor and Creditor law § 276* ............................................................................ 7

## Other Authorities

*Wright, Federal Practice § 2018 at 288* ..................................................................... 15

## Rules

*10 Fed. Prac. & Proc. Civ.3d § 2656* ......................................................................... 16

*Fed.R.Civ.P. 54(b)* ..................................................................................................... 16

## PRELIMINARY STATEMENT

Olympia seeks summary judgment on its claims for Breach of Fiduciary Duty, Violation of New York Debtor and Creditor Law § 276, Violation of New York Debtor and Creditor Law §273, Conversion, and Liability for the Acts of Olympia Resulting from Piercing of the Corporate Veil against Abe Donner. As set forth below:

- Donner drew a salary for himself and for his family members while performing no work for Olympia.

- Donner used Olympia's funds to pay off his personal debts and to finance his personal investments.

- Donner helped originate fraudulent loans and passed fraudulent checks in a "check kiting" scheme meant to hide Olympia's insolvency and plunge Olympia further into debt.

- Donner dominated Olympia and used this domination of Olympia to obtain personal benefits from it.

These and other acts of Donner that are not subject to dispute give rise to the claims on which Olympia now seeks summary judgment.

## ARGUMENT

### I.      OLYMPIA IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF FIDUCIARY DUTY CLAIM.

In New York, the elements of a breach of fiduciary duty claim are that "(1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach." *Sheehy v. New Century Mortg. Corp.*, 690 F. Supp. 2d 51, 62 (E.D.N.Y. 2010).

New York provides for substantial judicial leeway in awarding damages resulting from a director's breach of fiduciary duty. *Herman v. Feinsmith*, 39 A.D.3d 327, 328 (1st Dep't 2007). "[B]reaches of a fiduciary relationship in any context comprise a special breed of cases that often loosen normally stringent requirements of causation and damages." *Milbank, Tweed, Hadley*

1

& *McCloy v. Boon,* 13 F.3d 537, 543 (2d Cir. 1994). A director "is liable for all damages flowing from his breach of fiduciary duty as a director." *Ault v. Soutter*, 204 A.D.2d 131, 131 (1st Dep't 1994).

Donner was Olympia's President. SUF at ¶ 1. As such, he owed a fiduciary duty to Olympia. *Sec. Inv. Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 329 (Bankr. S.D.N.Y. 1999) ("Under New York law, officers and directors owe a fiduciary duty to the corporation which they serve.") (internal citations omitted). As a fiduciary of Olympia, Donner had a duty to protect the interests of Olympia. The obligation of fiduciary duty is one "barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty." *Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 466 (1989). Officers are not "permitted to profit personally at the expense of the corporation." *Howard v. Carr*, 222 A.D.2d 843, 845 (3d Dep't 1995).

As set forth below, Donner repeatedly breached his fiduciary duties to Olympia.

**A.       Donner Improperly Diverted Corporate Assets to Himself and His Family.**

Donner breached his fiduciary duty to Olympia by diverting Olympia's corporate funds to enrich himself and his family. Donner, along with Olympia's other principals, treated Olympia not as a corporate entity separate from themselves, but instead as their own "piggy bank." Donner used his position of trust to divert Olympia's corporate assets to himself, to his relatives, to Olympia's other shareholders, and to their relatives.

**1.       Donner Used Olympia Funds to Pay Off a Personal
           Settlement with the Small Business Administration.**

Donner was a founder of a company known as Avdon. In or around 2000, Avdon became the target of an investigation conducted by the Small Business Administration ("SBA"). SUF at ¶ 2.  The investigation ended when the SBA agreed to settle with Donner for $200,000. *Id.*

Instead of paying the SBA settlement with his own money, Donner caused $100,000 to be paid from Olympia to the SBA. SUF at ¶ 3. Olympia was in no way involved in the formation or operations of Avdon (SUF at ¶ 2) and was in no way liable for any portion of Donner's settlement with the SBA. Donner therefore abused his fiduciary position at Olympia by diverting Olympia's assets to pay off a personal debt. This was a breach of Olympia's fiduciary duty to Olympia that resulted in damages in the amount of $100,000.

**2.      Donner Improperly Diverted $350,000
to an Investment in Barring Shields.**

In or around March 2002, Donner took $350,000 from Olympia to invest in a Florida day trading corporation named Barring Shields. SUF at ¶ 4. Olympia did not own Barring Shields. *Id.* Accordingly, the investment in Barring Shields was a diversion of Olympia's money for Donner's own personal use. This constituted a breach of Donner's fiduciary duties for which he is liable in the amount of $350,000.

