UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

                 Plaintiff,

    - against -

OLYMPIA MORTGAGE CORPORATION,
et al.,

                 Defendants.
-------------------------------------------------------x
OLYMPIA MORTGAGE CORPORATION,
et al.,

               Crossclaim Plaintiff,

    - against -

Leib Pinter, et al.,

               Crossclaim Defendants.
-------------------------------------------------------x

OPINION AND ORDER
04-CV-4971 (NG)(MDG)

GERSHON, United States District Judge:

      Federal National Mortgage Association ("Fannie Mae") initiated this action on November

16, 2004.  On October 18, 2005, Olympia Mortgage Corporation ("Olympia") filed an Amended

Answer and Crossclaims asserting four crossclaims against, among others, defendants Tova Taub,

Chaim Taub, Zvi Pinter, Malke Pinter, Moshe Pinter[1], Esther Pinter, Yossie Pinter and Hadassah

Pinter ("Leib's Children" or "defendants") for: (1) violation of N.Y. Bus. Corp. Law § 720; (2)

violation of N.Y. Debt. & Cred. Law § 276; (3) violation of N.Y. Debt. & Cred. Law § 273; and (4)

unjust enrichment.  Olympia filed a Notice of Dismissal of Claims, which this court "so ordered"

on March 5, 2008, dismissing the N.Y. Bus. Corp. Law § 720 and unjust enrichment claims against

---

[1] There are two defendants named Moshe Pinter in this case.  Moshe M. Pinter is Samuel Pinter's son.  The other Moshe Pinter, Leib Pinter's son, is one of the defendants in the instant motion.

-2-

Leib's Children with prejudice.

Olympia has been put into receivership by this court and has entered into a consent judgment with Fannie Mae concerning its breach of contract claims.  On May 11, 2011, by Stipulation and Order, the remaining six claims against Olympia were dismissed without prejudice.

Leib's Children seek summary judgment against Olympia pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing Olympia's crossclaims of constructive and actual fraud under New York Debtor and Creditor Law §§ 273 and 276.  In addition, Chaim Taub, Zvi Pinter, Malke Pinter and Moshe Pinter seek summary judgment on their counterclaims against Olympia for repayment of loans they allegedly made to Olympia.

## I.  FACTS

The following facts are undisputed unless otherwise noted.  The background of this case has been set forth in recent opinions, *see, e.g., Federal Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, 724 F.Supp.2d 308 (E.D.N.Y. 2010)(piercing Olympia's corporate veil as to Samuel Pinter), and *Federal Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, 2010 WL 3085174 (E.D.N.Y. Aug. 6, 2010)(granting Olympia summary judgment against Leib Pinter on its claim of fraud).  Facts relevant to the instant motions are set forth below.

Olympia was insolvent at least from December 31, 1997, and possibly for its entire existence. Karen Kincaid Balmer Decl. Ex. 40, May 23, 2008 ("May Balmer Decl.").

Leib Pinter was an executive at Olympia.  He is defendant Samuel Pinter's brother.  Leib worked at Olympia from its early days.  Leib Pinter held various titles there, including executive vice-president; effectively, he served as Samuel Pinter's representative and was responsible for the day-to-day running of the company.  Although he was not initially a principal of Olympia because

-3-

of his criminal record, having previously pled guilty to charges of bribing a Congressman, Leib later acquired an ownership interest in Olympia.  Leib pled guilty to wire fraud related to his actions at Olympia.   On Fannie Mae's motion for summary judgment, the court awarded Fannie Mae $43,918,500 in damages against Leib on its claim of fraud.  *See Federal Nat. Mortg. Ass'n*, 2010 WL 3085174.

Defendants are comprised of four couples: Chaim and Tova; Malke and Zvi; Esther and Moshe; and Hadassah and Yossie.  Zvi, Moshe and Yossie are Leib's sons; Tova is Leib's daughter; Malke, Esther and Hadassah are Leib's daughters-in-law; and Chaim is Leib's son-in-law.

## A.  Olympia's Claims

## 1. The Transfers

It is undisputed that Olympia transferred sums of money to, and on behalf of, Leib's Children from 1995 through 2004. These transfers from Olympia took the form of salary payments, interest on loans, healthcare insurance, car payments, mortgage payments, and as to one defendant, Chaim, repayment of a loan to Midwood Federal Credit Union.

Leib's Children directly received or benefitted from the following money transfers made by Olympia:

(1) Tova directly received or benefitted from a total of $259,196.41 in transfers in the following years: $20,885.64 in 1995; $36,086.38 in 1996; $33,940.28 in 1997; $41,842.14 in 1998; $39,870.00 in 1999; $13,029.28 in 2000; $13,571.84 in 2001; $14,521.56 in 2002; $31,008.31 in 2003; and $14,440.97 in 2004.

(2) Chaim directly received or benefitted from a total of $299,113.54 in transfers in the following years: $2,486.83 in 1999; $50,721.14 in 2000; $52,897.80 in 2001; $67,630.31 in 2002;

-4-

$64,807.58 in 2003; and $60,569.88 in 2004.

(3) Zvi directly received or benefitted from a total of $276,748.19 in transfers in the following years: $16,665.24 in 1995; $22,521.48 in 1996; $18,362.96 in 1997; $20,057.53 in 1998; $23,900.76 in 1999;    $25,137.57 in 2000; $26,079.63 in 2001; $35,265.36 in 2002; $56,752.42 in 2003; and $27,015.24 in 2004.

(4) Malke directly received or benefitted from a total of $298,800.00 in transfers in the following years: $13,550.00 in 1995; $30,000.00 in 1996; $32,500.00 in 1997; $33,750.00 in 1998; $32,500.00 in 1999; $32,500.00 in 2000; $32,500.00 in 2001; $32,500.00 in 2002; $34,000.00 in 2003; and $25,000.00 in 2004.

(5) Moshe directly received or benefitted from a total of $298,552.32 in transfers in the following years: $17,345.00 in 1995; $14,240 in 1996; $28,140.00 in 1997; $29,707.62 in 1998; $37,127.90 in 1999; $33,758.41 in 2000; $33,292.76 in 2001; $26,806.44 in 2002; $46,806.44 in 2003; and $31,327.75 in 2004.

(6) Esther directly received or benefitted from a total of $335,205.95 in transfers in the following years: $22,329.14 in 1995; $37,950.48 in 1996; $25,654.28 in 1997; $36,502.49 in 1998; $35,925.07 in 1999; $35,161.26 in 2000; $35,703.82 in 2001; $36,653.54 in 2002; $38,140.30 in 2003; and $31,185.57 in 2004.

