UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

        Plaintiff,

  - against -

OLYMPIA MORTGAGE CORPORATION,
et al.,

        Defendants.

Civil Action No. 04-CV-4971 (NG) (MDG)

---

# PLAINTIFF FANNIE MAE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST <u>KAHAL SHOMREI HADATH</u>

REED SMITH LLP

Wendy H. Schwartz
Rachel K. Marcoccia
599 Lexington Avenue
New York, NY 10022
Tel: (212) 521-5400
Fax: (212) 521-5450
wschwartz@reedsmith.com
rmarcoccia@reedsmith.com

*Attorneys for Plaintiff Fannie Mae*

Plaintiff Fannie Mae respectfully submits this memorandum of law in support of its motion for partial summary judgment against defendant Kahal Shomrei Hadath ("KSH") on Fannie Mae's claim under New York Debtor and Creditor Law §273 (the "Constructive Fraud Claim").

## PRELIMINARY STATEMENT

This Court has already determined KSH's liability for constructive fraud for fraudulent transfers under New York Debtor and Creditor Law §273. More specifically, it is the law of the case that (1) KSH received $2,044,876 from Olympia from August 3, 1998 through October 1, 2004, (2) Olympia was insolvent at least from December 31, 1997, which is indisputably prior to any of these transfers, and (3) the transfers from Olympia to KSH were made without fair consideration. *See Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 U.S. Dist. LEXIS 63669 (E.D.N.Y. June 7, 2011). There is no genuine issue as to any material fact on Fannie Mae's Constructive Fraud Claim against KSH. Fannie Mae is entitled to summary judgment against KSH for the same reasons as those explained in this Court's June 7, 2011 Opinion and Order granting the Receiver summary judgment on her identical claim against KSH. *See id.*

## ARGUMENT

### FANNIE MAE IS ENTITLED TO SUMMARY JUDGMENT AGAINST KSH ON FANNIE MAE'S CONSTRUCTIVE FRAUD CLAIM

A. <u>Summary Judgment Standard</u>

"Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. Nat'l Mortg. Assoc.*, 2011 U.S. Dist. LEXIS 63669, at *25 (quoting *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "A genuine issue of material fact exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Fed. Nat'l Mortg. Assoc.*, 2011 U.S. Dist. LEXIS, at *26 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The court must construe the facts in the light most favorable to the non-moving party, and all reasonable inferences and ambiguities must be resolved against the moving party." 2011 U.S. Dist. LEXIS 63669, at *26. "However, the non-moving party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment,' but 'must come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (internal citation omitted). "The moving party is entitled to judgment as a matter of law [if] the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Here, as detailed below, this Court has already determined in this case that as a matter of law, Olympia's transfers to KSH amounting to $2,044,876 were fraudulent pursuant to New York Debtor and Creditor Law §273. "[T]he doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-816 (1988). *See also U.S. v. U.S. Smelting Ref. & Mining Co.*, 339 U.S. 186, 198 (1950) (the "rule of the law of the case" is "based upon [the] sound policy that when an issue is once

Fraud Claim against KSH (just as there was none on the Receiver's identical claim), and therefore Fannie Mae is entitled to summary judgment.

**B. This Court Has Already Determined That Olympia Made $2,044,876 in Constructively Fraudulent Transfers To KSH**

New York Debtor and Creditor Law §273 states:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation incurred without a fair consideration.

This Court has already granted the Receiver summary judgment on her identical claim of constructive fraud against KSH for fraudulent transfers under New York Debtor and Creditor Law § 273, and determined that KSH received $2,044,876 in fraudulent transfers from Olympia between August 3, 1998 and October 1, 2004 while Olympia was insolvent. *See Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 U.S. Dist. LEXIS 63669 (E.D.N.Y. June 7, 2011). *See also* Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Plaintiff's 56.1 Statement") ¶ 1; Declaration of Karen Kincaid Balmer executed on May 23, 2008 and exhibits 1 – 6 thereto providing supporting documentation of $2,044,876 in transfers to KSH attached as Exhibit 1 to the Declaration of Rachel K. Marcoccia ("Marcoccia Decl.").

Additionally, this Court concluded that the transfers to KSH were made without fair consideration. *Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 U.S. Dist. LEXIS

Deposition at 412:8-20). Indeed, KSH has admitted in this case that it did not itself provide consideration in exchange for the money transfers to it. *See Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 U.S. Dist. LEXIS 63669, at *32. *See also* Exhibit 2 to the Marcoccia Decl. (July 27, 2005 Joan G. Goldstein Deposition at 412:8-20 confirming no loans on the books from KSH). Indeed, KSH had a negative cash flow and could not have loaned funds to Olympia. *See* Exhibit 3 to the Marcoccia Decl. (October 17, 2006 Samuel Pinter Deposition at 107:11-14 stating that KSH is "not a money-making operation" and there is a "$300,000 deficit every year.").

KSH argued previously in this case on the Receiver's motion on the identical claim that Samuel Pinter loaned money to Olympia and the transfers at issue are interest payments and principal repayments of those purported loans, which constituted fair consideration. However, the Court has rejected that and concluded that "[n]othing in Olympia's records or in any banking documents verify [Samuel] Pinter's position that he loaned money to Olympia." *Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 U.S. Dist. LEXIS 63669, at *11-12. Indeed, there were no loans on the books for which Olympia had any obligation to KSH. *See* Exhibit 2 to the Marcoccia Decl. (July 19, 2005 Joan G. Goldstein Deposition at 188:17-189:12, 197:2-8; July 27, 2005 Joan G. Goldstein Deposition at 412:8-20). *See also* Exhibit 5 to the Marcoccia Decl. (October 23, 2006 Karen K. Balmer Deposition at 196:2-18 (no evidence of liability to KSH)). Samuel Pinter admits that he has no proof of any such loan. *See* Exhibit 3 to the Marcoccia Decl. (November 14, 2006 Samuel Pinter Deposition at 364:5-367:17).

