UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

        Plaintiff,

- against -

OLYMPIA MORTGAGE CORPORATION, et al.,

        Defendants.

Civil Action No. 04-CV-4971 (NG) (MDG)

---

# PLAINTIFF FANNIE MAE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST <u>SAMUEL PINTER</u>

REED SMITH LLP

Wendy H. Schwartz
Rachel K. Marcoccia
599 Lexington Avenue
New York, NY 10022
Tel: (212) 521-5400
Fax: (212) 521-5450
wschwartz@reedsmith.com
rmarcoccia@reedsmith.com

*Attorneys for Plaintiff Fannie Mae*

Plaintiff Fannie Mae respectfully submits this memorandum of law in support of its motion for partial summary judgment against defendant Samuel Pinter ("Pinter") on Fannie Mae's claim under New York Debtor and Creditor Law §273 (the "Constructive Fraud Claim").

## PRELIMINARY STATEMENT

It is well established that "[t]hroughout Olympia's existence, [Pinter] raided the assets of the company for his own purposes." *Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 724 F. Supp. 2d 308, 320 (E.D.N.Y. 2010). Pinter has stipulated to $853,790.34 in transfers from Olympia for Pinter's own purposes between 1998 and 2002 while Olympia was insolvent. *See* Plaintiff's Statement of Undisputed Material Facts pursuant to Local Civil Rule 56.1 ("Plaintiff's 56.1 Statement") ¶¶ 1, 2. Indeed, Pinter took out loans from Midwood Federal Credit Union ("Midwood") in Pinter's own name with principal and interest thereafter paid by Olympia (the "Midwood Loans"). *See* Exhibit 1 to the Declaration of Rachel K. Marcoccia executed on March 22, 2012 at ¶¶ 37, 40. In 1999, Pinter took out $500,000 in loans from Midwood. *See id.* at ¶ 41. Olympia made the payments on the loans (*see id.*), but there is no documentation reflecting that Pinter provided these funds to Olympia or that Olympia had any obligation to Pinter with respect to these funds. In connection with Pinter's Midwood Loans, Olympia also paid Midwood $153,790.34 in total mortgage interest on Pinter's behalf from 1998 through 2002. *See id.* at ¶ 45. Pinter has also stipulated to a $100,000 transfer from Olympia during December 2002 for his personal purposes. *See id.* at ¶¶ 48-52. Additionally, Pinter has stipulated to being a subsequent transferee of $100,000 that KSH obtained from Olympia in June 2002 that was used to pay a debt owed by Pinter and another individual to the U.S. Small Business Administration. *See id.* at ¶ 34.

Furthermore, it is also undisputed and the law of the case that (i) Olympia was insolvent between 1998 and 2002, which is the period in which the transfers that are the subject of this motion were made, and (ii) Pinter did not loan any money to Olympia that Olympia was obligated to repay. It is plain that Olympia received nothing of value in exchange for the monies transferred to Pinter or paid on his behalf. Accordingly, Fannie Mae is entitled to summary judgment against Pinter on its Constructive Fraud Claim.

## ARGUMENT

### FANNIE MAE IS ENTITLED TO SUMMARY JUDGMENT AGAINST SAMUEL PINTER ON FANNIE MAE'S CONSTRUCTIVE FRAUD CLAIM

**A.** **Summary Judgment Standard**

"Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. Nat'l Mortg. Assoc.*, 2011 U.S. Dist. LEXIS 63669, at *25 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "A genuine issue of material fact exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Fed. Nat'l Mortg. Assoc.*, 2011 U.S. Dist. LEXIS, at *26 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The court must construe the facts in the light most favorable to the non-moving party, and all reasonable inferences and ambiguities must be resolved against the moving party." 2011 U.S. Dist. LEXIS 63669, at *26. "However, the non-moving party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment,' but 'must come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (internal citation omitted). "The moving party is entitled to judgment as a matter of law [if] the non-moving party has failed to make a sufficient showing on an essential

element of [its] case with respect to which [it] has the burden of proof." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Here, as explained below, there is no genuine issue as to any material fact on Fannie Mae's Constructive Fraud Claim, and Fannie Mae is entitled to summary judgment as a matter of law.

