UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF NEW YORK

ORIGINAL

-----------------------------------------------------------------x

Federal National Mortgage Association,

                        Plaintiff,

v.

Olympia Mortgage Corporation et. al.,

                        Defendants.

-----------------------------------------------------------------x

1:04-cv-04971-NG-MDG

RECEIVED
JUN 25 2013
PRO SE OFFICE

## MOTION AND SUPPORTING MEMORANDUM IN SUPPORT OF DEFENDANT SAMUEL PINTER'S MOTION SEEKING RECONSIDERATIOLN RE-ARGUMENT AND A STAY OF ALL PROCEEDINGS AGAINST HIM PENDING THE APPEAL OF THE ORDER DATED JULY 7, 2010 AND THE JUDGMENT DATED JUNE 21, 2013 GRANTING SUMMARY JUDGMENT AGAINST SAMUEL PINTER

### INTRODUCTION

By Decision and Order dated July 7, 2010 and Judgment dated June 21, 2013, this Court granted plaintiff's motion for summary judgment against Samuel Pinter and deemed it appropriate to pierce the corporate veil and hold him personally responsible for defendant Olympia Mortgage Corporation's ("Olympia") liabilities.

Defendant Samuel Pinter makes the instant motion seeking Reconsideration, re-argument, and a stay of all proceedings against him until his appeal from the Decision and Order of this Court dated July 7, 2010 and Judgment dated June 21, 2013 is decided by the United States Court of Appeals. Defendant Pinter's Notice of Appeal from said Opinion and Order is dated July 19, 2010.

It is respectfully submitted that a stay of all proceedings in this matter against defendant Samuel Pinter is appropriate inasmuch as (a) there is a strong likelihood that Defendant Samuel Pinter will succeed on the merits of his appeal, and (b) said defendant will suffer irreparable injury if the proceedings are not stayed against him.

Moreover, even if this court correctly awarded summary judgment against Samuel Pinter (which Samuel Pinter vigorously disputes), it was error for this court to hold Samuel Pinter responsible for the entire $44.6 Million Dollars. Accordingly, a stay in this matter is proper.

## **STANDARD OF REVIEW**

In this Circuit, four factors must be considered before staying the actions of a lower court including: (1) whether the movant has demonstrated a substantial possibility, although less than a likelihood of success, on appeal; (2) whether the movant will suffer irreparable injury absent a stay; (3) whether another party will suffer irreparable injury if a stay is issued; and (4) the public interests that may be affected. See Hirschfeld v. Bd. Of Elections, 984 F .2d 35, 39 (2d Cir. 1993); see also In re World Trade Center Distaster Site Litigation, 503 F.3d 167,170-71 (2d Cir. 2007).

In Mohammed v. Reno, 309 F.3d 95 (2d Cir. 2002), the Second Circuit surveyed how different courts have analyzed the likelihood of success necessary for issuing a stay,

ultimately agreeing with the District of Columbia Circuit's approach, whereby "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors." Id. at 101 (quoting Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)). The Court observed: "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." Mohammed, 309 F.3d at 101 (citing Washington Metro. Area Transit Comm'n, 559 F.2d at 843)).

## ARGUMENT

### POINT I

#### SAMUEL PINTER HAS A SUBSTANTIAL LIKLIHOOD OF SUCCESS ON APPEAL

It is respectfully submitted that the Opinion and Order of this Court dated July 7, 2010 is flawed for two basic reasons. First, Samuel Pinter had no involvement in the alleged $44.8 million fraud committed upon Fannie Mae (the "Fraud") which plaintiff claims led to its loss, and which serves as the basis for this action. It is undisputed that the Fraud was perpetrated by Olympia Mortgage Corporation's ("Olympia's") other principals, and it is undisputed that Samuel Pinter had no involvement in, knowledge of or benefit from the Fraud. Therefore, Fannie Mae cannot pierce the corporate veil against Samuel Pinter with regard to the losses it suffered as a result of the Fraud.

Second, Opinion and Order of this Court dated July 7, 2010 makes an incorrect finding of fact that Samuel Pinter exercised complete domination over Olympia.

