UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

                Plaintiff,

- against -

OLYMPIA MORTGAGE CORPORATION,
et al.,

                Defendants.

------------------------------------------------x
OLYMPIA MORTGAGE CORPORATION,
et al.,

                Crossclaim Plaintiff,

- against -

LEIB PINTER, et al.,

                Crossclaim Defendants.

------------------------------------------------x

OPINION AND ORDER
04-CV-4971 (NG)(MDG)

GERSHON, United States District Judge:

Crossclaim plaintiff Olympia Mortgage Corporation, through its court-appointed Receiver ("Olympia"), moves for the entry of default judgment against crossclaim defendant Avruhum Donner ("Donner"). Olympia seeks the entry of judgment on its claims for breach of fiduciary duty and its claims asserted under New York Debtor and Creditor Law §§ 273 and 276.

I.     BACKGROUND

The parties' familiarity with the factual background and extended procedural history of this matter is presumed, but I note the following relevant information. Donner is the former

president and a principal shareholder of Olympia, whose ownership interest in the company has varied from 32% to 50% over the years of its existence. In connection with his role as president, Donner's responsibilities included the quarterly review of Olympia's financial statements, and he was an authorized signatory on the company's bank accounts. Olympia's other principal shareholders were Leib Pinter, Sam Pinter, and Barry Goldstein (collectively, with Donner, the "Principals").

Olympia's efforts to obtain the resolution of its claims against Donner have been met with continuing resistance. As of March 2013, almost all of the claims and crossclaims asserted in this action had been resolved (or were about to be resolved) as a result of settlement, motion practice, or previously entered defaults.[1] By that time, the only claims that remained to be tried were those for breach of fiduciary duty, and those for fraudulent conveyance under New York Debtor and Creditor Law §§ 273 and 276 ("Sections 273 and 276"), as asserted against Donner

---

[1] Relatively early in this litigation, plaintiff Federal National Mortgage Association ("Fannie Mae") and Olympia entered into a consent judgment relating to Fannie Mae's breach of contract claim. (*See* ECF Doc. # 394.) Fannie Mae subsequently dismissed its remaining claims against Olympia and successfully pursued its claims against individual defendants Sam Pinter and Leib Pinter. *See Federal National Mortgage Association v. Olympia Mortgage Corp.*, 724 F.Supp.2d 308 (E.D.N.Y. 2010) (on motion for summary judgment, awarding damages of $44.8 million in favor of Fannie Mae and against Sam Pinter); *Federal National Mortgage Association v. Olympia Mortgage Corp.*, 2010 WL 3085174 (E.D.N.Y., Aug. 6, 2010) (on motion for summary judgment, awarding damages in favor of Fannie Mae and against Leib Pinter in the amount of $43,918,500).

Olympia has also successfully pursued its crossclaims against certain of the individual crossclaim defendants. *See, e.g., Federal National Mortgage Association v. Olympia Mortgage Corp.*, 2013 WL 417352 (E.D.N.Y., Jan. 29, 2013) (on motion for summary judgment, awarding damages in favor of Olympia and against Sam Pinter's wife, Fagie Pinter, and various of their children in amounts ranging from $20,000 to $302,620.07). *See also Federal National Mortgage Association v. Olympia Mortgage Corp.*, 954 F.Supp.2d 165 (E.D.N.Y. 2013) (severing the crossclaims asserted against bankrupt crossclaim defendants and entering final judgment in the amounts previously awarded).

and co-crossclaim defendant, Barry Goldstein ("Goldstein").[2] (*See* ECF Doc. # 823.)

Olympia submitted a proposed pretrial order on March 22, 2013. The crossclaim defendants' response to that proposal was due by April 12, 2013. Although Goldstein sought and was granted an extension of time by which to file his response (*see* ECF Doc. #825), Donner neither responded nor sought such an extension in advance of the deadline. By letter dated April 16, 2013, Olympia argued that Donner's failure to submit a response should result in the entry of default judgment against him. (*See* ECF Doc. # 829.) By letter dated April 17, 2013, Donner opposed the entry of default and requested, *inter alia*, a two-week extension of time to file his response, which request was opposed by Olympia's letter of April 18, 2013 (*See* ECF Docs. # 830 and 831, respectively.) By Order dated April 19, 2013, I denied Olympia's request for the entry of default judgment and extended until April 24, 2013 – the date that had been requested by Goldstein – the deadline by which Donner was to file his response to the proposed pretrial order. (*See* ECF Doc. # 832.)