**3.      Donner Improperly Diverted Funds to His Family Members.**

From 1998 through 2004, Donner transferred $498,575.16 to his relatives by putting them on the payroll. SUF at ¶ 5. Donner's relatives did no work for Olympia. SUF at ¶ 5. Donner claims that this money was compensation for his own work. SUF at ¶ 6. As demonstrated in Olympia's papers in support of summary judgment against Donner's relatives, since the work peformed by Donner cannot justify even his own salary, it certainly cannot justify the salaries of Donner's relatives.. *Id.* Accordingly, Donner breached his fiduciary duties by transferring $498,575.16 to his relatives. Donner is liable for repayment of these funds.

3

**4.     Donner Improperly Diverted Olympia Funds to Pay Himself Salary and Other Benefits to Which he Was Not Entitled.**

Donner drew a salary from Olympia that varied from around $100,000 per year to over $140,000 per year. *See SUF* at 7.  Between 1998 and 2004, these payments totaled $840,418.43.  *Id.*

Donner is liable for repayment of these amounts on two separate grounds. First, Donner did virtually no work for Olympia. SUF at ¶ 6. Moreover, what involvement Donner did have in Olympia was focused on arranging for fraudulent loans between Midwood and Olympia and engaging in a check kiting scheme. *See infra* at 6-7. These acts by Donner in breach of his fiduciary duties should not be considered legally cognizable "work." Accordingly, Donner breached his fiduciary duties to Olympia by causing Olympia to pay him a substantial salary for doing no legally cognizable work.

Second, Donner breached his duties in numerous other respects as set forth herein. "Under New York law, the so-called faithless servant doctrine requires disgorgement of all compensation received after the date the disloyalty began." *In re Food Mgt. Group, LLC,* 380 BR 677, 713 (Bankr. S.D.N.Y. 2008). "One who owes a duty of fidelity … and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary." *Feiger v. Iral Jewelry, Ltd.,* 41 N.Y.2d 928, 928, 394 N.Y.S.2d 626, 363 N.E.2d 350 (1977). Accordingly, under the faithless servant doctrine, Donner forfeited all right to compensation by breaching his fiduciary duties to Olympia. This disloyalty began no later than 1998 as payroll records show Donner and his relatives have been drawing salaries since this time (*supra* at 4-5) and since the check kiting scheme started by at least 1998 (*infra* at 7). Donner has received $840,418.43 in total compensation since then (*supra* at 4). Accordingly, Donner is liable for repayment of this amount.

4

**5.     Donner Used Olympia Funds To Pay For His Personal Mortgage.**

Donner took out a mortgage in the amount of $128,000 for his personal property through Olympia. SUF at ¶ 8. Instead of using his personal funds to pay off this mortgage, Donner made payments using Olympia's money. *Id.* Donner breached his fiduciary by diverting these assets to pay his personal mortgage. Accordingly, Donner is liable for repayment of these transfers, which totaled $128,576.85. *Id.*

**B.     Donner Covered Up Olympia's Insolvency and Lack of Liquidity.**

By the beginning of 1998 it was clear that Olympia was insolvent and also had a profound liquidity problem. At this point, Olympia's executives, including Donner, took improper actions to hide Olympia's insolvency and lack of liquidity. This scheme involved check-kiting, improperly borrowing funds, and misleading State and Federal Regulators. All of this was done to keep Olympia going as a cash cow for Donner and his relatives while Olympia fell ever more deeply into debt.

**1.     Donner Covered Up Olympia's Improper Loans from Midwood.**

Donner's principal tool in covering up Olympia's insolvency and liquidity crisis was Midwood Federal Credit Union ("Midwood"), a credit union run by Donner. SUF at ¶ 10 Donner caused Olympia to fraudulently borrow millions of dollars from Midwood. SUF at ¶ 11. Federal regulations barred Midwood from loaning this amount of money to a single company, and Donner knew this. SUF at ¶ 12 Therefore, Donner misrepresented Midwood's relationship with Olympia and reported that it was making these loans not to Olympia, but to Olympia's shareholders or their relatives. *Id.* In fact, the money went directly to Olympia and Olympia paid the principal and interest on the loans. SUF at ¶ 13.