(7) Yossie directly received or benefitted from a total of $143,232.06 in transfers in the following years: $9,625.84 in 1996; $13,200 in 1997; $13,965.84 in 1998; $18,125.84 in 1999; $13,965.84 in 2000; $13,965.84 in 2001; $13,965.84 in 2002; $35,988.09 in 2003; and $10,428.93 in 2004.

(8) Hadassah directly received or benefitted from a total of $168,894.88 in transfers in the

-5-

following years: $5,371.48 in 1996; $13,782.15 in 1997; $20,149.39 in 1998; $22,085.89 in 1999; $21,244.99 in 2000; $22,283.46 in 2001; $23,233.20 in 2002; $23,020.15 in 2003; and $17,724.17 in 2004.

**2.  Defendants' Roles at Olympia**

**a.  Esther and Moshe Pinter**

Esther was the sales manager at Olympia's New Jersey office.  Decl. Esther Pinter ¶ 2, May 2, 2008.   She was a full-time Olympia employee.  Olympia questions whether Esther was, in fact, a full-time employee but offers no evidence in support of its position.  Minutes from the 1990 Annual Meeting of the Board of Directors of Olympia show that at that time Esther Pinter held the office of Assistant Secretary.  Decl. Karen Kincaid Balmer ¶ 38, Ex. Q, Aug. 29, 2008 ("Balmer Decl.").  She received her compensation in the form of salary, family health insurance coverage and monthly mortgage payments on her joint mortgage with her husband, Moshe.  Decl. Esther Pinter ¶ 2.  She also received reimbursement for her car, which she states was necessary to her duties as sales manager.  *Id.*

Moshe does not claim to have provided any services to Olympia in exchange for the monies or benefits which he has received.  There is an issue of fact as to whether Moshe was an officer, director or shareholder of Olympia, but it is immaterial to the issues on the motions before the court.

**b.  Malke and Zvi Pinter**

Malke claims that she was employed by Olympia in the area of "quality control" and that her husband, Zvi, "[a]t times, [] assisted [her] in [her] work."  Decl. Malke Pinter ¶ 2, May 2, 2008.  Like Esther, Malke received a salary, family medical insurance coverage, car reimbursement and monthly payments on her joint mortgage with her husband.

-6-

The receiver disputes that Malke worked at Olympia and offers some evidence that Malke was not employed there.  As to Zvi, he never claims to have worked at Olympia and does not, himself, even claim to have "assisted" his wife.  In sum, there is no evidence he was employed by Olympia.

Malke was not an officer, shareholder or director of Olympia.  Decl. Zvi Pinter ¶ 2, May 2, 2008.  There is an issue of fact as to whether Zvi was an officer, director or shareholder of Olympia, but it is immaterial to the issues on the motions before the court.

## c.  Tova and Chaim Taub

Tova claims she was employed part-time at Olympia performing office and clerical work. Decl. Tova Taub ¶ 2, May 2, 2008.  Tova received a salary, family medical insurance coverage, car reimbursement and monthly payments on her mortgage which she holds jointly with her husband, Chaim.  The receiver contends that Tova never worked at Olympia and has offered some evidence in support of this position.  Chaim does not claim to have provided any services to Olympia in exchange for the monies or benefits which he has received.  Neither Tova nor Chaim were officers, shareholders or directors of Olympia.  Decl. Chaim Taub ¶ 2, May 2, 2008.

## d.  Hadassah and Yossie Pinter

Hadassah claims she was employed by Olympia and her responsibilities included preparing reports to the various states and their agencies in connection with Olympia's mortgage business. Decl. Hadassah Pinter  ¶ 2, May 2, 2008.  Hadassah received a salary, family medical insurance coverage, car reimbursement and monthly payments on her joint mortgage with her husband, Yossie. The receiver does not dispute that Hadassah worked for Olympia, but argues that there is no evidence that Hadassah performed sufficient work to justify the compensation she received.  The receiver has

-7-

not submitted any evidence in support of this position.  Yossie does not claim to have provided any

services to Olympia in exchange for the monies or benefits which he has received.  In fact, he has

submitted no factual support for his motion.

Hadassah  was not an officer, shareholder or director of Olympia.  Decl. Hadassah Pinter ¶

4, May 2, 2008.  There is an issue of fact as to whether Yossie was an officer, director or shareholder

of Olympia, but it is immaterial to the issues on the motions before the court.

**3.  Pincus Pinter's Alleged Loan to Olympia**

Based upon the declaration of their uncle, Abraham Pinter, Leib's Children claim that they

were entitled to loan repayments for an alleged $205,000 loan which their grandfather, Pincus Pinter,

made to Olympia through Tiferes Yaakov Moshe, a free loan fund, which is reflected on Olympia's

"Financial Statement Worksheet for the Year to Date Period Ending 12/31/96."  Decl. Abraham

Pinter ¶ 3, May 2, 2008.  According to Abraham Pinter, Pincus instructed that upon his death, the

loan should be paid to his grandchildren.  *Id.*, ¶ ¶ 4, 5.  Abraham Pinter states that Pincus died on

August 24, 2002, and, on January 16, 2003, per Pincus's instructions, Olympia repaid Tiferes

Yaakov Moshe's loan to his grandchildren in the following amounts:  $20,000 to Yossie, $20,000

to Moshe, $20,000 to Zvi and $15,000 to Tova.  Leib's Children do not identify Pincus Pinter's

connection to Tiferes Yaakov Moshe and offer no evidence as to why Pincus would direct that

money owed to Tiferes Yaakov Moshe should be repaid to others.