Olympia also produced a false journal entry stating that KSH had loaned $714,000 to Olympia. In 2002, Fannie Mae sent $714,000 to Olympia in exchange for certain loans. Olympia quickly used these funds to make a payment it owed to Ginnie Mae. On the advice of

Marcus Pinter, an accountant for Olympia, Olympia drew up its books to show that the $714,000 came as a loan from KSH. *See* Exhibit 2 to the Marcoccia Decl. (Excerpt of July 19, 2005 deposition testimony of Joan G. Goldstein at 188:17-189:12 explaining that Marcus Pinter directed liability of approximately $700,000 to another to be set up as due to KSH without any note; and at 197:2-8). *See also* Exhibit 5 to the Marcoccia Decl. (June 26, 2007 Karen K. Balmer Deposition at 188:4-8 testifying that unidentified money was used to pay off loans).

Furthermore, certain of these transfers from Olympia to KSH were shown as rental payments on Olympia's books even though KSH did not in fact provide any facilities to Olympia. *Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 U.S. Dist. LEXIS 63669, at *20. *See also* Plaintiff's 56.1 Statement ¶ 4; Exhibit 2 to the Marcoccia Decl. (July 27, 2005 Joan G. Goldstein Deposition at 489:7-491:13); Exhibit 5 to the Marcoccia Decl. (October 23, 2006 Karen K. Balmer Deposition at 196:19-197:24). Barry Goldstein and Alan Braun, one of Olympia's accountants, even produced a fake lease for rental space that KSH never provided. *See* Plaintiff's 56.1 Statement ¶ 4; Exhibit 4 to the Marcoccia Decl. (May 11, 2006 Alan J. Braun Deposition at 287:15-289:20, 328:3-329:3; 433:16-23).

It is plain that Olympia received nothing of value in exchange for the transfers to KSH. *See Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 U.S. Dist. LEXIS 63669, at *32. *See also* Plaintiff's Rule 56.1 Statement ¶ 2; Balmer Decl. ¶ 2 attached as Exhibit 1 to the Marcoccia Decl.

The "element of insolvency is presumed when a conveyance is made without fair consideration, and the burden of overcoming such presumption is on [KSH]." *See Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 U.S. Dist. LEXIS 63669, at *29 (quoting *U.S. v. Alfano*, 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999). According to the Receiver's "Analysis of

Solvency – Report of Findings" (the "Receiver's Report"), Olympia was insolvent at least from December 31, 1997, and possibly for its entire existence. *See Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 U.S. Dist. LEXIS 63669, at *8. *See also* Plaintiff's 56.1 Statement ¶ 5; Receiver's Report attached as Exhibit 1 to the Marcoccia Decl.; Exhibit 6 to the Marcoccia Decl. (July 6, 2006 Abe Donner Deposition at 19:11-16 invoking the Fifth Amendment to line of questions regarding Olympia's insolvency). In opposition to the Receiver's motion,[1] KSH did not offer "even one piece of evidence in support of [its] position that Olympia was solvent during the period in which [it] received the money transfers in question." *See Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 U.S. Dist. LEXIS 63669, at *9. Therefore, Olympia's insolvency during the period of the transfers to KSH was "treated as undisputed" and should also be on the instant motion. *Id.*

As there is no genuine issue as to any material fact with respect to Fannie Mae's Constructive Fraud Claim against KSH, Fannie Mae is entitled to summary judgment against KSH.

### C. Fannie Mae Should be Awarded Prejudgment Interest Using the Same Methodology Employed by the Court in its June 7, 2011 Order on the Receiver's Motion

"Where…damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* at 33 (quoting NY CPLR 5001(b)). "[I]f [a defendant] received a larger sum of money earlier in the transfer period, the date to begin interest accrual will be earlier than the halfway point." *See Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 U.S. Dist. LEXIS 63669, at *34. "Likewise, if [a defendant] received a larger sum of money later in the

---

[1] The Receiver's Motion for Partial Summary Judgment was made not only against KSH, but also other "entity defendants" against whom Fannie Mae has not brought claims.

transfer period, the date to begin interest accrual will be later than the halfway point." *Id.* "In addition, the court will award interest on certain transfers from the date of transfer, either because of the large amount of the transfer or because that entity did not receive many transfers and therefore it would not be difficult to award interest from the actual transfer date." *Id.* As KSH received monthly payments and some additional payments from Olympia totaling 1,892,376 (which only excludes a large $152,500 payment made in November 1998 from the total of $2,044,876 in transfers to KSH), the Court directed that interest is to run on these transfers from September 4, 2001, which was the date halfway between the first and last transfer. The Court directed that interest on the $152,500 transfer would run from the date of the transfer, namely November 30, 1998, because of its large size. *See id.* at *34-35. The same interest calculation should be employed on Fannie Mae's Constructive Fraud Claim, which is identical to that of the Receiver.

Dated: New York, New York
March 19, 2012

REED SMITH LLP

By: _____
Wendy H. Schwartz
Rachel K. Marcoccia
599 Lexington Avenue
New York, NY 10022
Tel: (212) 521-5400
Fax: (212) 521-5450
wschwartz@reedsmith.com
rmarcoccia@reedsmith.com

*Attorneys for Plaintiff Fannie Mae*