### B. Olympia's Transfers For Samuel Pinter's Own Purposes Were Constructively Fraudulent

New York Debtor and Creditor Law §273 states:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

#### i. Olympia Made $853,790.34 in Constructively Fraudulent Transfers for Pinter's Own Purposes

##### o Olympia Payments on Pinter's Midwood Loans (1998-2002)

Between 1992 and 1999, Samuel Pinter took out loans from Midwood in his own name with principal and interest thereafter paid by Olympia. *See* Stipulations attached as Exhibit 1 to the Marcoccia Decl. at ¶¶ 37, 40, 41.

While Olympia was insolvent,[1] Pinter took out $500,000 in loans from Midwood (one loan for $150,000 and two loans for $175,000) that Olympia paid, as to which Pinter has stipulated. *See id.* at ¶ 41. *See also* Exhibit 2 to the Marcoccia Decl. (Exhibit 6 to Olympia Mortgage Corporation Receiver's First Report Pursuant to The November 23, 2004 Receivership Order ("Receiver's First Report") reflecting three loans paid by "OMC" for Pinter in May 1999).

---

[1] As discussed below, the Receiver has determined - and it is the law of the case - that Olympia was insolvent at least from December 31, 1997. Only transfers from 1998 through 2002 are the subject of this motion.

There is no documentation reflecting that Pinter provided these funds to Olympia or that Olympia had any obligation to Pinter with respect to these funds. *See* Exhibit 3 to the Marcoccia Decl. (Excerpts of July 6, 2006 deposition testimony of Abe Donner at 29:14-25 invoking the Fifth Amendment as to questions concerning books and records that would reflect the accounts that Olympia had at Midwood).

Additional fraudulent transfers include $153,790.34 in total mortgage interest paid by Olympia on Pinter's behalf to Midwood from 1998 through 2002. *See* Exhibit 1 to the Marcoccia Decl. at ¶ 45. This amount is shown in the Receiver's analyses of 1098s. *See* Exhibit 4 to the Marcoccia Decl. (Exhibit 5 to the Receiver's First Report).

- **$100,000 from funds deposited in Olympia's account in connection with a loan 1716 Realty took from GE Capital in December 2002**

Pinter also received from Olympia $100,000 in funds that had been borrowed by 1716 Realty from GE Capital (the "GECC Loan") and had gone into Olympia's operating account. *See* Stipulations attached as Exhibit 1 to the Marcoccia Decl. at ¶¶ 48-52. The $100,000 in funds was used for Pinter's personal purposes. *See id.* at ¶ 52. Indeed, the vast majority of the net monies from the GECC loan were merely passing through Olympia's account on its way to the Pinter family. *See* Exhibit 5 to the Marcoccia Decl. (Receiver's First Report at pg. 100 of 152) ($100,000 of December 2002 GECC Loan proceeds went to pay down a loan to Pinter at Midwood).

- **$100,000 as subsequent transferee from KSH on SBA payment in June 2002**

Olympia monies were also improperly used to pay off $100,000 of the U.S. Small Business Administration ("SBA") settlement with Pinter and another individual. Specifically, Pinter has stipulated that, in June 2002, defendant KSH obtained $100,000 from Olympia and then used that money to pay that SBA debt for Pinter. *See* Marcoccia Decl. Exhibit 1 at ¶ 34.

*See also* Exhibit 5 to the Marcoccia Decl. (Receiver's First Report at pgs. 73 & 84 of 152); Exhibit 6 to the Marcoccia Decl. (exhibit 35 to the Receiver's First Report); Exhibit 7 to the Marcoccia Decl. (exhibit 36 to the Receiver's First Report).

These aforementioned transfers amount to $853,790.34 not including prejudgment interest, which is discussed *infra* in Section C.