However this finding was is a gross distortion of the evidence which clearly does not show that Samuel Pointer dominated Olympia. At the very least, there is a genuine issue of material fact as to whether Samuel Pinter completely dominated Olympia.

This Court futher erred by finding that Samuel Pinter treated Olympia as his "alter ego," neglected to observe corporate formalities and improperly diverted assets from Olympia for his personal gain. However the evidence presented on the motion shows that many of the diversions of Olympia's assets that plaintiff claims Samuel Pinter committed actually did not occur, and that many were transfers of assets in which Olympia had no interest, and that others were made for legitimate reasons, often to repay Samuel Pinter for funds that he had advanced to Olympia. In addition, while this Court emphasized the transfers of assets that were made from Olympia to Samuel Pinter, this Court neglected to find that the large amount of funds that were transferred from Samuel Pinter to Olympia. *See, e.g. S. Pinter 10/17/06 Dep.* at 44:24-45:12, 47:10-14 (showing that he had loaned Olympia over $1.6 million).

In this case, where not one shred of evidence links Samuel Pinter to the Fraud, and no control or domination by Samuel Pinter of the corporation has been or can be shown, summary judgment against Samuel Pinter should have been denied. Furthermore, even if this court correctly granted summary judgment allowing Plaintiff to pierce the corporate veil against Samuel Pinter, which Samuel Pinter seriously dispute, then any recovery that it makes under that doctrine should have been limited to $3,675,000, which, by Plaintiff's figures, is the maximum amount of damage that Samuel Pinter alleged wrongdoings could have done.

## A. Samuel Pinter was not involved in running of Olympia, and did not control or dominate it

The evidence presented on the motions reveal that in 1986, defendant Samuel Pinter joined his brother Leib Pinter, Barry Goldstein and Abe Donner (collectively, the "Principals") in forming Olympia. *S. Pinter 10/17/06 Dep.* at 31:8-24. While Leib, Goldstein and Donner were to run Olympia's operations, it was intended that Samuel would serve as a passive investor in the company, providing funding when necessary but remaining uninvolved in the management of Olympia and its business. *S. Pinter 5/25/05 Dep. (Chinatrust v. Pinter)* at 9:3-7; *J. Goldstein 7/19/05 Dep.* at 285:2-3. Plaintiff in fact concedes that this is how the company was actually run. *Plaintiff's Rule 56.1 Statement* ¶¶ 40 and 41; *see also J. Goldstein 7/19/05 Dep.* at 284:20-285:3.

Furthermore, contrary to plaintiff's claims the evidence clearly establishes that the other Principals intentionally concealed information about Olympia's operations and finances from Samuel Pinter, who was a minority shareholder in the corporation with no staff there that answered to him. *J. Goldstein 7/19/05 Dep.* at 31:7-22, 41:11-42:8, 285:8-15; *M. Reilly 6/21/07 Dep.* At 35:12-18. Indeed, it is likely that just like Fannie Mae, Samuel Pinter would not have been able to detect and prevent the alleged fraud had he tried to. *S. Pinter Decl., Exh.* E.

While Plaintiff claims that Samuel Pinter, as Olympia's source of financing, could have demanded a full explanation of Olympia's business activities, there is no evidence showing that he ever actually received such an explanation. On the other hand, there is clear evidence showing that the other Principals instructed their employees to keep

Samuel Pinter in the dark. *J. Goldstein 7/19/05 Dep.* at 31:7-22, 41:11-42:8, 285:8-15; *M. Reilly 6/21/07 Dep.* at 35:12-18. Thus, even if he had made any inquiries, the other principals would have concealed the truth from him just as they did with Fannie Mae. *Id.*

### B. Sam Pinter was not involved in the Fraud

It is undisputed that Samuel Pinter was not involved in the Fraud. *J. Sakole 7/26/06 Dep.* at 199:15-18, *S. Pinter Decl.* ¶ 11. Also, there is ample evidence showing that the other Principals took active measures to conceal from him what was really happening at Olympia. *J. Goldstein 7/19/05 Dep.* at 31:7-22, 41:11-42:8, , 285:8-15; *M. Reilly 6/21/07 Dep.* at 35:12-18. As Fannie Mae's trained auditors could find no sign of the Fraud (*S. Pinter Decl., Exh.* E), it would have been impossible for Samuel Pinter, an untrained individual who was not given access to Olympia's books and records, to have done so.