On the date that his response was due, Donner filed a petition for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of New York, thus staying the action against him here. (*See* ECF Doc. # 834). On June 20, 2013, I severed the crossclaims asserted against Donner and Goldstein and entered final judgment against the other defendants/crossclaim defendants.[3] (*See* ECF Doc. # 846.)

---

[2] Similar claims against Donner were the subject of prior motion practice. By Orders dated December 12, 2011 and March 21, 2012, I granted summary judgment in the amount of $498,575.15 in favor of Olympia and against Donner, on some of Olympia's claims of breach of fiduciary duty and fraudulent transfer under Sections 273 and 276. (*See* ECF Docs. #694 and 731; *see also* Oral Argument Tr., Dec. 12, 2011, ECF Doc. #717.)

[3] Crossclaim defendant Goldstein also filed a petition for bankruptcy protection, but his

3

By letter dated August 19, 2013, Olympia advised the court that Donner had withdrawn his bankruptcy petition, and it renewed its application for the entry of default judgment against him. (ECF Doc. # 862.) By Order dated August 27, 2013, I directed Olympia to file documentary evidence of the dismissal of Donner's bankruptcy petition and directed Donner to show cause, within seven days after such filing, as to why a default judgment should not be entered. (*See* ECF Doc. # 868.) Olympia filed a copy of the Order dismissing Donner's bankruptcy petition on August 29, 2013 (*see* ECF Doc. # 869), but Donner did not respond to the order to show cause. On September 10, 2013, Olympia again requested the entry of default judgment, and by Order dated September 11, 2013, I authorized the present motion. (*See* ECF Docs. # 871, 872.) Olympia served its moving papers on November 8, 2013, and, by letter dated November 19, 2013, Donner requested an extension of time, from November 22 to December 13, 2013, to serve his opposition.[4] (*See* ECF Doc. # 889.) No such opposition was ever served, however, and, by letter dated December 18, 2013, Olympia submitted copies of its motion papers to the court.[5] (ECF Doc. # 891.)

---

petition was filed in advance of the April 24 deadline. (*See* ECF Doc. # 833.) Having received no notice to the contrary, I assume that his proceeding in the U.S. Bankruptcy Court for the Eastern District of New York is still pending. Therefore, the crossclaims asserted against him in this action remain stayed.

[4] Donner's counsel indicates in this letter that Olympia filed its moving papers on ECF, but the ECF Document numbers to which he refers do not relate to the present motion. Although he does not expressly state that the papers were served upon him, given counsel's request for an extension of time to oppose the motion, it is clear that such service was accomplished, as directed by my Order of October 29, 2013. (*See* ECF Docket Entry, October 29, 2013.)

[5] Olympia has submitted to chambers courtesy copies of its moving papers, along with a CD containing the rather voluminous exhibits, but it has not filed any of the moving papers on ECF. Olympia's request to file with the Clerk's office a CD containing any exhibits that exceed the ECF size limits is granted. However, Olympia is hereby directed to file all other papers submitted in connection with this motion on ECF, and to ensure that the separate filing of

4

Now, by unopposed motion, Olympia seeks the entry of a default judgment against Donner in the amount of $7,813,202.73 in connection with its claims of constructive fraud and actual fraud under Sections 273 and 276. Olympia seeks entry of default judgment in the same amount on its breach of fiduciary duty claim, insofar as these fraudulent transfers amount to a breach of Donner's fiduciary duty, and also in the amount of $43,918,500 on the ground that Donner's breach caused Olympia's insolvency to deepen, resulting in Olympia's liability to Fannie Mae.