Donner knew about these loans. Donner had a heavy hand in its day-to-day operations because Midwood was a very small operation. SUF at ¶ 14. He spoke to everyone who

wanted a loan through Midwood and was present at all closings. *Id*. Donner also approved each

mortgage interest form (1098) that was sent out. *Id*. Donner spent most of his professional time

working at Midwood. SUF at ¶ 10. Donner was heavily involved in Midwood's day to day

operations, personally overseeing every loan. See *supra*. Donner personally approved all 1098s

sent by Midwood. SUF at ¶ 14. Donner also personally signed the loan documents. SUF at ¶ 15.

Indeed, Donner kept lists of the various fictitious loans and the interest payments made on them by

Olympia in his office. *Id*.

      Donner failed to disclose to regulators or to entities with which it was doing

business that these loans were fraudulent. SUF at ¶ 12. Furthermore, the interest that was charged

to Olympia was substantially higher than the market rate, thus causing Olympia to pay inflated

interests to Midwood. SUF at ¶ 11.

### 2. Donner Covered Up Olympia's Liquidity Problems by Engaging in a Check Kiting Scheme.

      Donner further breached his duties to Olympia by carrying out a check kiting

scheme. Donner was aware of Olympia's illiquidity. In order to cover up this liquidity problem,

Donner engaged in a check kiting scheme to keep Olympia afloat. SUF at ¶ 16. This scheme

allowed Olympia to stay in business while falling further and further into debt. *Id.*

### 3. Donner's Liability for Olympia's Deepening Insolvency.

      "'Deepening insolvency' refers to the 'fraudulent prolongation of a corporation's

life beyond insolvency,' resulting in damage to the corporation caused by increased debt." *Schacht*

*v. Brown,* 711 F.2d 1343, 1350 (7th Cir.), *cert denied,* 464 U.S. 1002 (1983); *In re Global Serv.*

*Group, LLC*, 316 B.R. 451, 456 (Bankr. S.D.N.Y. 2004). In New York, deepening insolvency is a

theory of damages that may result from the commission of a separate tort. *In re Global Serv.*

*Group, LLC* at 458. "[O]ne seeking to recover for 'deepening insolvency' must show that the

defendant prolonged the company's life in breach of a separate duty, or committed an actionable tort that contributed to the continued operation of a corporation and its increased debt." *Id.*

  Since at least 1997, Donner routinely authorized checks issued from Midwood to pay for Olympia's debts in order to hide Olympia's insolvency. SUF at ¶ 17. Donner's actions in arranging for improper loans from Midwood and in check kiting enabled Olympia to remain in business while it fell deeper and deeper into insolvency. SUF at ¶ 16. Therefore, Donner should be held personally liable for all of Olympia's liabilities, including Olympia's $44.8 million liability to Fannie Mae. SUF at ¶ 18.

## II. OLYMPIA IS ENTITLED TO SUMMARY JUDGMENT ON ITS NEW YORK DEBTOR AND CREDITOR LAW § 276 CLAIM.

  New York Debtor and Creditor law § 276 states that "every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." *N.Y. Debtor and Creditor law § 276*. A showing of actual intent is sufficient to prevail on a § 276 claim. *Scholtz v. Yastrzemski*, 247 A.D. 823, 823-34 (2d Dep't 1936). Though the determination of actual intent is "ordinarily a question of fact which cannot be resolved on a motion for summary judgment," *Grumman Aerospace Corp. v Rice*, 199 A.D.2d 365, 366-67 (2d Dep't 1993), the Court has granted summary judgment to Plaintiffs in cases where "there is no question of fact preventing summary judgment on the pleadings," *Trustees of Hamilton Coll. V. Cunningham*, 70 A.D. 2d 1048, 1049 (4th Dep't 1979).

  The standard for proving actual intent for the purposes of a § 276 claim is "clear and convincing evidence." *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 126 (2d Dep't 1986). "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly

associated with fraudulent transfers 'that their presence gives rise to an inference of intent.'" *Pen*

*Pak Corp. v. LaSalle National Bank of Chicago,* 240 A.D.2d 384, 386, 658 N.Y.S.2d 407 (2d

Dep't 1997). Among such circumstances are: a close relationship between the parties to the alleged

fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of

the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and

retention of control of the property by the transferor after the conveyance." *Wall St. Assoc. v*

*Brodsky*, 257 A.D.2d 526, 529 (1st Dep't 1999); *see also In re Saba Enterprises, Inc.,* 421 B.R.