Olympia acknowledges that Tiferes Yaakov Moshe loaned money to Olympia, but disputes

both the amount of the loan and its purported connection to Pincus Pinter.  Olympia's records show

that, to the extent that Tiferes Yaakov Moshe lent money to Olympia, Olympia repaid Tiferes

Yaakov Moshe, and that the amount of money paid back exceeded the principal and interest on the

loan.  Balmer Decl. ¶ 6.  Therefore, Olympia argues, there was no outstanding loan by Tiferes Yaakov Moshe which would have justified the payments made to Leib's Children.  Olympia's position is evidenced by records showing that Tiferes Yaakov Moshe made a loan to Olympia on February 7, 1995, by wiring  $130,000 to Olympia through Midwood Credit Union.  *Id*. ¶ 7. Ex. A, B.  There is also a cash receipt on Olympia's books for $55,000 credited to Tiferes Yaakov Moshe on November 30, 1995, but no records that any money was actually transferred into Olympia.  *Id*. ¶ 8, Ex. C, D.  Monthly interest payments were made to Tiferes Yaakov Moshe by Olympia and recorded on Olympia's general ledger.  *Id*. ¶ 9, Ex. E.  On December 4, 2002, Olympia deposited $130,000 into Tiferes Yaakov Moshe's account at Olympia, thus paying back the principal.  *Id*. ¶ 10, Ex. F.  Olympia paid Tiferes Yaakov Moshe $95,000 more than the total of principal and interest payments on the $130,000 and purported $55,000 loaned to Olympia by Tiferes Yaakov Moshe.  *Id*. ¶ 11, Ex. G.  Having repaid Tiferes Yaakov Moshe in full prior to the payments to Leib's children, there was no outstanding debt to pay out as a result of any loans from this entity.  Thus, undisputed records submitted by Olympia support that none of Leib's Children were entitled to any repayment of loans from Tiferes Yaakov Moshe.

## B. Counterclaims

Chaim, Moshe, Malke and Zvi (the "Counterclaim Defendants") claim to have loaned Olympia various sums of money in the 1990's, which the receiver argues do not represent actual loans of funds of these counterclaim defendants to Olympia.

### 1. Moshe Pinter

Moshe, in his declaration, claims that he lent $39,500 to Olympia in the "mid-1990's."  Decl. Moshe Pinter ¶ 3.  Moshe does not provide any information as to the actual date on which he loaned

-9-

the money to Olympia.  Moshe states that he received interest payments on the loan until 2004, but the principal has never been repaid.  *Id.*  In support of his counterclaim for repayment of the principal and interest since 2004, Moshe has submitted a copy of an audit confirmation letter from Avruhum (Abe) Donner, Olympia's President, addressed to him and Esther, dated January 8, 2001, requesting verification on a note for $39,500 payable to them on December 31, 2000 at an interest rate of 12%. *Id.*, Ex. A.  The letter requested Moshe and Esther sign and date the bottom of the letter in response to the inquiry.  The letter is not signed by either Moshe or Esther.  *Id.*  An audit confirmation letter, by definition, reflects the balance on the books; it is not evidence that any cash changed hands or that a particular transaction took place.[2]  Moshe has not provided any documentation that money went from him to Olympia.

Moshe's purported loan first appeared on Olympia's books on December 31, 1992, as a loan from Moshe Pinter for $8,793.54.  Balmer Decl. ¶ 20.  This entry did not reflect a cash transaction, but rather reduced the balance of a purported loan payable to Samuel Pinter.  Balmer Decl. Ex. N. The  balance of Moshe's purported loan to Olympia, $30,706.46, was recorded on Olympia's books by a post-closing journal entry following the December 31, 1994, closing (in other words, the entry occurred between the year-end balance on December 31, 1994, and the opening balance on January 1, 1995).  Balmer Decl. ¶ 21.  That entry added $30,706.46 to the balance of Moshe's loan by reducing loans payable to Samuel Pinter and Barry Goldstein.  Balmer Decl. Ex. L.  The undisputed evidence thus establishes that there was no cash transfer of $30,706.46 by Moshe Pinter to Olympia.

**2.  Zvi and Malke Pinter**

---

[2]  *See, e.g.*, http://www.businessdictionary.com/definition/confirmation.html, last visited July 26, 2011 (an audit confirmation is a "letter sent by the auditors of a firm[] to its debtors and creditors, requesting verification of the amounts of receivables and payables balances shown under their names in the firm's books.").

-10-

Zvi and Malke assert that they both loaned money to Olympia.  Zvi, in his declaration, claims that *he* lent Olympia $12,500, evidenced by a promissory note issued by Olympia, signed by Leib Pinter for Olympia Mortgage Corporation, dated July 1, 1994.  Decl. Zvi Pinter ¶ 3, and Ex. A.  The promissory note, however, does not state that Zvi and Malke loaned Olympia $12,500; rather, it reflects that Olympia has an obligation to pay Zvi and Malke $12,500 with interest at a rate of 10% in consideration of "value received."  *Id*.  There is no mention as to what "value" was received to create Olympia's indebtedness to Zvi and Malke.  Malke has not submitted a declaration or affidavit that she loaned Olympia any sum of money.  Zvi asserts that the principal has not been repaid and that he ceased receiving interest payments on the loan in 2004.  *Id*.  In sum, neither Zvi nor Malke has presented any evidence that any money went from either of them to Olympia.

Zvi's and Malke's purported loan was entered on Olympia's books by a post-closing journal entry following the December 31, 1994, closing, in the amount of $12,500.  Balmer Decl. ¶ 19. Zvi's and Malke's purported loan was not recorded as a cash receipt, but rather by a reduction in purported loans payable to Samuel Pinter and Barry Goldstein.  *Id*.  The undisputed evidence thus establishes that the $12,500 was not a cash transfer by Zvi or Malke Pinter to Olympia.

### 3.  Chaim Taub

Chaim, in his declaration, claims that he lent Olympia $36,400 in "the 1990's."  Decl. Chaim Taub ¶ 3, May 2, 2008.  Chaim claims that the principal has not been repaid and that he ceased receiving interest payments on the loan in 2004.  *Id*.

Olympia's general ledger from 1992 had a balance forward (from 1991) of $11,894.68 attributed  owed to "Taub," but without any information as to the origins of the purported loan. Balmer Decl. ¶ 16.  The receiver has no knowledge as to the source of that forwarded balance.  *Id*.

-11-

On June 30, 1994, a journal entry increased the amount of the purported loan by $6.60, and labeled the total, $11,901.28 as a loan owed to "Tova Taub."[3] *Id.*, ¶ 17.

Chaim's purported loan to Olympia was then increased by a post-closing journal entry following December 31, 1994, in the amount of $24,498.72 to the balance of the "Taub" loan by a reduction of purported loans payable to Samuel Pinter and Barry Goldstein. *Id.*, ¶ 18. This increase in Chaim's purported loan is not supported by a cash receipt. *Id.* Therefore, Chaim Taub offers no evidence that the $24,498.72 was a cash transfer by him to Olympia.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the facts in the light most favorable to the non-moving party, and all reasonable inferences and ambiguities must be resolved against the moving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)*; Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.

---

[3] The court notes that Chaim, not Tova, claims to have loaned the sum of money to Olympia, and Chaim, not Tova, filed a counterclaim against Olympia for the return of the money.