### ii. The Transfers Were Made Without Fair Consideration

The transfers were made without fair consideration. *See* Plaintiff's Rule 56.1 Statement ¶ 1. Although Pinter has claimed during this case that he made loans to Olympia, there is no evidence of any such loans. Indeed, the Court has rejected such claims and concluded that "[n]othing in Olympia's records or in any banking documents verify [Samuel] Pinter's position that he loaned money to Olympia." *See Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 U.S. Dist. LEXIS 63669 (E.D.N.Y. June 7, 2011), at *11-12. This is the law of the case and Fannie Mae should not be required to relitigate this issue.[2]

There is also no documentation to support any actual equity contribution to Olympia by Pinter. *See* Exhibit 8 to the Marcoccia Decl. (November 14, 2006 Pinter deposition testimony at 367:23-368:4). And even if Pinter was an equity holder in Olympia, Olympia's earnings and/or retained earnings were insufficient to support distributions to equity holders at all relevant times. *See* Receiver's Report attached as Exhibit 5 to the Marcoccia Decl. at pgs. 43 & 45 of 152. This

---

[2] "[T]he doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-816 (1988). *See also U.S. v. U.S. Smelting Ref. & Mining Co.*, 339 U.S. 186, 198 (1950) (the "rule of the law of the case" is "based upon [the] sound policy that when an issue is once litigated and decided, that should be the end of the matter"); *Disimone v. Browner*, 121 F.3d 1262 (9th Cir. 1997) (applying law of the case to second set of petitioners on same issue against same agency).

Court has concluded that Olympia was inadequately capitalized. *See Balmer v. 1716 Realty LLC, et al.*, 2008 WL 2047888, at *5 (E.D.N.Y. May 9, 2008).

It is plain that Olympia received nothing of value in exchange for the transfers.

. iii. **The $853,790.34 in Transfers Were Made While Olympia was Insolvent**

The "element of insolvency is presumed when a conveyance is made without fair consideration, and the burden of overcoming such presumption is on [Pinter]." *See Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 2011 U.S. Dist. LEXIS 63669, at *29 (quoting *U.S. v. Alfano*, 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999)). According to the Receiver's "Analysis of Solvency – Report of Findings," Olympia was insolvent at least from December 31, 1997, and possibly for its entire existence. *See Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 U.S. Dist. LEXIS 63669, at *8. *See also* Plaintiff's 56.1 Statement ¶ 2; Exhibit 9 to the Marcoccia Decl. (Receiver's Analysis of Solvency – Report of Findings); and Exhibit 3 to the Marcoccia Decl. (July 6, 2006 deposition testimony of Abe Donner at 19:11-16 invoking the Fifth Amendment as to line of questioning as to Olympia's insolvency). Thus, Olympia's insolvency during the period the transfers were made to Pinter is also the law of the case, which Fannie Mae should not have to relitigate.

As there is no genuine issue as to any material fact with respect to Fannie Mae's Constructive Fraud Claim against Samuel Pinter, Fannie Mae is entitled to summary judgment against Samuel Pinter.

C. **Prejudgment Interest Should Be Computed From A Reasonable Intermediate Date**

"Where…damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, 2011 U.S. Dist. LEXIS

- 8 -

63669, at *33 (quoting NY CPLR 5001(b)).  Here, Fannie Mae submits that prejudgment interest should run from July 1, 2000 which is the date halfway between the first and last transfers in 1998 and 2002, respectively.

Dated: New York, New York
       March 22, 2012

                                        REED SMITH LLP

                                        By: _____
                                        Wendy H. Schwartz
                                        Rachel K. Marcoccia
                                        599 Lexington Avenue
                                        New York, NY 10022
                                        Tel: (212) 521-5400
                                        Fax: (212) 521-5450
                                        wschwartz@reedsmith.com
                                        rmarcoccia@reedsmith.com

                                        *Attorneys for Plaintiff Fannie Mae*