Furthermore, while Leib Pinter and Barry Goldstein have been indicted for their roles in the Fraud, Samuel Pinter has not even been the target of the criminal investigation that has ensnared the other principals. *S. Pinter Decl.,* 11. Indeed, he is as much a victim of the Fraud as is Fannie Mae, as he has faced liability for many of Olympia's obligations which he had personally guaranteed. *See, e.g.* this Court's Memorandum and Order of March 23, 2007 in *Chinatrust Bank v. Samuel Pinter, et al.* 04-cv-5331 (SLT) (KAM) (E.D.N.Y.); the Decision and Order of the New York State Supreme Court dated August 13, 2007 in *Independence Community Bank v. Olympia Mortgage Corp. et al.*, Index No. 36722/04 (Kings County). As such, at the very least there is a genuine issue of material fact as to whether Samuel Pinter had any involvement in the Fraud which underlies Fannie Mae's claims in this motion. More likely, it is indisputable that he was not involved in the fraud.

### C. Samuel Pinter did not divert Olympia's assets

This Court incorrectly concluded that Samuel Pinter essentially looted Olympia, transferring moneys and various assets to himself or entities in which he had an interest. However, these claims are grossly exaggerated and in fact irrelevant to the instant motion, as the alleged transfers had nothing to do with the $44.8 million Fraud. But even more importantly, many of these alleged transfers never actually happened, and plaintiff's allegations to the contrary are based on distorted, misleading and incorrect interpretations of the evidence. For example, plaintiff cites a letter Samuel Pinter wrote to Independence Community Bank ("ICB"). *Chu Decl., Exh.* 13. Plaintiff claims that the letter was sent by Samuel Pinter to avoid personal liability, and that in the letter he offered to ICB numerous assets he characterized as belonging to Olympia, although they were held in others' names. However, the letter was not sent only to avoid personal liability; Olympia was liable for that debt as well, and a settlement would have resolved it's liabilities as well. As such, the fact that the offer included assets belonging to Olympia was perfectly appropriate. Furthermore, the letter in fact does not characterize any assets held by other individuals as belonging to Olympia. The only property indentified as Olympia's was its San Jose office and a 30% interest in Jasmine Lakes Apartments. *Chu Decl., Exh.* 13, *S. Pinter Decl.,* ¶¶ 2-4. Thus, this letter can reflect no wrongdoing on the part of Samuel Pinter.

In another example of its mischaracterization of the evidence, plaintiff refers to 1716 Realty as another case where Samuel Pinter collected for himself an Olympia-funded asset. However, other than this bald assertion, which is unsupported by citation to any

evidence, there is nothing to show that Samuel Pinter diverted 1716 Realty or any of its assets away from Olympia and to himself. Rather, the evidence shows that after the Fraud and misconduct of the other Principals came to light, Samuel Pinter took control of 1716 Realty, and as this Court has previously noted, he proceeded to ensure that it was run properly, maintaining separate bank accounts for it and depositing all of its income into those bank accounts. *Balmer Slip Op.* at 6, 11. Neither the plaintiff nor this Court was able to cite a specific instance when Samuel Pinter transferred an interest in 1716 Realty or any its assets from Olympia to himself or a third party. Another example of plaintiff's mischaracterizations involves the Flatbush Avenue properties, which were originally owned by P&G Realty and were allegedly funded in part by Olympia. While plaintiff claims that Samuel Pinter received $550,000 in proceeds from the sale of that property, the evidence shows that the actual proceeds of the sale amounted to a much lesser amount, and that those limited funds were then spent for the benefit of Olympia, in that they were used to pay for renovations to 1716 Realty's property. *S. Pinter 10/16/06 Dep.* at 292:17-293:21.