## II. DISCUSSION

### A. Olympia is Entitled to the Entry of Default Judgment against Donner

Olympia's entitlement to the entry of default judgment is beyond dispute. To be sure, the entry of default judgment is "the most severe sanction which the court may apply." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). And, given the "oft-stated preference for resolving disputes on the merits," default judgments "are generally disfavored and reserved for rare occasions." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Nonetheless, in certain circumstances, such as those in which "a litigant is confronted by an obstructionist adversary," the availability of default judgment "play[s] a constructive role in maintaining the orderly and efficient administration of justice." *Id.*

Although "the typical Rule 55 case [is one] in which a default has entered because a defendant failed to file a timely answer," default under Rule 55 of the Federal Rules of Civil Procedure may also be entered "against a defendant [that] has failed to . . . otherwise defend."

---

oversized documents is accurately reflected on the ECF Docket.

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (internal quotation marks and citation omitted) (alterations in original). The phrase "otherwise defend" has been interpreted to encompass situations including one in which a defendant "fail[ed] to appear for a deposition, dismiss[ed his] counsel, [gave] vague and unresponsive answers to interrogatories, and fail[ed] to appear for trial." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). The entry of default judgment was also held to be appropriate against a defendant who twice failed to respond, as directed, to plaintiff's pretrial submission. *Cotton v. Slone*, 4 F.3d 176, 178-79 (2d Cir. 1993).

Here, Donner's unexcused disappearance from this litigation provides sufficient basis for the entry of default judgment against him. Donner elected not to respond to Olympia's Proposed Pretrial Order; he then chose not to respond to the September 11, 2013 order to show cause; and he has now chosen not to oppose the present motion – even after requesting and receiving an extension of time by which to do so. Such (in)action clearly demonstrates a failure to "otherwise defend" against the claims Olympia has been attempting to prosecute over these past many years, and Olympia's motion for the entry of default judgment is granted.

### B. Donner' Liability is Sufficiently Established

Having thus established Donner's default, all of Olympia's factual allegations relating to liability are accepted as true, and all reasonable inferences are drawn in its favor. *Au Bon Pain*, 653 F.2d at 65. Moreover, once a default is established, a district court is authorized to accept evidentiary proof in support of additional facts. *See id.* Here, Olympia has offered "ample proof" as to Donner's liability with respect to the breach of fiduciary duty claim and the claims

under Sections 273 and 276. *Id.* The factual bases for such liability are set forth in the November 8, 2013 Declaration of Karen Kincaid Balmer (the "Receiver"), and the accompanying factual submissions support in great detail the fraudulent transfers and other schemes perpetrated or authorized by Donner. The elements of liability under Sections 273 and 276, as well as for breach of fiduciary duty, have been previously discussed on multiple occasions during the course of this litigation and need not be repeated here. *See, e.g., Federal National Mortgage Association v. Olympia Mortgage Corp.*, 792 F.Supp.2d 645 (E.D.N.Y. 2011).[6] I therefore note briefly that Olympia's submissions make clear that Donner caused Olympia to transfer funds, while it was insolvent, for less than fair consideration, in violation of Section 273, *see, e.g., United States v. Alfano*, 34 F.Supp.2d 827, 844-45 (E.D.N.Y. 1999); and also, that Donner caused Olympia to transfer funds to related persons and entities, without fair consideration, even though he knew that Olympia was insolvent and that the transfers would cause it to avoid making payments to its creditors, including Fannie Mae, in violation of Section 276, *see, e.g., Olympia Mortgage Corp.*, 792 F.Supp.2d at 653-54. I am similarly satisfied, on the basis of Olympia's submissions, that Donner owed a fiduciary duty to Olympia, that he breached that duty, not only by causing the fraudulent transfers to be made, but also by engaging in various schemes to disguise Olympia's financial condition, and that, as a result of this breach, Olympia incurred damages in the form of increased indebtedness to Fannie Mae, among others.[7]

---

[6] *See also* n. 2, *supra*.