626, 642 (Bankr. S.D.N.Y. 2009) ("Actual fraudulent intent . . . may be inferred from the

circumstances surrounding the transaction, including the relationship among the parties and the

secrecy, haste or unusualness of the transaction."); *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 639

(2d Cir. 1995)).

The Court should set aside as fraudulent conveyances all of the transfers made to or

for the benefit of Donner set forth in Section I (A) above: (1) the transfer of $100,000 to pay off

the SBA; (2) the $350,000 investment in Barring Shields; (3) the salary and benefits paid to

Donner totaling $840,418.43; and (4) the $128,576.85 diverted from Olympia to pay Donner's

mortgage.

There are badges of fraud associated with the foregoing transfers that clearly

establish intent to defraud. First, there was obviously a close relationship between Olympia and

Donner, the beneficiary of these transfers, since Donner was a major shareholder of Olympia.

Second, most of these transfers were not in the ordinary course of business. The transfer to the

SBA, to Barring Shields, and to pay Donner's loan clearly had nothing to do with Olympia's

ordinary business of originating mortgage loans. Third, there was inadequate consideration since

Donner did no legally cognizable work for Olympia. See *supra* at 4. Fourth, Donner knew of

Olympia's precarious financial condition. In his position at Midwood, Donner was deeply involved

in providing fraudulent loans from Midwood to Olympia and the check kiting scheme. See *supra* at

5-7. The entire purpose of these schemes was to cover up Olympia's insolvency and lack of

liquidity. Therefore, Donner must have known of Olympia's insolvency and lack of liquidity.

The foregoing facts clearly establish that Donner made these transfers with the

intent to defraud creditors. Accordingly, the Court should enter judgment setting aside the

foregoing transfers.

### III.   OLYMPIA IS ENTITLED TO SUMMARY JUDGMENT ON ITS NEW YORK DEBTOR AND CREDITOR LAW § 273 CLAIM.

New York Debtor & Creditor Law § 273 states that "[e]very conveyance made, and

every obligation incurred, by a person who is or will be thereby rendered insolvent is fraudulent as

to creditors without regard to his actual intent if the conveyance is made or the obligation is

incurred without a fair consideration." *N.Y. Debtor and Creditor Law § 273*. "'Fair consideration'

is given for property when, as a fair equivalent therefor and in good faith, property is conveyed or

an antecedent debt is satisfied, or when the property is received in good faith to secure a present

advance or antecedent debt in an amount not disproportionately small as compared with the value

of the property (Debtor and Creditor Law, § 272)." *Schmitt v. Morgan*, 98 A.D.2d 934, 935 (3d

Dep't 1983). The Court frequently grants summary judgment on § 273 claims when it can be

shown that the transferor was insolvent at the time of the transfer and that the transfer was

conveyed without fair consideration. *See, e.g., Murin v. Estate of Schwalen*, 31 A.D.3d 1031, 1034-

35, 819 N.Y.S.2d 341, 345 (3d Dep't 2006); *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122,

125, 508 N.Y.S.2d 17, 20 (2d Dep't 1996); *Schmitt v. Morgan*, 98 A.D.2d 934, 936, 471 N.Y.S.2d

365, 367 (3d Dep't 1983).

The Court should set aside as fraudulent conveyances all of the transfers made to or

for the benefit of Donner set forth above in Section I (A) above: (1) the transfer of $100,000 to pay

off the SBA; (2) the $350,000 investment in Barring Shields; (3) the salary and benefits paid to Donner totaling $840,418.43; and (4) the $128,576.85 diverted from Olympia to pay Donner's mortgage.

First, Olympia has been insolvent since the beginning of 1998, and perhaps much earlier. SUF at ¶ 9. Second, Donner did virtually no work for Olympia and any ostensible "work" that Donner did perform was in fact not legally cognizable as such because it involved making fraudulent loans and check kiting that was in breach of Donner's fiduciary duties. See *supra* at 4-7. Accordingly, the Court should set aside the foregoing conveyances.