-12-

1986), but "must come forward with specific facts showing that there is a genuine issue for trial,"
*Matsushita*, 475 U.S. at 586-8 (emphasis removed).

"The moving party is entitled to judgment as a matter of law [if] the non-moving party has
failed to make a sufficient showing on an essential element of her case with respect to which she has
the burden of proof."  *Celotex Corp. v. Catrett*, 477 U.S. at 323.   When deciding a motion for
summary judgment, courts must take into account the evidentiary burden of proof applicable at a trial
on the merits and measure the evidence submitted against that burden of proof.  *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. at 254-55.   Actual fraud under § 276 must be proven by clear and convincing
evidence.  *See United States v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994), *Marin Midland Bank v.
Murkoff*, 120 A.D.2d 122 (2d Dep't 1986).   There is a dispute as to the appropriate standard of proof
required to prove constructive fraud under § 273.  *Compare, e.g., Lippe v. Bairnco Corp.*, 249
F.Supp.2d 357, 376 n. 6 (S.D.N.Y. 2003) (concluding that fraud under § 273 must be proved by a
preponderance of the evidence) and *Farkas v. D'Oca*, 305 A.D.2d 237 (1st Dept. 2003) (noting that
the trial court applied the clear and convincing evidence standard to a claim for constructive fraud
under § 273).

"[I]f a motion for summary judgment has been made, a district court may grant summary
judgment to any party – including a non-movant," because "district courts are widely acknowledged
to possess the power to enter summary judgment sua sponte."  *First Financial Ins. Co. v. Allstate
Interior Demolition Corp.*, 193 F.3d 109, 114 (2d Cir. 1999).   Notice is not necessary where there
is no prejudice to the party against whom summary judgment is found.  *Biosafe-One Inc. v. Hawks*,
379 Fed.Appx. 4, 8-9 (2d Cir. 2010).

**B.  Olympia's Claims**

-13-

## 1.  New York Debtor and Creditor Law § 273

### a.  Statute of Limitations

Leib's Children argue that, with respect to the claims under § 273, they cannot be held liable for any transfers prior to September 26, 1999, six years prior to the date on which Olympia filed its crossclaims against them in this action.  They argue that claims under § 273 are subject to the six year statute of limitations of C.P.L.R. 213(1) and are not subject to the additional two year discovery period for fraud claims.

Section  273 claims have a six year statute of limitations which begins to run at the time  the fraudulent conveyance is made.  *Citicorp Trust Bank, FSB, v. Makkas*, 67 A.D.3d 950, 952 (2d Dep't 2009), N.Y. C.P.L.R. 213(1).  Olympia asks the court to apply the doctrine of equitable tolling to all transfers which occurred before September 26, 1999.  Citing *Pearl v. City of Long Beach*, 296 F.3d 76, 88 (2d Cir. 2002), Olympia argues that Leib's Children engaged in active fraudulent concealment of the transfers by falsely reporting the transfers as salary.  However, the New York Court of Appeals has made clear in cases subsequent to *Pearl* that equitable tolling under New York law requires that "*subsequent and specific* actions by defendant[] somehow kept [the plaintiff] from timely bringing suit." *Zumpano v. Quinn*, 6 N.Y. 3d 666, 674 (2006) (emphasis added).  "For the doctrine to apply, a plaintiff may not rely on the same act that forms the basis for the claim–the later fraudulent misrepresentation must be for the purpose of concealing the former tort." *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491 (2007).  In this case, the fraud which Olympia claims should toll the statute is the same fraud which forms the basis of its crossclaims, specifically, that Leib's Children engaged in constructive fraud by receiving or benefitting from fraudulent transfers from Olympia.  In other words, the actions that form the basis of Olympia's crossclaims against Leib's Children are the same

-14-

actions that Olympia is requesting the court rely upon to toll the statute of limitations. Under *Ross*, 8 N.Y.3d at 491, this is insufficient. Moreover, Olympia alleges that the principals of Olympia, who include Leib Pinter, made payments to Leib's Children, among others, to "conceal" the misuse of Olympia's assets for personal gain instead of paying off Olympia's creditors, Olympia's Am. Answer and Am. Cross-cl. ¶¶ 85-86, Oct. 18, 2005, but no allegations of such fraudulent concealment were made against Leib's Children. Therefore, all § 273 claims arising out of transactions that occurred before September 26, 1999, six years before the filing of the crossclaims in this action against Leib's Children, must be dismissed as time-barred.

**b.  Applicable Law**

New York Debtor and Creditor Law § 273 ("§ 273") states:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

N.Y. Debt. & Cred. Law § 273. Under § 273, "if a conveyance is made without fair consideration and the transferor is a debtor who is insolvent or will be rendered insolvent by the transfer, the conveyance is deemed constructively fraudulent." *Capital Distrib. Servs., Ltd. v. Ducor Express Airlines*, Inc., 440 F.Supp.2d 195, 203 (E.D.N.Y. 2006); *Zanani v. Meisels*, 78 A.D.3d 823 (2d Dep't 2010). Therefore, in order to succeed under this Section, Olympia must show (1) that it transferred money to Leib's Children; (2) that the money was transferred while Olympia was insolvent or that the transfers rendered Olympia insolvent; and (3) that the transfers were not made in exchange for fair consideration. *See In re Sharp Inter. Corp.*, 403 F.3d 43, 53 (2d Cir. 2005).

**i.  Money Transfers**

There is no dispute that Leib's Children received the transfers from Olympia. So, the first

-15-

element is satisfied.

### ii.  Olympia's Insolvency

Olympia was insolvent at least from December 31, 1997, which is prior to any of the transfers at issue on the § 273 claim, and possibly for its entire existence.  Leib's Children make the bald assertion that the transfers to them, and the transfers from which they benefitted, did not occur while Olympia was insolvent and did not contribute to Olympia's insolvency, but offer no evidence in support of their position.

"Moreover, the element of insolvency is presumed when a conveyance is made without fair consideration, and the burden of overcoming such presumption is on the transferee." *U.S. v. Alfano*, 34 F.Supp.2d 827, 845 (E.D.N.Y. 1999).  Since, as discussed below, there was no fair consideration for some of the money transfers, the presumption is that Olympia was insolvent for those transfers, and Leib's Children have not offered any evidence to rebut that presumption.