Yet another example of plaintiff's fabrications is Fannie Mae's claim, unsupported by any evidence, that the Jasmine Lakes property, in which Olympia appears to have a 30% interest, was transferred to Samuel Pinter. While Olympia's receiver claims that the property was transferred to Samuel Pinter, she has admitted that she could not find any evidence of this transfer, other than a letter showing that it was being considered at one point in time. *Balmer 10/23/06 Dep.* at 193:2-24; *S. Pinter 3/22/06 Dep.* at 646:9-647:24. In short, this claim is nothng short of a fairy tale, yet while no evidence of this imaginary transfer has been brought forth by the plaintiff, that has not stopped plaintiff from

claiming that it had occurred. Another example of plaintiff's mischaracterizations of the evidence is the transfer of Fannie Mae's San Jose office. Plaintiff implies that this transfer was done by Sam Pinter solely to avoid personal liability. However, if a principal of Olympia would have been liable for the office, clearly Olympia itself would have been liable as well. Plaintiff notes that in his settlement proposal letter to ICB, Samuel Pinter valued the San Jose at $1 million, but that it was ultimately transferred for no consideration. However there was consideration for that transfer, in that the entity that acquired the San Jose office undertook Olympia's obligations and liabilities associated with that office. *S. Pinter 3/22/06 Dep. (ICB v. OMC)* at 552:2-553:10. In contrast other offices, which did not bear this liability, were simply closed, as they could not be sold. *Id.* Thus, it would appear that Samuel Pinter's valuation of the office in his settlement offer to ICB was wildly optimistic. *Chu Decl., Exh.* 13, *S. Pinter Decl.,* ¶ 3.

Lastly, plaintiff claims that after the Fraud was discovered, Samuel Pinter required his brother Leib, who seems to have played a central role in the fraud, to transfer complete control to him of property (held by S&F Realty) that they shared with their wives. Plaintiff further claims that Samuel Pinter forced Shaindy Pinter (Leib's wife) to sign a $5 million personal guarantee to him secured by her interest in this property. However, the record does not show that Samuel Pinter forced her to do anything, but rather that after a discussion, she decided to do so of her own free will. *S. Pinter 10/16/06 Dep.* at 298:5-23. In any event, this transfer had no bearing on Olympia, which did not lose any interest it may have had in the property. As such, there clearly is a genuine issue of material fact as to whether Samuel Pinter improperly diverted Olympia's assets.

Fannie Mae attempts to muddy the waters and conceal this issue of fact by writing at length about inappropriate accounting practices at Olympia (much of which was likely due to the other Principals' efforts to conceal their Fraud), a lack of corporate formalities, or other nefarious acts which it attempts to attribute to Samuel Pinter. However, plaintiff cannot show that Samuel Pinter had any involvement in these activities, other than his having been a minority shareholder in Olympia who had no control over or say in the corporation's operations. As set forth below, such broad and unspecific allegations cannot serve as a basis for summary judgment.

## ARGUMENT

### I. GENUINE ISSUES OF FACT PRECLUDE THE GRANTING OF SUMMARY JUDGMENT

The Court's role on a motion for summary judgment is not to resolve disputed issues of fact, but only to determine whether there exists any genuine issue to be tried. Eastman Mach. Co. v. United States, 841 F.2d 469, 473 (2d Cir. 1988). If there is sufficient evidence favoring the party opposing the motion such that a reasonable jury could enter a verdict in its favor, then a genuine issue of material fact exists and the motion should be denied. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). On a motion for summary judgment, the Court must "draw all inferences in favor of the party against whom summary judgment is sought." Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989). See Al Sayegh Brothers Trading (LLC) v. Doral Trading & Export, Inc., 219 F. Supp. 2d 285, 290 (E.D.N.Y. 2002) (Glasser, J.).

Furthermore, on such a motion it is the movant's burden to demonstrate the absence of genuine issue of fact for trial. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348 (1986). Indeed, this Court has stated that

"[i]n order for the moving party to be successful, it must 'point[] out to the district court . . . that there is an absence of evidence to support the non-moving party's case.'" United States v. Private Sanitation Industry Ass'n of Nassau/Sufolk Inc., 862 F. Supp. 861, 864 (E.D.N.Y. 1994). As set forth in the motion below, Plaintiff has not met its burden in this case, and based on these principles Fannie Mae's motion for summary judgment should have been denied. Indeed, the evidence that exists strongly favors a verdict in Samuel Pinter's favor.