[7] Two such schemes, the "Check Kiting" and "Nominee Loan" schemes, are described in detail in the Balmer Declaration. "Check Kiting" refers to the issuance of a short-term loan by way of a post-dated check. (Balmer Decl. ¶ 52.) Specifically, Donner would cause Midwood, a credit union under his control and of which he was a principal, to transfer funds to an Olympia

7

*See, e.g., Sheehy v. New Century Mortgage Corp.*, 690 F.Supp.2d 51, 62 (E.D.N.Y. 2010).

## C. Damages

I turn, next, to the question of damages. "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Securities (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999). Rather, the district court is obligated to conduct some inquiry in order to "determine the appropriate amount of damages, which involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule." *Id.* While Rule 55(b)(2) permits the district court to "conduct such hearings or order such references as it deems necessary and proper" to determine appropriate damages, the Rule does not require a hearing. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). Awards of damages have been upheld, for example, where "the District Court relied upon detailed affidavits and documentary evidence, supplemented by the District Judge's personal knowledge of the record, gained during four years of involvement with the litigation, including his role as presiding judge at trial." *Fustok v.*

---

bank account. Donner would simultaneously issue a repayment check to Midwood, but, since the Olympia bank account would not contain sufficient funds to cover the payment, Donner would cause Midwood to hold the repayment check until the Olympia account was replenished. (*Id.* ¶¶ 52-53.) The purpose of this scheme was, first, to enable Midwood to provide illegal, interest-free loans, and further, to enable Olympia to hide its insolvency by providing the funds needed to pay its various creditors. (*Id.* ¶¶ 58-59.)

By the Nominee Loan scheme, Donner would cause Midwood to issue loans to his own relatives or those of the other Olympia Principals. In some cases, Olympia would receive the funds, thus getting the benefit of the cash infusion without the corresponding liability of a loan in its name. In other cases, Donner would have Midwood distribute the loan proceeds to the nominal borrower, but then cause Olympia to repay the principal and interest amounts. By this scheme, Donner enabled Olympia both to disguise its insolvency and to benefit non-employee family members. (*See id.* ¶¶ 60-76.)

*ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

Here, Olympia's application for damages is supported by the detailed Declaration of the Receiver, which is, itself, based on her extensive investigation into Olympia's financial records,[8] and to which is attached hundreds of pages of documentary evidence setting forth the circumstances under which Donner breached his fiduciary duty to Olympia and caused the fraudulent transfer of millions of dollars from Olympia to various entities owned by himself, the other Principals, or their relatives. Although the entry of default judgment and determination of damages typically occurs in two stages, repeated efforts by the Receiver and the court to elicit any type of response from Donner have been unsuccessful. His refusal to respond to the order to show cause and failure to oppose this motion, along with his continual invocation of his Fifth Amendment privilege during discovery, leaves the court with no basis upon which to dispute the accuracy of the Receiver's comprehensive damages analysis. The level of detail contained in Olympia's unrefuted submissions and my own personal knowledge of the parties and the claims asserted here, developed over many years, provides a sufficient basis for determining an appropriate damages award against Donner.

i. **The New York Debtor and Creditor Law Claims**

First, with respect to the claims under Sections 273 and 276, Olympia seeks damages relating to fraudulent transfers totaling $7,813,203.73. Under the New York Debtor and Creditor

---

[8] *See, e.g.*, Balmer Decl. Ex. S1, "Receiver's Analysis of Solvency – Report of Findings," which discusses the Receiver's investigation into Olympia's financial condition from December 31, 1997 to October 31, 2004 and sets forth her conclusions as to Olympia's solvency during that period; *see also* "Olympia Mortgage Corporation Receiver's First Report Pursuant to the November 23, 2004 Receivership Order (Redacted)," discussing, inter alia, the background of the Receiver's investigation and the improper relationships between Olympia and the entities and individuals to which funds were transferred (ECF Doc. # 369).