## IV.   OLYMPIA IS ENTITLED TO SUMMARY JUDGMENT ON ITS CONVERSION CLAIM.

"Conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Employers' Fire Ins. Co. v. Cotten*, 245 N.Y. 102, 105 (1927). "Money, if specifically identifiable, may be the subject of a conversion action." *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883 (1st Dep't 1982). To establish a conversion claim, the plaintiff must show "legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Independence Discount Corp. v. Bressner,* 47 A.D.2d 756, 757 (2d Dep't 1975). Donner, as a principal of Olympia, abused his power and exercised unlawful dominion over Olympia's funds and corporate property, thereby interfering with Olympia's right of ownership. Summary judgment is appropriate on a conversion claim when defendants fail to raise triable issues of material fact relating to the conversion of funds. *Polk v. Gittens*, 171 A.D.2d 470, 471 (1st Dep't 1991).

The Court should hold Donner liable for conversion of all of the payments made to or for the benefit of Donner as set forth above in Section I (A) above: (1) the transfer of $100,000 to pay off the SBA; (2) the $350,000 investment in Barring Shields; (3) the salary and benefits paid to Donner totaling $840,418.43; and (4) the $128,576.85 diverted from Olympia to pay Donner's mortgage.

Donner abused his title of President of Olympia by treating Olympia's funds as his own. He used Olympia's funds not only to pay off his personal commitments, but to pay salaries to his family members as well. In so doing, Donner exercised ownership rights over funds that belonged to Olympia, not him.

## V.  OLYMPIA IS ENTITLED TO SUMMARY JUDGMENT ON ITS ALTER EGO CLAIM.

Under New York law, "where the owners, through their domination [of the corporation] abuse[ ] the privilege of doing business in the corporate form to perpetrate a wrong or injustice against [a] party ... a court in equity will intervene." *Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp*., 724 F. Supp. 2d 308, 318 (E.D.N.Y. 2010) (internal citations omitted). To pierce the corporate veil, it must be established that "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Federal Nat. Mortg. Ass'n* at 238 (citing *Capital Distribution Servs., Ltd. v. Ducor Express Airlines, Inc*., 2007 WL 1288046, at *2 (E.D.N.Y. May 1, 2007)). The determination of whether owners exercised complete domination is made by looking at the following factors:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.,* issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of

business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by the corporation, and (10) whether the corporation in question had property that was used by the corporation as if it were its own.

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 139 (2d Cir. 1991).

This Court has already granted summary judgment piercing the corporate veil against Sam Pinter, who, like Donner, was a principal and officer of Olympia. Though the individual abuses of the corporate form differ between Pinter and Donner, their overarching domination over Olympia is the same. "Domination is established not by such a bright-line test, but by examination of the way a corporation functions-whether 'the owners use the corporation as a mere device to further their personal rather than the corporate business.'" *Federal Nat. Mortg. Ass'n* at 319 (citing *Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135, 140-41, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993)). Donner, like Pinter, took funds from the corporation for personal use and used the corporation to "support a remarkable number of relatives who did little or no work for the corporation." *Id.* at 319.

The second prong to piercing the corporate veil requires plaintiff to show that defendant's domination was "used to commit 'a fraud or wrong' against plaintiff....'A plaintiff is not required to plead or prove actual fraud in order to pierce the corporate defendant's corporate veil,' but merely 'a wrongful or unjust act.' *Rotella v. Derner,* 283 A.D.2d 1026, 1027, 723 N.Y.S.2d 801 (4th Dep't 2001)." *Fed. Nat. Mortg. Ass'n* at 319. Donner clearly committed a wrongful and unjust act against Olympia. Donner, like Pinter, "raided the assets of the company for his own purposes," *Fed. Nat. Mortg. Ass'n* at 320, without regard for whether such activity would impair Olympia's ability to meet the contractual obligations it had to its creditors and other parties.

12

Had Donner not diverted Olympia's funds for his own purposes, Olympia could have used those funds to fulfill its obligations to its various creditors, including its $44.8 million consent judgment to Fannie Mae. Due to the extent of Donner's domination over Olympia, it is appropriate to pierce the corporate veil and render Donner liable for the entirety of Olympia's $44.8 million consent judgment, *see Fed. Nat. Mortg. Ass'n* at 321, and any and all other liabilities Olympia has incurred or will incur.

**A.      Donner Completely Dominated Olympia.**

Donner meets the requirements for complete domination set by the *Passalacqua* factors. As a corporation, the Court has already found as follows:

> Few, if any, corporate formalities appear to have been observed at Olympia. There were no formal meetings of the shareholders, even to appoint directors, and no books of minutes of shareholders' meetings were ever kept…. There were few or no formal meetings of the board of directors, nor were any minutes taken at any such meeting….  No complete and correct corporate books were ever kept.