### iii.  Fair Consideration

"Under section 273 of the Debtor and Creditor Law, any transfer made by an insolvent debtor for less than 'fair consideration' is fraud as against his creditors without regard to the actual intent of the transferee." *Schmitt v. Morgan*, 98 A.D.2d 934 (3d Dept. 1983).  The determination of whether fair consideration is received in exchange for a transfer is a question of fact.  *See Eclaire Advisor Ltd. as Trustee to Daewoo Int'l (Am.) Corp. Creditor*, 375 F.Supp.2d 257, 269 n. 5 (S.D.N.Y. 2005) *(citing Am. Tissue v. Donaldson*, 351 F.Supp.2d 79, 105-06 (S.D.N.Y. 2004)).  In order to satisfy the statutory requirement for "fair consideration" under § 273, a conveyance must satisfy an antecedent debt or constitute a present exchange.  *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1061 (2d Cir. 1995).  The value of the consideration may not be disproportionately small when

-16-

compared with the value of the conveyance. *Lippe v. Bairnco Corp.*, 249 F.Supp.2d 357, 377 (S.D.N.Y. 2003). "Under New York law, the party seeking to have the transfer set aside has the burden of proof on the element of fair consideration and, since it is essential to finding fair consideration, good faith." *In re Actrade Financial Technologies Ltd.*, 337 B.R. 791, 802 (Bkrtcy.S.D.N.Y. 2005)(*citing United States v. McCombs*, 30 F.3d 310, 326 (2d Cir. 1994)).

Relying on a previous opinion in this case, Olympia argues that the burden of proving the lack of fair consideration in this case should shift to the defendants because the transfers here were intra-family transfers. *Federal Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, 2006 WL 2802092 at *8 (E.D.N.Y. Sept. 28, 2006) (*citing U.S. v. McCombs*, 30 F.3d at 324). In an intra-family transfer, the burden of proving the fairness of the consideration shifts to the transferee. *U.S. v. McCombs*, 30 F.3d at 324-326 (internal citations omitted). Here, the transfers at issue were intra-family transfers. Leib Pinter was an executive and part owner who was in charge of the day-to-day operations of Olympia; he has been found both criminally and civilly responsible for fraud against Fannie Mae. *Federal Nat. Mortg. Ass'n*, 2010 WL 3085174. And the money was transferred to Leib's Children. Thus, the defendants have the burden to prove that the transfers were made for fair consideration.

Defendants argue that the transfers to them were for fair consideration because at least one spouse from each of the four sets of defendants worked for Olympia, and the transfers were compensation for services the employee spouse provided to Olympia. They argue that their employment provides adequate consideration for the transfers and that their employment and compensation arrangements are valid and cannot be second-guessed. They further argue that there is nothing wrong with a corporation providing car payments or providing family health insurance coverage as part of an employee's compensation package. Leib's Children also argue that the loan

-17-

from Tiferes Yaakov Moshe to Olympia is consideration for the transfers to Yossie, Moshe, Zvi and Tova which occurred on January 16, 2003.

**a. Pincus Pinter's Alleged Loan to Olympia**

Yossie, Moshe, Zvi and Tova argue that Olympia's repayment to them of Pincus Pinter's loan to Olympia, per Pincus's instructions, is valid consideration for the January 16, 2003 transfers, and that Olympia has no evidence to the contrary. As explained above, Tiferes Yaakov Moshe, not Pincus Pinter, lent Olympia $130,000 and may have lent Olympia an additional $55,000, for a total loan of $185,000. However, Yossie, Moshe, Zvi and Tova offer no proof that Tiferes Yaakov Moshe lent Olympia $205,000. Nor do they have any proof that they were entitled to the payments they received. There is no proof that the loan, which was made by Tiferes Yaakov Moshe, was really a loan from Pincus Pinter. The only evidence Yossie, Moshe, Zvi and Tova provide is the declaration of their uncle, Abraham Pinter, explaining that Pincus wanted money disbursed to them. There are no documents transferring any of Pincus's purported interest in the loan to Yossie, Moshe, Zvi or Tova. Olympia's records show that it repaid Tiferes Yaakov Moshe its principal and interest, leaving Olympia no unpaid loan obligation to Tiferes Yaakov Moshe, and no reason to pay any of Leib's Children money in relation to this loan. Applying either standard of proof, clear and convincing evidence or the preponderance of the evidence, Olympia has established by undisputed evidence that these transfers were made by Olympia to Yossie, Moshe, Zvi and Tova while Olympia was insolvent and without fair consideration. Therefore, the $20,000 transfer to Yossie; $20,000 transfer to Moshe; $20,000 transfer to Zvi; and $15,000 transfer to Tova on January 16, 2003 are unsupported by fair consideration, and summary judgment is denied to Yossie, Moshe, Zvi and Tova, and granted to Olympia on these transfers.

-18-

**b. Alleged Employment at Olympia**

**1. Chaim, Zvi, Moshe and Yossie**

It is undisputed that Chaim, Zvi, Moshe and Yossie themselves gave no consideration for the transfers to them or benefits they received from transfers made on their behalf.  With the exception of Zvi, who argues that he assisted his wife with her work at Olympia, they argue that the transfers to them and benefits they received from transfers made on their behalf were for fair consideration because the transfers were part of their wives' compensation for working at Olympia.

Zvi's declaration does not address whether he assisted his wife with her work at Olympia, and, as mentioned above, there is no dispute that Zvi was not, himself, employed by Olympia. Malke's declaration is insufficient to prove Zvi did any work for Olympia.  Applying either standard of proof, clear and convincing evidence or the preponderance of the evidence, Olympia has established by undisputed evidence that these transfers were made by Olympia to Zvi while Olympia was insolvent and without fair consideration.  Therefore, all transfers to Zvi are unsupported by fair consideration, and summary judgment on these claims is denied to Zvi and is granted to Olympia.

Chaim and Moshe provide declarations in which each states in a most conclusory fashion that the payments he received were part of his wife's salary.  However, the money transferred to Chaim, Moshe and Yossie was not included on their wives' W-2 forms.  Any money that Olympia paid Tova, Esther and Hadassah should have been on Tova's, Esther's or Hadassah's own W-2s. Chaim's, Moshe's and Yossie's argument based on their receipt of W-2s from Olympia further contradicts their own argument that the transferred money was part of *their wives'* salary.  Applying either standard of proof, clear and convincing evidence or the preponderance of the evidence, Olympia has established by undisputed evidence that these transfers were made by Olympia to

-19-

Chaim, Moshe and Yossie, while Olympia was insolvent and without fair consideration. Therefore, all transfers to Chaim, Moshe and Yossie based upon their or their spouses' actual or alleged work at Olympia are unsupported by fair consideration, and summary judgment on these claims is denied to Chaim, Moshe and Yossie, and is granted to Olympia.