## II. PLAINTIFF HAS NOT SHOWN EVIDENCE WARRANTING PIERCING THE CORPORATE VEIL

### A. The requirements to pierce the corporate veil under New York Law

In Morris v. New York State Dep't of Taxation and Finance, the leading New York case on piercing the corporate veil, the New York Court of Appeals set forth two requirements needed for such a remedy to be appropriate: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." 82 N.Y. 2d 135, 141, 603 N.Y.S. 2d 807, 810-811, 623 N.E. 2d 1157, 1160-1161 (1993); see also Mars Electronics of N.Y. Inc. v. U.S.A. Direct, Inc., 28 F. Supp. 2d 91, 97-98 (E.D.N.Y. 1998) (citing Morris for the rule that "under New York law a plaintiff seeking to pierce the corporate veil must prove both complete domination and that the domination was used to commit a fraud with respect to the transaction at issue."). Plaintiff has conceded the need for these two factors, but it cannot satisfy either requirement in this case.

### B. Samuel Pinter did not exercise complete domination of Olympia

As set forth above, a showing of "complete domination" of the corporation by the defendant is required in order to pierce the corporate veil. See Morris, 82 N.Y. 2d at 141 ("complete domination of the corporation is the key to piercing the corporate veil"); see also Mars Electronics, 28 F. Supp. 2d at 97. However, Plaintiff would be hard pressed to show that Samuel Pinter exercised such "complete domination" over Olympia. Indeed, Plaintiff has conceded that it was not Samuel Pinter, but rather Barry Goldstein and Leib Pinter who were in charge of Olympia's operations and who ran the corporation. *S. Pinter 10/17/06 Dep.* at 32:6-13; 42:24-43:2; 79:18-24; 124:19-126:6; *S. Pinter 5/25/05 Dep. (Chinatrust v. Pinter)* at 10:16-22; 11Plaintiff's Statement pursuant to Local Rule 56.1 ("Plaintiff's 56.1 Statement") ("Sam Pinters's plan was to 'invest, have other people run it.'"), Plaintiff's 56.1 Statement ¶ 41 ("Barry Goldstein and Leib Pinter were given the responsibility for the day-to-day operations of Olympia."). As Plaintiff further concedes, Samuel Pinter's role at Olympia was limited to being "the person responsible for its funding." Plaintiff's 56.1 Statement ¶ 62; see also Plaintiff's 56.1 Statement ¶ 81 ("When Olympia had liquidity problems, Leib Pinter or Abe Donner would come to Sam Pinter and ask for a loan for a few weeks. S. Pinter 10/17/06 Dep. at 216:11-22.").

Furthermore, there is ample evidence in the record showing that Samuel Pinter was in fact excluded by the other principals from having any meaningful control over Olympia. *J. Goldstein 7/19/05 Dep.* at 31:7-22, 41:11-42:8; *M. Reilly 6/21/07 Dep.* at 35:12-18. As such a passive investor in Olympia's business, Samuel Pinter can hardly be

described as having dominated it. Indeed, while Plaintiff points to several statements by individuals to the effect that Samuel Pinter could have demanded more information anytime that he wanted, there is absolutely no evidence that he actually received that information. Furthermore, the evidence indicates that even if he had made such inquiries, the other principals had taken steps to deceive him, just as they had deceived Olympia. *J. Goldstein 7/19/05 Dep.* at 31:7-22, 41:11-42:8; *M. Reilly 6/21/07 Dep.* at 35:12-18; *S. Pinter 5/25/05 Dep. (Chinatrust v. Pinter)* at 11:23-12:6.

Plaintiff notes that in Passalacqua Builders v. Resnick Dev. South, Inc., the Second Circuit listed a number of factors to consider in determining whether a corporation has been so dominated for purposes of piercing the corporate veil. 933 F.2d 131 (2d Cir. 1991), see also *Balmer Slip Opinion* at 8. These factors include: (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own. Passalacqua, 933 F.2d at139.