Law, "a creditor may recover money damages against parties who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance."[9] *RTC Mortgage Trust 1995 S/N1 v. Sopher*, 31 Fed. Appx. 37, 38, n.2 (2d Cir. 2002); *accord Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993). As an officer of Olympia and signatory on its bank accounts, Donner participated in the fraudulent transfer of millions of dollars' worth of Olympia's assets by signing checks and otherwise authorizing the expenditures.[10] Donner was also a beneficiary of these conveyances, in ways both direct and indirect.

Donner benefited directly from the transfers made in connection with the Nominee Loan scheme, insofar as the churning of funds between Midwood and Olympia is what enabled Olympia to maintain its charade of solvency and enabled Donner and his relatives to continue reaping the financial benefits of his position as president. Donner also benefited directly from his transfer of funds to Barring Shields, an entity in which he held an ownership interest, and to Kahal Shomrei Hadath ("KSH"), an entity from which one of his sons received compensation.

Although not quite as directly, Donner also benefited from the fraudulent transfer of

---

[9] I have previously concluded that, because the Receiver "seeks to recover funds fraudulently conveyed from Olympia to other persons and entities by Olympia's management," she acts to protect the corporation itself and its defrauded creditors, and she therefore has standing to pursue the fraudulent conveyance claims. *Federal National Mortgage Association v. Olympia Mortgage Corp.*, 2011 WL 2414685, at *7 (E.D.N.Y., June 8, 2011).

[10] In connection with an earlier motion filed by Donner's relatives, who claimed they were entitled to certain conveyances as compensation to Donner himself, I concluded that Donner "did not have a large role, or spend much time working, at Olympia." *Federal National Mortgage Association v. Olympia Mortgage Corp.*, 792 F.Supp.2d 645, 649 (E.D.N.Y. 2011). The undisputed evidence on this motion makes clear that Donner had the authority and the ability to transfer vast sums of money from Olympia to various individuals and entities, as discussed in the text.

funds to Jasmine Lakes Properties Corp. ("Jasmine Lakes"), S&F Ocean Realty, Z&S Realty, and the family members of the other Principals. The benefits enjoyed by the Olympia Principals are, at this point, well-documented. Each of the Principals used Olympia funds to make payments to or on behalf of their relatives, to cover expenses such as health insurance, car payments and mortgage payments. *See, e.g., Olympia Mortgage Corp.*, 724 F.Supp.2d at 312, n.8. The Principals and their relatives also "received interest payments on their own supposed loans to Olympia at rates ranging from 10 to 14 percent."[11] *Id.* at 313. The transfer of funds from Olympia to entities owned by the other Principals ensured the continued profitability of those other entities and thus the continued enrichment of the other Principals. On the basis of the facts previously established and the uncontested factual assertions set forth in connection with this motion, it is reasonable to infer that the continued enrichment of one Principal inured to the benefit of the other Principals.

Having thus both participated in and benefited from the fraudulent transfers, Donner is liable for the amount of monies wrongfully received by the various transferees. *See, e.g., Federal National Mortgage Association v. Olympia Mortgage Corp.*, 2011 WL 9933496, at *12 E.D.N.Y., August 5, 2011) (concluding that "money damages for the entire amount of those transfers found to have been fraudulent are recoverable"). Olympia asserts that Donner authorized or otherwise caused the fraudulent transfer of $7,813,203.73, broken down as set forth below. The amounts of the first five transfers (subsections (a) through (g), below) are also reflected as judgments entered against the various transferees in the June 21, 2013 Order and Judgment (the "June 21 Judgment"). *See Olympia Mortgage Corp.*, 954 F.Supp.2d at 171-72.

---

[11] No documentation for these "supposed loans" was ever produced.

a. **Total of transfers made to relatives of the Olympia Principals: $2,201,387.12**

- Total transfers to Leib Pinter's children: $1,032,646.11[12]
    - Chaim Taub, $299,113.54
    - Moshe Pinter, $298,552.32
    - Yossie Pinter, $143,232.06
    - Zvi Pinter, $276,748.19
    - Tova Taub, $15,000

(*See* Balmer Decl. ¶¶ 96-97.[13])

- Total transfers to Sam Pinter's wife and children: $766,350.48
    - Fagie Pinter, $93,839.11
    - Charles Pinter, $264,691.30
    - Basi Niernberg, $302,620.07
    - Moishe M. Pinter, $65,200[14]
    - Sarah Pinter, $20,000
    - David Pinter, $20,000

(*See* Balmer Decl. ¶¶ 98-99.)