*Fed. Nat. Mortg. Ass'n* at 311. Indeed Donner's own role at Olympia underlines this lack of formality. Donner's title was President of Olympia (*supra* at 2), yet he did virtually no work for Olympia (*supra* at 4).

Second, Olympia was undercapitalized from its inception. In order to meet New York State Banking Department requirements for original funding, Olympia claimed that Sam Pinter invested $250,000 in Olympia. However, this investment was not in fact equity for Olympia. Instead, it was a loan to Olympia upon which Olympia was made to pay 12.5% interest. SUF at ¶ 19. Olympia did indeed make these interests payments to Sam Pinter. SUF at ¶ 20. Sam Pinter's deposition testimony supports Olympia's undercapitalization. Sam Pinter claimed to be the person responsible for Olympia's funding , but he declined to put any capital into Olympia as equity. SUF at ¶ 21 . The other principals similarly refused. *Id*. Furthermore, there is no support for the $1.5

million of shareholders' equity as documented on Olympia's most recent audited financial statements before it was shut down. SUF at ¶ 22.

Third, Donner drew money from Olympia, both for himself and for his family, for personal purposes. Donner drew salaries for himself and his family when none of them provided any services to Olympia (*supra* at 3-5), and Donner took money from Olympia to pay for his personal expenses (*supra* at 3). Donner, along with the other principals, also used Olympia funds to pay for their personal life insurance policies. SUF at ¶ 23. These policies were surrendered shortly before Olympia went into receivership. Though the cash surrender checks were made payable to Olympia, the funds never made it to any Olympia account. SUF at ¶ 27.

Donner further disregarded the corporate form by taking money from Olympia in order to benefit other entities in which he and the other principals of Olympia had an ownership stake. 1716 Realty LLC ("1716 LLC") and 1716 Realty Corporation ("1716 Corporation") were related entities in which Donner had a 22% ownership stake, along with Barry Goldstein, Fagie Pinter (Sam Pinter's wife who was also an owner of Olympia), and Shaindy Pinter. SUF at ¶ 24. The costs associated with forming 1716 Corporation were borne by Olympia, and Olympia paid all expenses for 1716 Corporation throughout 1998 and 1999. SUF at ¶ 25. This Court has already found 1716 Corporation and 1716 LLC to be alter egos of Olympia. *Balmer v. 1716 Realty LLC,* No. 05 CV 839 (NG)(MDG), 2008 WL 2047888 (E.D.N.Y. May 9, 2008). Donner was also involved in a scheme where Olympia made payments totaling over $2,044,876 to Kahal Shomrei Hadath ("KSH"), a not-for-profit organization founded by Sam Pinter that was in no way affiliated with Olympia and that in no way provided services to Olympia.SUF at ¶ 26. Donner signed checks from Olympia to KSH. See SUF at ¶ 26. This is just one of many instances in which Donner treated Olympia's coffers as his own, distributing Olympia's funds as he saw fit without regard for Olympia's corporate well-being.

**B.      Donner's Domination Was Used To Commit A Wrong That Injured Olympia.**

Donner's domination of Olympia was used to enrich himself and his family and to bolster other entities in which he had an ownership stake at Olympia's expense. Donner's misdeeds caused Olympia not only to become insolvent, but to plunge deeper into insolvency. Olympia surrendered its license from the New York State Department of Banking on or about November 4, 2004, and entered into a Court-appointed Receivership on November 23, 2004. SUF at ¶ 18. Olympia, having had its funds pillaged by Donner and the other principals, has been left unable to pay its creditors. On August 27, 2007, Olympia entered into a $44.8 million consent judgment with Fannie Mae. The corporate veil should be pierced with respect to Donner, and Donner should be held liable for any and all of Olympia's debts.