**2. Esther and Hadassah**

There is no dispute that Esther and Hadassah worked at Olympia. Esther argues that the amount of her compensation was appropriate because she received less than each of Olympia's other office managers.[4] Because, as explained above, these are intra-family transfers, Esther and Hadassah have the burden to show that they provided fair consideration for the transfers they received. Olympia argues that neither Esther nor Hadassah proved she performed sufficient work in consideration of the transfers she received. Olympia, however, has provided no evidence in support of its position that the women were overpaid for the work they performed. Therefore, the transfers made to Esther and Hadassah were made for fair consideration of their employment at Olympia, and summary judgment on these transfers is granted to Esther and Hadassah.

**3. Tova and Malke**

There is a factual dispute as to whether Tova and Malke ever worked at Olympia. In support of their position that they worked at Olympia, Tova and Malke have offered only declarations with very general statements as to the nature of their employment and responsibilities at Olympia. Olympia has raised an issue of fact as to their employment. Therefore, summary judgment is denied.

**c. Recovery of Damages**

---

[4] Esther provided comparisons to compensation only for other Olympia office managers in 2003. There is no evidence as to whether such was the case any other year.

-20-

Leib's Children argue that, even if Olympia prevails on its claims, it cannot recover money damages from them because none of them participated in the fraud. "A fraudulent conveyance claim seeking to recover money damages can only be maintained against a person who participates in the fraudulent transfer as either the transferee of the assets or the beneficiary of the conveyance." *Fundacion Presidente Allende v. Banco De Chile*, 2006 WL 2796793 at *3 (S.D.N.Y. May 29, 2006) (*citing Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993)(other citations omitted)); *see also In re Shore to Shore Realty Inc.*, No. 8-08-72760, 2011 WL 350526 (Bankr. E.D.N.Y. Feb. 1, 2011); *Cf. Sullivan v. Kodsi*, 373 F.Supp.2d 302 (S.D.N.Y. 2005) (as discussed in *Federal Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, 2006 WL 2802092 at * 10 (E.D.N.Y. Sept. 28, 2006), distinguishing *Sullivan* on the ground that the transferees in *Sullivan* were not participants because they received the fraudulent transfers passively via a trust managed by two successive trustees).

In *Stochastic*, the court addressed whether a creditor could recover against a person who was the "mastermind of the fraud" but neither a transferee nor a beneficiary; the court held that being a transferee or beneficiary was required. The court in *Stochastic* relied on *Federal Deposit Ins. Corp. v. Porco*, which explained that N.Y. Debt. & Cred. Law §§ 278 and 279 do not "create a creditor's remedy for money damages against parties who [participated in the transfer but] were neither transferees of the assets nor beneficiaries of the conveyance." *Federal Deposit Ins. Corp. v. Porco*, 75 N.Y.2d 840, 842 (1990). Neither *Stochastic* nor *Porco* held that transferees or beneficiaries escape liability for money damages for the amounts transferred just because they were only transferees or beneficiaries and played no other role in the fraudulent transfers. Neither case held that a transferee or beneficiary of a fraudulent transfer, who meets all the other requirements under

-21-

§ 273, had to have also been a participant in the underlying fraud (here, the "Code 59" fraud that resulted in Olympia's insolvency).[5]  Courts applying *Stochastic* have repeatedly noted that one need *only* be a transferee or beneficiary to be a participant in a fraudulent transfer; not either a transferee or beneficiary of a fraudulent conveyance *and* a participant in the underlying fraud.  *See, e.g., Chemtex, LLC v. St. Anthony Enterprises, Inc.*, 490 F.Supp.2d 536, 548 (S.D.N.Y. 2007).  In this case, the undisputed facts establish that some of Leib's Children, Chaim, Tova, Moshe, Zvi and Yossie, did participate in fraudulent transfers as the transferees and beneficiaries.  They participated in the fraudulent transfers because they received the money or benefitted from transfers made on their behalf, and there was no fair consideration for the transfers.  *See In re Lindsay*, No. 06-36352, 2010 WL 1780065 at *8 (Bkrtcy. S.D.N.Y. May 4, 2010)(assets transferred with constructive intent (§ 273) to defraud are recoverable).

Finally, the New York Uniform Fraudulent Conveyance Act, which is set forth in N.Y. Debt. & Cred. Law §§ 270-281, protects the rights of certain transferees who paid "fair consideration" for assets without "knowledge of the fraud at the time of the purchase."  N.Y. Debt. & Cred. Law § 278(1); *HBE Leasing v. Frank*, 48 F.3d 623, 636 (2d Cir. 1995) (noting the statute's "policy of protecting innocent creditors or purchasers for value who have received the debtor's property without awareness of any fraudulent scheme").  This is not one of those instances, as summary judgment is being awarded only on those transfers where no fair consideration has been found.  Thus, money damages for the entire amount of those transfers found to have been fraudulent are recoverable against Chaim, Tova, Moshe, Zvi and Yossie, those of Leib's Children found to have been

---

[5]  *See Federal Nat. Mortg. Ass'n*, 724 F.Supp.2d at 314, for an explanation of the underlying "Code 59" fraud.

-22-

transferees or beneficiaries of fraudulent transfers.

## 2.  New York Debtor and Creditor Law § 276

New York Debtor and Creditor Law § 276 ("§ 276") states:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Section 276 requires a conveyance and actual intent to hinder, delay or defraud.  Here, the record establishes that the transfers occurred.  "To prove actual fraud under § 276, a creditor must show intent to defraud on the part of the transferor." *In re Sharp Int'l Corp.*, 403 F.3d at 56.  Actual fraud must be proved by clear and convincing evidence.  *See McCombs*, 30 F.3d at 328, *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122 (2d Dep't 1986).  "Because direct proof of a debtor's intent to hinder his creditors is rare, creditors may rely on 'badges of fraud' to establish an inference of fraudulent intent." *Shelly v. Doe*, 249 A.D.2d 756, 758 (3d Dep't 1998).  Badges of fraud are "circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *U.S. Bancorp Equip. Fin., Inc. v. Rubashkin*, 30 Misc.3d 1216(A), 2011 NY Slip Op 50100(U), 2011 WL 293716 at *8 (N.Y.Sup. Jan. 31, 2011) (internal quotations and citations omitted).  These include "(1) a close relationship between the parties to the transaction, (2) a secret and hasty transfer not in the usual course of business, (3) inadequacy of consideration, (4) the transferor's knowledge of the creditor's claim and his or her inability to pay it, (5) the use of dummies or fictitious parties, and (6) retention of control of the property by the transferor after the conveyance." *Id.*; *see United States v. McCombs*, 30 F.3d at 328.