Plaintiff also notes that in the *Balmer Slip Op.*, this court found that enough of these factors were present in that case to pierce the corporate veil, and argues that as they are present in this case as well, the court should rule the same way. However, what Plaintiff fails to note is that in Passalacqua, as well as in the circumstances addressed by the *Balmer Slip Op.*, the defendants included **all** of the entities that had an interest in the dominated corporation, and they completely dominated the corporation.

Here, Samuel Pinter was no more that a minority shareholder in Olympia, and hardly exercised and domination over it, let alone **complete** domination. Indeed, in almost all of the cases cited by plaintiff, the corporation was dominated by a shareholder who effectively owned at least a majority interest in and had complete control over the corporation. See, e.g. Capital Distrib. Servs. v. Ducor Express Airlines, 2007 U.S. Dist. LEXIS 31943 (E.D.N.Y. May 1, 2007) (corporation acted only through defendant, who was exclusively responsible for managing corporation and all of its financial and other affairs, including bookkeeping); Shanghai Join Buy Co. v. PSTEX Group, Inc., 2006 U.S. Dist. LEXIS 55723 (S.D.N.Y. Aug. 9, 2006) (defendant was sole owner, officer, director and shareholder of corporation); Austin Powder Co. v. McCullough, 216 A.D. 2d 825 (N.Y. App. Div. 3d Dep't 1995) (same); Thrift Drug v. Universal Prescription Adm'rs, 131 F. 3d 95 (2d Cir. N.Y. 1997) (same); Atari, Inc. v. Games, Inc., 2005 U.S. Dist. LEXIS 10457 (S.D.N.Y. May 27, 2005) (defendant was corporation's sole "managing member" and no control was exercised by other shareholders).

In the case at bar, Samuel Pinter was not a sole shareholder, and was far from being in exclusive control of Olympia. As such, Samuel Pinter cannot have completely dominated Olympia. While Plaintiff refers to an absence of corporate formalities,

inadequate capitalization and overlap in ownership, space and personnel with other entities, these cannot be attributed to Samuel Pinter, especially as Olympia's day-to-day operations were admittedly run by its other principals.

Plaintiff also claims that Samuel Pinter's constant physical presence at the office building that he shared with Olympia is proof of his dominion and control over it. However, in support of its assertion that his presence in the building was "more than a formality", Plaintiff can only cite the fact that he and those who were "running [Olympia] prayed together and talked business every day." (Pl's Memo, p. 13-14,). Clearly, praying with other principals and talking with them about "business" is hardly an exercise of dominion and control. (Note that plaintiff concedes here again that it was the other principals who were "running" Olympia.)

### C. Samuel Pinter did commit a fraud or other wrongdoing against plaintiff that resulted in plaintiff's injury

To pierce the corporate veil, a plaintiff must also show that the domination defendant exercised over the corporation was used to commit a fraud against the plaintiff. Morris, 82 N.Y.2d at 141, 603 N.Y.S.2d at 810-811, 623 N.E.2d at 1160-1161; see also Lippe v. Bairnco Corp., 99 Fed. Appx. 274, 284 (2d Cir. N.Y. 2004); Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir. N.Y. 1997); Mars Electronics, 28 F. Supp. 2d at 98.

As stated above, Fannie Mae's $44,800,000 loss here was a result of the Fraud committed by Leib Pinter and Barry Goldstein in not remitting loan payoff amounts, a fraud in which Samuel Pinter had no involvement or knowledge of whatsoever. Thus, Plaintiff cannot claim that Samuel Pinter used his alleged domination of Olympia to cause its $44.8 million loss.

Plaintiff attempts to sidestep this issue by claiming that Samuel Pinter wrongfully diverted corporate assets "with his full knowledge that Olympia was undercapitalized," thus leaving Fannie Mae unable to recover its $44.8 million. However, as he was unaware of Olympia's failure to remit the loan payoff amounts, Samuel Pinter could not have been aware of this undercapitalization prior to its discovery and exposure by Fannie Mae, and thus cannot be liable for transfers of Olympia's assets prior to that time. Indeed, Samuel Pinter was led to believe by the other Principals that Olympia was prospering, and was not suffering from any inadequate capitalization.