- Total transfers to three of Barry Goldstein's children: $402,390.53[15]
    - Shoshanna Kirschenbaum, $97,087.35
    - Rachael Stein, $190,985.83
    - Gillian Sax, 114,317.35

(*See* Balmer Decl. ¶¶ 100-08.)

b. **Total of transfers made to KSH: $2,044,876**
(*See* Balmer Decl. ¶¶ 88, 117-22.)

---

[12] With the exception of the $15,000 to Tova Taub, all of these amounts were included in the June 21 Judgment.

[13] The amounts set forth in the cited paragraphs of the Balmer Declaration have been rounded to the nearest dollar. The exact amounts are set forth in Exhibit CF to the Balmer Declaration.

[14] The judgment previously entered against Moishe M. Pinter was in the amount of $57,200, with interest from March 29, 2002. *Olympia Mortgage Corp.*, 954 F.Supp.2d at 171. This amount appears to exclude, on the basis of certain factual issues, $8,000 in interest payments made on Moishe M. Pinter's behalf. *See Olympia Mortgage Corp.*, 2013 WL 417352, at *10. Given that there is now, however, no dispute that Donner caused Olympia to fraudulently transfer a total of $65,200 to Moishe M. Pinter, Donner is liable for the entire amount.

[15] The claims against these defendants were dismissed by Order dated April 10, 2012, and no judgments have been entered against them. (*See* ECF Doc. #736.)

12

c. **Total of transfers to Jasmine Lakes: $447,952.51**[16]
   (*See* Balmer Decl. ¶¶ 123-26; *see also* Balmer Decl. Ex. CB at 1.)

d. **Total of transfers to S&F Ocean Realty: $148,659.59**
   (*See* Balmer Decl. ¶¶ 127-30.)

e. **Total of transfers to Z&S Realty: $163,786.41**
   (*See* Balmer Decl. ¶¶ 131-33.)

f. **Total of transfers made in connection with the Midwood Nominee Loans: $2,087,090.06**
   (*See* Balmer Decl. ¶¶ 66-76.)

g. **Total of transfers made to Barring Shields & Co., LLC: $719,452.04**
   (*See* Balmer Decl. ¶¶ 109-16.)

I am satisfied that the evidence submitted demonstrates the accuracy of these figures, and Olympia is therefore entitled to judgment against Donner in the amount of $7,813,203.73, plus interest.

Olympia seeks, and is entitled to, a pre-judgment interest award pursuant to N.Y. C.P.L.R. § 5001(a). Since "New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or a single reasonable intermediate date, which can be used to simplify the calculation," Olympia requests that the court fix such an intermediate date. *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83,

---

[16] The June 21 Judgment contains an award against Jasmine Lakes in the amount of $232,723.61, with interest accruing as of June 5, 2003. *Olympia Mortgage Corp.*, 954 F.Supp.2d at 171. This was the amount awarded on Olympia's motion for summary judgment. *See Olympia Mortgage Corp.*, 2011 WL 2414685, at *8. The evidence at that time was insufficient to show that the remaining $215,228.90 was used for the benefit of Jasmine Lakes, and I therefore declined to include that amount in the damages awarded against that entity. *Id.* Now, however, the undisputed evidence clearly demonstrates that Donner caused a total of $447,952.51 to be fraudulently transferred to Jasmine Lakes, and Donner is thus liable for the entire amount.

13

91 (2d Cir. 1998) (citing N.Y. C.P.L.R. § 5001(b)). Upon review of the dates on which the many transactions at issue here occurred, the court concludes that January 1, 2002 is a reasonable intermediate date. Olympia is therefore entitled to the entry of a default judgment on its crossclaims against Donner under Section 273 in the amount of $7,813,203.73, with statutory prejudgment interest on this amount to run from January 1, 2002.