**VI.    THE COURT SHOULD CONSIDER DONNER'S INVOCATION OF HIS FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION.**

When Donner was deposed in this matter on July 6, 2006, he was asked numerous questions relevant to the claims at issue in the instant motion. Donner invoked his Fifth Amendment right against self-incrimination throughout the entirety of the deposition. S*ee, e.g., A. Donner 6/16/06 Dep.* at: 19:11-16 (questions on Olympia's insolvency), 21:7-19 (questions on Olympia's capitalization through Donner), 24:24-25:7 (questions on Donner's position at Midwood), 27:3-9 (questions on Donner's role at Midwood), 29:11-30:23 (questions on Olympia's presence at Midwood), 31:8-32:20 (questions on check kiting scheme), 33:7-36:21 (questions on Olympia's fraudulent loans through Midwood), 37:4-9 (questions on cash flow between Olympia and Midwood), 44:11-46:20 (questions on Olympia's fraudulent loans through Midwood), 47:6-8 (questions on Donner's life insurance policy through Olympia), 48:15-53:4 (questions on Donner's relatives being paid by Olympia), 54:17-56:15 (questions on Olympia paying for personal mortgages for Donner and his family), 63:13-65:20 (questions on Olympia's funding of 1716),

67:17-68:12 (questions on Olympia's funding of Barring Shields), 69:5-22 (questions on Donner's income). SUF at ¶ 27.

   While Donner undoubtedly has a right to invoke his right against self-incrimination in civil proceedings, *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973), he must still provide evidence disproving the claims against him, *U.S. v. Certain Real Prop. and Premises Kown as 4003-4005 5th Ave., Brooklyn, N.Y.,* 55 F.3d 78, 83 (2d Cir. 1995). The Court may grant summary judgment against a defendant if the Court finds the defendant has not provided sufficient evidence to counter the claims pending against him. *Id.* (citing *Wright, Federal Practice* § 2018 at 288). Furthermore, it is well-settled that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them…" *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976); *accord Fidelity Funding of Calif., Inc., v. Reinhold,* 79 F.Supp.2d 100, 116 (E.D.N.Y. 1997). Accordingly, the Court should consider Donner's refusal to answer these questions as it makes its factual determinations in this case.

**VII. FINAL JUDGMENT SHOULD BE ENTERED IMMEDIATELY ON THE FOREGOING CLAIMS.**

   Fed R. Civ. P. 54(b) allows the Court "to enter a final judgment as to less than all the claims or parties to an action, if it decides that the ends of justice so require." *10 Fed. Prac. & Proc. Civ.3d § 2656.* The Court may do so when "there is no just reason for delay," *Fed.R.Civ.P. 54(b,)* or when it is "[i]n the interests of sound judicial administration," *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 270, 272 (S.D.N.Y. 1995).

   Entry of partial final judgment is appropriate when "preservation of the assets of [an] estate are best served" by entry of judgment. *In re Manhattan Inv. Fund, Ltd.*, 2007 WL 534547 at *2 (Bankr. S.D.N.Y. 2007). Based on the conduct in which Donner has engaged giving rise to the instant claims, Olympia's Receiver has reasonable grounds for believing that Donner

will fraudulently transfer assets in his possession, thereby making it more difficult to enforce a judgment against Donner. Accordingly, the Court should enter judgment immediately on the claims upon which the Court grants summary judgment. At such time as the Court rules on the instant motion, Olympia requests the opportunity to submit proposed dates from which pre-judgment interest should be calculated.

## **CONCLUSION**

For the reasons stated above, Olympia Mortgage Corporation respectfully requests that the Court:

(i)     grant summary judgment in Olympia's favor on its claims against Abe Donner for Breach of Fiduciary Duty  and find Donner liable for any and all debts of Olympia or, in the alternative, for the sum of $1,917,570.44, plus interest;

(ii)    grant summary judgment in Olympia's favor on its claims against Abe Donner under New York Debtor and Creditor Law § 276 in the amount of $1,418,995.28, plus interest;

(iii)   grant summary judgment in Olympia's favor on its claims against Abe Donner under New York Debtor and Creditor Law § 273 in the amount of $1,418,995.28, plus interest;

(iv)    grant summary judgment in Olympia's favor on its claims against Abe Donner for Conversion in the amount of $1,418,995.28, plus interest; and

(v)     grant summary judgment in Olympia's favor on its claims against Abe Donner for Liability for the Acts of Olympia Resulting from the Piercing of the Corporate Veil and find  Donner liable for any and all debts of Olympia.

Olympia further requests that the Court enter partial final judgment immediately on Olympia's claims against Donner after providing Olympia with an opportunity to submit dates from which pre-judgment interest should be calculated.

Dated: New York, New York
      April 5, 2011

                                 LAW OFFICES OF ERIC J. GRANNIS

                                 By: _____

                                 Eric J. Grannis       (EJG 8403)
                                 620 Fifth Avenue
                                 New York, NY 10020
                                 212-903-1025

                                 Attorneys for Olympia Mortgage
                                 Corporation