Leib's Children' argue that the § 276 claims should be dismissed for two reasons: (1) the claims have not been pled with the particularity required by Rule 9(b) of the Federal Rules of Civil

-23-

Procedure and (2) none of them acted with the requisite intent to defraud Olympia.

Although the defendants have inexplicably delayed, until this motion for summary judgment, raising their Rule 9(b) argument, the defendants are not barred from raising it now.  Fed. R. Civ. P. 12(h)(2).

As stated in an earlier opinion in this case, "[c]laims of fraudulent conveyance by actual fraud are subject to the heightened pleading standard of Rule 9(b)."  *Federal Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, 2006 WL 2802092 at *9 (E.D.N.Y. Sept. 8, 2006).  In its crossclaim for actual fraud against Leib's Children, Olympia did not allege the requisite particulars.  Olympia argues that it attached the requisite particulars to its papers in opposition to the instant motion.  Indeed, Olympia has submitted schedules for each of Leib's Children delineating the type of transfer and the year each transfer took place.  Balmer Decl. Ex. R.  Since Leib's Children do not challenge the sufficiency of Exhibit R to the Balmer Declaration as insufficient under Rule 9(b) in their reply memorandum, and since there is no dispute on the record that all of these transfers took place, I consider the schedules in Exhibit R to the Balmer Declaration to be incorporated as an amendment to Olympia's Amended Answer to Complaint and Amended Crossclaims.  Therefore, Olympia's crossclaims are pled with particularity as required by Rule 9(b).

Leib's Children misunderstand the necessary intent for a § 276 claim.  There is no fraudulent intent necessary on the part of the transferee; the statute requires fraudulent intent on the part of the *transferor*, here Olympia.  *In re Sharp Int'l Corp.*, 403 F.3d at 56.  Leib Pinter was responsible for Olympia's day-to-day operations and owned part of the company, and Leib is closely related to each of the defendants.  *Federal Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, 2010 WL 3085174.  Leib Pinter has pled guilty to wire fraud relating to his actions in this case.  *Id*.  Leib Pinter has also been

-24-

found liable for fraud to Fannie Mae in this action. *Id*.

**a. Esther and Hadassah**

As explained above, the transfers made to Esther and Hadassah were made for fair consideration of their employment at Olympia, and Olympia has no evidence to the contrary. Since, despite their connection to Leib, they provided fair consideration to Olympia, the transfers to Esther and Hadassah cannot be considered fraudulent. Therefore, summary judgment under § 276 is granted to Esther and Hadassah.

**b. Tova and Malke**

There is a factual dispute as to whether Tova and Malke ever worked at Olympia. Since the court cannot determine whether Tova and Malke provided fair consideration for the transfers they received, summary judgment is denied to Tova and Malke.

**c. Chaim, Moshe, Yossie and Zvi**

Multiple badges of fraud are present with respect to Chaim, Moshe, Yossie and Zvi. Chaim, Moshe, Yossie and Zvi provided no consideration for the transfers to them. As discussed earlier, the undisputed facts establish that the money transfers to them were not made in the usual course of business. A corporation does not usually transfer money to, or for the benefit of, people who provide no consideration. Nor does a corporation properly prepare and file W-2 forms for people who are not employed by the corporation. And, each is closely related to Leib. Under all of these circumstances, the existence of multiple badges of fraud with respect to Chaim, Moshe, Yossie and Zvi, "constitute the requisite clear and convincing evidence of actual intent to defraud." *In re Singh*, 434 B.R. 298, 312 (Bkrtcy.E.D.N.Y. 2010). The court finds that Olympia has satisfied its burden to "establish that the transfer[s] [were] made with an intent to hinder, delay or defraud [] creditors

pursuant to §276." *Id.*  Summary judgment on these transfers is denied to Chaim, Moshe, Yossie and Zvi and granted to Olympia.

### d. Pincus Pinter's Alleged Loan to Olympia

Finally, all transfers on January 16, 2003, which defendants attempt to justify as repayments of loans by Pincus Pinter are fraudulent.  Summary judgment on these transfers is denied to Yossie, Moshe, Zvi and Tova, and granted to Olympia.

### C. Counterclaims for Unpaid Loans

The counterclaimants seek summary judgment on their claim that they made loans to Olympia, which Olympia has not repaid.  Chaim claims to have loaned Olympia $36,400; Zvi and Malke claim to have loaned Olympia $12,500; and Moshe claims to have loaned Olympia $39,500. All four argue that the existence of their loans is evidenced by an Olympia Financial Statement Worksheet for the Year ending December 31,1996, which shows a balance of a loan payable to each counterclaimant in the amount claimed.  Moshe has also submitted a letter, dated January 8, 2001 from Olympia addressed to him and Esther requesting information about a loan to Olympia for $39,500 of which the entire principal balance was unpaid and for which the interest rate was set at 12%.  However, as explained earlier, this letter was sent by Olympia's auditors to Moshe and Esther based solely upon what was reflected in Olympia's books.

The counterclaimants bear the burden of proof on summary judgment for their counterclaims that Olympia has not repaid purported loan principal to them.  *See, e.g. Barton Group, Inc. v. NCR Corp.*, — F.Supp.2d —, 2011 WL 2555855 at *23 (S.D.N.Y. June 24, 2011).   With respect to Chaim's loans totaling $11,901.28, Chaim offers no documentation other than his own declaration, but Olympia offers no evidence to the contrary.  Under these circumstances, there is an issue of fact

-26-

as to whether Chaim made the loans to Olympia, and summary judgment is denied to Chaim.

With respect to the $24,498.72 which Chaim also seeks, the $12,500 which Zvi and Malke seek and the $39,500 which Moshe seeks, they have no documentary evidence that they made any cash transfers to Olympia, and Olympia has affirmatively shown that the amounts sought reflect a reduction in purported loans to others.   Therefore, Chaim, Moshe, Zvi and Malke are denied summary judgment and Olympia is granted summary judgment on these amounts.   No reasonable jury would conclude other than that these loans were never made to Olympia.

**D.  Interest**

Where summary judgment has been granted to Olympia, prejudgment interest is awarded to Olympia pursuant to N.Y. C.P.L.R. § 5001(a).   "Where ... damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *See* N.Y. C.P.L.R. § 5001(b); *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83 (2d Cir. 1998) ("New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation.").   *See also Federal Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, — F.Supp.2d —, 2011 WL 2433272 at *8 (E.D.N.Y. June 15, 2011).