In this regard, plaintiff lists only five instances in which Samuel Pinter is alleged to have collected or transferred assets that should have gone to Olympia's creditors after the discovery of the Fraud. These instances relate to the following properties and/or entities: (i) Olympia's San Jose office; (ii) 1716 Realty; (iii) P&G/Flatbush Avenue Properties; (iv) S&F Realty; and (v) Jasmine Lakes. According to the Plaintiff, Olympia had an interest in all of these properties, and claims that Samuel Pinter attempted to offer some of them in settlement of personal claims against him by Olympia's creditors, or that he had them transferred to himself for his own personal benefit. However, as explained in detail above (pp. 7-9), this is a complete mischaracterization of the evidence, and in none of these instances did Samuel Pinter actually transfer or collected assets that should have gone to Olympia's creditors.

### III. EVEN IF THE CORPORATE VEIL CAN BE PIERCED, ANY OF PLAINTIFF'S INJURIES THAT RESULTED FROM SAMUEL PINTER'S ALLEGED WRONGDOING IS LIMITED

In order for a plaintiff to pierce the corporate veil with respect to multiple fraudulent or wrongful acts allegedly committed by a defendant, it must establish that the defendant committed each and every one of the separate fraudulent or wrongful acts for the defendant to be liable for those acts. Mars Electronics, 28 F. Supp. 2d at 98 (where defendant was implicated in only two out of ten allegedly fraudulent transactions, defendant would be liable for only those two transactions, even though the corporate veil was pierced).

In the instant case, plaintiff cannot establish that Samuel Pinter committed $44.8 million worth of fraudulent or wrongful acts, as he was not involved in the Fraud.[1] Samuel Pinter was not aware of the Fraud, but rather had been led to believe, together with the plaintiff, that Olympia's finances were healthy. As such, Samuel Pinter cannot be held responsible for any acts such as alleged diversions of corporate assets or inadequate capitalization of Olympia that were committed prior to the discovery of the Fraud, as he had no way of knowing about the true nature of Olympia's precarious finances. Rather, plaintiff can only point to the transfers Samuel Pinter allegedly committed after having learned of the Fraud which involved these five entities: (i) Olympia's San Jose office; (ii) 1716 Realty; (iii) P&G/Flatbush Avenue Properties; (iv) S&F Realty; and (v) Jasmine Lakes. The total possible value of any transfer of these properties cannot exceed $3,675,000 based on plaintiff's valuation of each property:

(i) $1,000,000 for Olympia's San Jose office (as per its valuation in the ICB settlement proposal);

---

[1] In fact, Plaintiff has provided insufficient evidence to show that its net loss as a result of the fraud actually totaled $44.8 million, and that it was not able to recoup any of that amount.

(ii) $1,550,000 for 1716 Realty (Plaintiff alleges that Samuel Pinter received the benefits of a $1.55 million loan 1716 borrowed and that was guaranteed by Olympia);

(iii) $550,000 for P&G Realty (the alleged proceeds garnered from the sale of its Flatbush Avenue property);

(iv) $75,000 for S&F Realty, (the most it could have received in a disbursement from Olympia, according to the receiver's evidence); and

(v) $500,000 for Jasmine Lakes (based on a $500,000 loan it received from Olympia).

However, as set forth above, the evidence presented by plaintiff does not even support these numbers, as many of these transfers never occurred, or their value has been overvalued. In any event, Samuel Pinter's liability, even if the corporate veil is pierced, is extremely limited.

## CONCLUSION

For the foregoing reasons, Defendant Samuel Pinter's motion seeking Reconsideration, Re-Argument and a stay of all proceedings must be granted pending the disposition of his appeal of the Opinion and Order dated July 7, 2012 and Judgment dated June 21, 2013.

Dated:       June 25, 2013

By: Samuel Pinter, Pro SE
805 Avenue L
Brooklyn, NY 11230
718-535-3801
718-338-1019 (Fax)

County of Kings;
State of New York;

Sworn before me on this 25th day of June, 2013.

_____
Notary Public, State of New York

MATTY GLUCKMAN
Notary Public, State of NY
No. 01GL6123886
Qualified in Kings County
Comm. Expires 9/14/2017