Olympia is likewise entitled to the entry of default judgment on its crossclaims against Donner under Section 276 in the amount of $7,813,203.73, with statutory prejudgment interest on this amount to run from January 1, 2002.

### ii.     The Breach of Fiduciary Duty Claim

I turn, next, to Olympia's breach of fiduciary duty claim. In connection with this claim, Olympia seeks two separate damages awards: one in the amount of $43,918,500.42, which is the amount of Olympia's liability to Fannie Mae; and another in the amount of $7,813,203.73, representing the amount of the fraudulent transfers. The fraudulent transfers set forth above were clearly undertaken in breach of Donner's fiduciary duties to Olympia, and damages in this amount are therefore appropriate in connection with this claim.

With respect to the $43,918,500.42 claim, Olympia argues that Donner used the Check Kiting, Nominee Loan and other schemes to infuse cash into the company and to hide its liabilities, thus enabling Olympia to continue operating even though it was insolvent. Olympia further asserts that this continued appearance of solvency permitted the continued perpetration of the fraud against Fannie Mae, resulting in the increase of Olympia's liability to Fannie Mae from around $3 million in December 1997 to around $43 million in October 2004, and that Donner is

liable for the entire increased amount. (*See* Balmer Decl. ¶¶ 77-82.)

The theory on which Olympia relies, "deepening insolvency," posits that an "insolvent corporation suffers a distinct and compensable injury when it continues to operate and incur more debt." *In re Global Service Group, LLC*, 316 B.R. 451, 457 (Bankr. S.D.N.Y. 2004). Some courts have found deepening insolvency to provide an independent cause of action, while others have treated it as a theory of damages. *See id.* at 457-58 (collecting cases). In this Circuit, deepening insolvency is considered "a basis for damages that may result from the commission of a separate tort." *In re Allou Distributors, Inc.*, 395 B.R. 246, 264-65 (Bankr. E.D.N.Y. 2008). Thus, one seeking to recover under this theory "must show that the defendant prolonged the company's life in breach of a separate duty, or committed an actionable tort that contributed to the continued operation of a corporation and its increased debt." *Global Service Group*, 316 B.R. at 458. Here, there can be no doubt that Donner's participation in the Check Kiting and Nominee Loan schemes amounted to a breach of his fiduciary duty. And the evidence submitted provides an adequate basis upon which to infer that the perpetration of these schemes served not only to prolong the life of an already insolvent Olympia, but also to increase its debt to Fannie Mae while simultaneously depleting the assets available for repayment. I am satisfied that Olympia's $43,918,500.42 liability to Fannie Mae was caused, in no small part, by Donner's breach of his fiduciary duty, and Olympia's motion for the entry of default judgment in that amount is granted.

### III. CONCLUSION

On the basis of the evidence submitted and for the reasons set forth above, Olympia's

motion for the entry of default judgment is granted.

The crossclaims asserted against Avruhum Donner are hereby severed, and the Clerk of Court is directed to enter final judgment, on default, and pursuant to Fed. R. Civ. P. 54, as follows:

On Olympia's claim of fraudulent transfer under N.Y. Debtor and Creditor Law § 273, judgment against Donner and in favor of Olympia in the amount of $7,813,203.73, with statutory prejudgment interest, as calculated by the Clerk of Court, to run from January 1, 2002;

On Olympia's claim of fraudulent transfer under N.Y. Debtor and Creditor Law § 276, judgment against Donner and in favor of Olympia in the amount of $7,813,203.73, with statutory prejudgment interest, as calculated by the Clerk of Court, to run from January 1, 2002;

On Olympia's claim of breach of fiduciary duty, judgment against Donner and in favor of Olympia in the amount of $43,918,500, which sum includes liability in the amount of $7,813,203.73, as set forth above.

SO ORDERED.

Dated: June 6, 2014
Brooklyn, New York

s/Nina Gershon

NINA GERSHON
United States District Judge