Chaim received $2,486.83 in 1999; $50,721.14 in 2000; $52,897.80 in 2001; $67,630.31 in 2002; $64,807.58 in 2003; and $60,569.88 in 2004, for a total of $299,113.54.   Recoverable transfers and benefits to Chaim on Olympia's § 273 claim, totaling $296,626.71 occurred from January 1,

-27-

2000 through November 4, 2004,[6] and the reasonable intermediate date on which to being calculating interest is November 1, 2002.  Olympia can recover a total of $299,113.54 in transfers which occurred from January 1, 1999 through November 4, 2004, on its § 276 claim, and the reasonable intermediate date on which to begin calculating interest for Chaim's payments is fixed at May 1, 2002.

Moshe received $17,345.00 in 1995; $14,240 in 1996; $28,140.00 in 1997; $29,707.62 in 1998; $37,127.90 in 1999; $33,758.41 in 2000; $33,292.76 in 2001; $26,806.44 in 2002; $46,806.44 in 2003; and $31,327.75 in 2004, for a total of $298,552.32.  Recoverable transfers and benefits to Moshe on Olympia's § 273 claim, totaling $171,991.80 occurred from January 1, 2000 through November 4, 2004, and the reasonable intermediate date on which to being calculating interest is November 1, 2002.  On its § 276 claim, Olympia can recover a total of $298,552.32 in transfers which occurred from January 1, 1995 through November 4, 2004, and the reasonable intermediate date on which to begin calculating interest for Moshe's payments is fixed at November 1, 2000.

Zvi received $16,665.24 in 1995; $22,521.48 in 1996; $18,362.96 in 1997; $20,057.53 in 1998; $23,900.76 in 1999; $25,137.57 in 2000; $26,079.63 in 2001; $35,265.36 in 2002; $56,752.42 in 2003; and $27,015.24 in 2004, for a total of $276,748.19.  Recoverable transfers and benefits to Zvi on Olympia's § 273 claim, totaling $170,250.22 occurred from January 1, 2000 through November 4, 2004, and the reasonable intermediate date on which to begin calculating interest is November 1, 2002.  On its § 276 claim, Olympia can recover a total of $276,748.19 in transfers

---

[6] Since Olympia has not submitted information to the court as to when transfers to Chaim, and the rest of Leib's Children, concluded, the court will assume that no defendant received transfers after November 4, 2004, the date on which Olympia surrendered its license following a suspension by the New York State Department of Banking. *Federal Nat. Morg. Ass'n v. Olympia Mortg. Corp.*, 2006 WL 2802092 at *2 (E.D.N.Y. Sept. 28, 2006).

which occurred from January 1, 1995 through November 4, 2004, and the reasonable intermediate date on which to begin calculating interest for Zvi's payments is fixed at November 1, 2000.

Yossie received $9,625.84 in 1996; $13,200 in 1997; $13,965.84 in 1998; $18,125.84 in 1999; $13,965.84 in 2000; $13,965.84 in 2001; $13,965.84 in 2002; $35,988.09 in 2003; and $10,428.93 in 2004 for a total of $143,232.06. Recoverable transfers and benefits to Yossie on Olympia's § 273 claim, totaling $88,314.54 occurred from January 1, 2000 through November 4, 2004, and the reasonable intermediate date on which to being calculating interest is May 1, 2003. On its § 276 claim, Olympia can recover a total of $143,232.06 in transfers which occurred from January 1, 1996 through November 4, 2004, and the reasonable intermediate date on which to begin calculating interest for Yossie's payments is fixed at November 1, 2001.

Tova received $15,000 on January 16, 2003, so the date on which to begin calculating interest for Tova's transfer is fixed at January 16, 2003.

### III. CONCLUSION

For the reasons set forth above, summary judgment is granted in part and denied in part. Summary judgment is granted to Esther and Hadassah on Olympia's §§ 273 and 276 crossclaims and these crossclaims are dismissed as to them. Summary judgment is denied to Chaim, Moshe, Yossie, Tova, Malke and Zvi on Olympia's crossclaims pursuant to New York Debtor and Creditor Law §§ 273 and 276.

Summary judgment is granted to Olympia on its crossclaims against Chaim, Moshe, Yossie and Zvi on constructive fraud pursuant to New York Debtor and Creditor Law § 273 and actual fraud pursuant to New York Debtor and Creditor Law § 276. Olympia is granted summary judgment on its §§ 273 and 276 crossclaims against Tova for the $15,000 transfer made on January 16, 2003.

-29-

Summary judgment is also granted to Olympia on Zvi's and Malke's counterclaim in its entirety, Moshe's counterclaim in its entirety and on Chaim's loan except in the amount of $11,901.28, as to which summary judgment is denied. The counterclaims, with the exception of Chaim's counterclaim for $11,901.28, are dismissed.

On its § 276 claim, Olympia is entitled to recover damages against the following defendants in the following amounts, with interest from the specified dates:

(1) Chaim Taub: $299,113.54, interest from May 1, 2002;

(2) Moshe Pinter: $298,552.32, interest from November 1, 2000;

(3) Yossie Pinter: $143,232.06, interest from November 1, 2001;

(4) Zvi Pinter: $276,748.19, interest from November 1, 2000; and

(5) Tova Taub: $15,000, interest from January 16, 2003.

The § 273 claim insofar as it arises out of transactions that occurred before September 26, 1999, is dismissed. Olympia is entitled to recover, under § 273, damages against the following defendants in the following amounts, with interest from the specified dates:

(1) Chaim Taub: $296,626.71, interest from November 1, 2002;

(2) Moshe Pinter: $171,991.80, interest from November 1, 2002;

(3) Yossie Pinter: $88,314.54, interest from May 1, 2003;

(4) Zvi Pinter: $170,250.22, interest from November 1, 2002; and

(5) Tova Taub: $15,000, interest from January 16, 2003.

Should Olympia seek further award with respect to any transfers to Leib's Children which occurred in 1999, on or after September 26th, it must serve and file supplemental papers, within 30 days of the issuance of this decision, identifying the dates and amounts of the transfers it seeks to

-30-

recover.  Leib's Children's opposition, if any, should be served and filed 30 days thereafter.

SO ORDERED.


/s/ Nina Gershon (electronically signed)
NINA GERSHON
United States District Judge

Dated:        Brooklyn, New York
              August 5, 2011